UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO.

_____

NANCY GILL & MARCELLE LETOURNEAU,    )
MARTIN KOSKI & JAMES FITZGERALD,     )
DEAN HARA,                           )
MARY RITCHIE & KATHLEEN BUSH,        )
MELBA ABREU & BEATRICE HERNANDEZ,    )
JO ANN WHITEHEAD & BETTE JO GREEN,   )
RANDELL LEWIS-KENDELL,               )
HERBERT BURTIS, and                  )
KEITH TONEY & ALBERT TONEY III,      )
     Plaintiffs,                     )
                                     )
v.                                   )
                                     )
OFFICE OF PERSONNEL MANAGEMENT,      )
UNITED STATES POSTAL SERVICE,        )
JOHN E. POTTER, in his official capacity as )
the Postmaster General of the United States of )
America,                             )
MICHAEL J. ASTRUE, in his official capacity )
as the Commissioner of the Social Security )
Administration,                      )
HILLARY RODHAM CLINTON, in her official )
capacity as United States Secretary of State, )
ERIC H. HOLDER JR., in his official capacity )
as the United States Attorney General, and )
THE UNITED STATES OF AMERICA,        )
     Defendants.                     )
_____)

COMPLAINT FOR DECLARATORY, INJUNCTIVE, OR OTHER RELIEF
AND FOR REVIEW OF AGENCY ACTION

Introduction/Nature of the Action

1.      This is a case about federal discrimination against gay and lesbian individuals married to someone of the same sex, and the harm that discrimination has caused each plaintiff.

2.      Plaintiffs in this action are citizens of the Commonwealth of Massachusetts and the United States of America.  Each of the plaintiffs is, or was until becoming a widower, legally married to a person of the same sex in accordance with the requirements of Massachusetts state law.

3.      Although the federal government does not license marriages, a large number of its programs take marital status into account in determining eligibility for federal protections, benefits and responsibilities.  Statute, precedent, and practice establish state law as the touchstone for determining a couple's marital status for purposes of determining eligibility for federal programs.

4.      Each plaintiff, or his or her spouse, has made one or more requests to the appropriate agencies or authorities within the federal government for treatment as a married couple, a spouse, or a widower with respect to particular programs or benefits.  Yet each of the plaintiffs has been denied and is still being denied legal protections and benefits under federal law that are available to a similarly situated person married to an individual of a different sex under Massachusetts law.

5.      With each denial of specific protections or benefits, the defendants or their agents have invoked the "Defense of Marriage Act," P.L. 104-199, codified in part as 1 U.S.C. § 7 ("DOMA, 1 U.S.C. § 7") and have stated that the federal government will only respect marriages between a man and a woman.

6.      Several of the plaintiffs, as set forth below, seek spousal protections based on their employment with, or their spouse's employment with, the United States government.  Plaintiff Nancy Gill, a 21-year employee of the United States Post Office, already receives "Self and Family" health insurance coverage for herself and the two children she has with her spouse, plaintiff Marcelle Letourneau, through her job at the Post Office.  Yet, unlike postal workers married to spouses of the opposite sex (see below at Paragraphs 59-97), she is unable to add her spouse, Marcelle, to that plan or to the vision benefit plan, nor can she use her flexible spending account for Marcelle's medical expenses.  Plaintiff Martin Koski, a retiree from the Social Security Administration, has been denied health insurance coverage for his spouse, plaintiff James Fitzgerald, although retired employees who are married to someone of a different sex may add their spouses to such coverage, as described below at Paragraphs 98-123.  Plaintiff Dean Hara is the surviving spouse of Gerry Studds, a retired Member of the United States Congress.  Dean has been denied both health insurance and the survivor annuity normally available to surviving spouses, which is described below at Paragraphs 124-169.  In each instance, DOMA, 1 U.S.C. § 7, has barred the plaintiffs' access to benefits routinely granted to others in similar circumstances.

7.      Several of the plaintiffs, as set forth below, have been denied their correct spousal status by the Internal Revenue Service ("IRS") on the basis of DOMA, 1 U.S.C. § 7, and thus have been required to pay more in federal income taxes than other similarly situated people married to someone of a different sex.  Plaintiffs Melba Abreu and Beatrice Hernandez, as described below at Paragraphs 204-234, and plaintiffs Mary Ritchie and Kathleen Bush, as described below at Paragraphs 170-203, seek to file their

federal income tax returns as "Married Filing Jointly" rather than as "Single" or "Head of Household." Plaintiff Mary Ritchie also seeks to contribute funds to a "spousal IRA" for her spouse Kathleen Bush, to contribute to her retirement security, as an income-earning person who is married to someone of a different sex may do (see below at Paragraph 187). Plaintiffs Abreu and Hernandez and plaintiffs Ritchie and Bush filed amended federal income tax returns with the IRS, asking to be re-categorized as married taxpayers and requesting refunds. The IRS rejected each amended federal income tax return and accompanying refund claim on the basis of DOMA, 1 U.S.C. § 7.

8.       Several of the plaintiffs, as set forth below, seek spousal protections afforded by the Social Security program. Three different widowers, plaintiff Randell Lewis-Kendell, as described below at Paragraphs 258-286, plaintiff Herbert Burtis, as described below at Paragraphs 287-310, and plaintiff Dean Hara, as described below at Paragraphs 124-169, seek the "One-Time Lump-Sum Death Benefit" normally available upon the death of a spouse. Plaintiff Burtis, relying on the long work record of his spouse, also seeks the survivor benefit normally available to a widower married to someone of the opposite sex, as described below at Paragraphs 300-310. This benefit would increase his monthly Social Security payment by approximately $700 per month, to the level of the monthly payment that his deceased spouse John Ferris received before his death. As a person married to a spouse of a different sex is entitled to do (see below at Paragraph 246), plaintiff Jo Ann Whitehead, as described below at Paragraphs 235-57, seeks to increase her monthly Social Security payment based on the work record of her spouse, plaintiff Bette Jo Green, who has had higher earnings during their long

relationship. Each of these plaintiffs has been denied these benefits by the Social Security Administration because of DOMA, 1 U.S.C. § 7.

9.        Plaintiff Keith Toney seeks a passport bearing his correct name, which he lawfully changed as a consequence of his 2004 marriage to plaintiff Albert Toney III, as described below at Paragraphs 311-328. Invoking DOMA, 1 U.S.C. § 7, the State Department denied plaintiff Keith Toney's request for a passport in his married name despite submission of his marriage certificate and other government-issued identification, although it accepts name changes effectuated through marriage for a person married to an individual of a different sex who submits the same documentation.

10.        This is an action for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. Rule 57 and for review of agency action pursuant to 5 U.S.C. §§ 701-706. It seeks a determination that DOMA, 1 U.S.C. § 7, as applied to plaintiffs, violates the United States Constitution by refusing to recognize lawful marriages for purposes of the laws governing benefits for federal employees and retirees, the Internal Revenue Code, the Social Security laws and the laws and regulations governing issuance of passports. The result of these violations of the Constitution is that each of the plaintiffs has been denied, and will continue to be denied, legal protections and benefits under federal law that would be available to them if their spouses were of the opposite sex.

<u>Jurisdiction and Venue</u>

11.        This action arises under the Constitution of the United States and the laws of the United States, including 26 U.S.C. § 7422. The jurisdiction of this Court is

invoked pursuant to 5 U.S.C. § 8912; 5 U.S.C. § 8991; 28 U.S.C. § 1331; 28 U.S.C.

§ 1346(a)(1); and 42 U.S.C. § 405(g).

12.　　　　Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) and 28

U.S.C. § 1402(a)(1), because the plaintiffs reside in this district, and the events giving

rise to these claims arose in this district.

<u>Parties</u>

13.　　　　Plaintiff NANCY GILL is a citizen of the Commonwealth of

Massachusetts and resides in Bridgewater, Massachusetts.

14.　　　　Plaintiff MARCELLE LETOURNEAU is a citizen of the

Commonwealth of Massachusetts and resides in Bridgewater, Massachusetts.

15.　　　　Plaintiff MARTIN KOSKI is a citizen of the Commonwealth of

Massachusetts and resides in Bourne, Massachusetts.

16.　　　　Plaintiff JAMES FITZGERALD is a citizen of the Commonwealth of

Massachusetts and resides in Bourne, Massachusetts.

17.　　　　Plaintiff DEAN HARA is a citizen of the Commonwealth of

Massachusetts and resides in Boston, Massachusetts.

18.　　　　Plaintiff MARY RITCHIE is a citizen of the Commonwealth of

Massachusetts and resides in Framingham, Massachusetts.

19.　　　　Plaintiff KATHLEEN BUSH is a citizen of the Commonwealth of

Massachusetts and resides in Framingham, Massachusetts.

20.　　　　Plaintiff MELBA ABREU is a citizen of the Commonwealth of

Massachusetts and resides in Boston, Massachusetts.

21.       Plaintiff BEATRICE HERNANDEZ is a citizen of the Commonwealth of Massachusetts and resides in Boston, Massachusetts.

22.       Plaintiff JO ANN WHITEHEAD is a citizen of the Commonwealth of Massachusetts and resides in Jamaica Plain, Massachusetts.

23.       Plaintiff BETTE JO GREEN is a citizen of the Commonwealth of Massachusetts and resides in Jamaica Plain, Massachusetts.

24.       Plaintiff RANDELL LEWIS-KENDELL is a citizen of the Commonwealth of Massachusetts and resides in Harwich Port, Massachusetts.

25.       Plaintiff HERBERT BURTIS is a citizen of the Commonwealth of Massachusetts and resides in Sandisfield, Massachusetts.

26.       Plaintiff KEITH TONEY is a citizen of the Commonwealth of Massachusetts and resides in Jefferson, Massachusetts.

27.       Plaintiff ALBERT TONEY III is a citizen of the Commonwealth of Massachusetts and resides in Jefferson, Massachusetts.

28.       Defendant OFFICE OF PERSONNEL MANAGEMENT is an independent establishment of the Executive Branch of the government of the United States.  Its actions, rules, and regulations are subject to review by the federal courts.

29.       Defendant UNITED STATES POSTAL SERVICE is an independent establishment of the Executive Branch of the government of the United States, empowered by Congress to sue and be sued in its own name.

30.       Defendant JOHN E. POTTER is currently the Postmaster General of the United States of America.  In his official capacity, the Postmaster General is

responsible for the administration of employee-related benefits within the United States Postal Service.

31.　　Defendant MICHAEL J. ASTRUE is currently the Commissioner of the Social Security Administration, an independent agency of the United States Government.  In his official capacity, the Commissioner of the Social Security Administration is responsible for the administration and enforcement of the Social Security Act.

32.　　Defendant HILLARY RODHAM CLINTON is currently the United States Secretary of State.  In her official capacity, the Secretary of State is responsible for the administration and operation of the Passport Services Directorate.

33.　　Defendant ERIC H. HOLDER JR. is currently the Attorney General of the United States.  In his official capacity, the Attorney General is the chief federal official responsible for the enforcement of all federal statutes in accordance with the Constitution of the United States of America.

34.　　Defendant THE UNITED STATES OF AMERICA is the proper defendant in a complaint seeking refund of federal income taxes pursuant to 26 U.S.C. § 7422(f)(1).

### Facts Common To All Plaintiffs And All Claims

35.　　Each plaintiff is a citizen of the Commonwealth of Massachusetts and of the United States and has borne the obligations of citizenship by paying taxes and contributing to Social Security.

36.　　As United States citizens, each of the plaintiffs is entitled to equal consideration and treatment from the federal government, and with respect to each and

every program operated by the federal government, including employment and retirement benefit programs arising from employment with the federal government, Social Security, taxation, and passport services.

37.       Each of the plaintiffs is, or was until becoming a widower, married to a person of the same sex in accordance with the legal requirements of the Commonwealth of Massachusetts.  Each of the plaintiffs married to nurture and support his or her family and, for some plaintiffs, to raise children.  Each of these marriages was duly recognized under state law.  However, DOMA, 1 U.S.C. § 7, burdens their ability to form and support their marriages and families and to raise their children.

38.       As a sovereign State of the United States of America, the Commonwealth of Massachusetts (hereafter, "the Commonwealth," or "Massachusetts") has, since its ratification of the United States Constitution and, indeed, before then, exclusively established and ordained the legal requirements for civil marriage within the Commonwealth and the status of spouses to such marriages entered into within the Commonwealth.

39.       Effective May 17, 2004, with the implementation of the Massachusetts Supreme Judicial Court's constitutional determination in <u>Goodridge v. Dept. of Public Health</u>, 440 Mass. 309 (2003), same-sex couples who otherwise complied with the requirements for obtaining a marriage license in the Commonwealth of Massachusetts were and are entitled to marry under the law of the Commonwealth.

40.       Since May 17, 2004, the Commonwealth of Massachusetts, pursuant to the Constitution of Massachusetts, has created, established, and recognized a single

marital status that is available to every qualifying couple, whether same-sex or different-sex, i.e., regardless of the sex of the two parties to the marriage.

41.     Massachusetts has also made a political determination that different-sex couples and same-sex couples must be treated the same with respect to marriage and its attendant rights and responsibilities.  The Massachusetts Legislature has rejected every proposed constitutional amendment that would have reversed the <u>Goodridge</u> decision, most recently at the constitutional convention session of June 14, 2007.  Uncorrected Proof of the Journal of the Senate, Thursday, June 14, 2007.

42.     The plaintiffs are similarly situated to persons married to individuals of a different sex and, under Massachusetts law, are accorded the same status, responsibilities, and protections as other married persons.  Federal law, however, treats same-sex opposite-sex couples differently in the specific ways set forth in Paragraphs 59 through 328 below.

43.     The federal government of the United States has, since its founding and at least until 1996, recognized the exclusive authority every state possesses, as an essential part of its sovereignty, to determine the civil status and capacities of all its inhabitants, including the absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created.

44.     Throughout history and at least until 1996, the United States has consistently deferred to the sovereignty of the States when the marital status of an individual has been used as a marker of eligibility or access to some benefit, right, or responsibility identified by the federal government.

45.	In 1996, in passing DOMA, 1 U.S.C. § 7, Congress took the unprecedented step of preemptively nullifying a class of marriages that it expected states would begin to license at some point in the future, that is, marriages of same-sex couples.

46.	If not for the application of DOMA, 1 U.S.C. § 7, to all federal programs, the plaintiffs, as persons married under Massachusetts law, would receive the same status, responsibilities and protections under federal law as other married persons. Yet when same-sex couples began to marry in Massachusetts, DOMA, 1 U.S.C. § 7, operated to single out one class of marriages legally recognized by the Commonwealth of Massachusetts, those of same-sex couples, and to deny their existence for all conceivable ends and purposes of federal law.

47.	Plaintiffs have been denied legal protections normally available to spouses under federal law.  Despite plaintiffs' willingness to assume the legally imposed responsibilities of marriage at the federal level, just as they do at the state level, they are prevented from doing so by DOMA, 1 U.S.C. § 7.

The "Defense of Marriage Act" ("DOMA, 1 U.S.C. § 7")

48.	Congress enacted the so-called "Defense of Marriage Act" ("DOMA, 1 U.S.C. § 7"), P.L. 104-199, in 1996, and it was approved on September 21, 1996.

49.	Section 3 of DOMA, 1 U.S.C. § 7, provides in its entirety as follows:

Sec. 3  DEFINITION OF MARRIAGE.

(a)  IN GENERAL – Chapter 1 of title 1, United States Code is amended by adding at the end the following:

§7.  Definition of 'marriage' and 'spouse'

"In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus

and agencies of the United States, the word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife."

(b)  CLERICAL AMENDMENT. – The table of sections at the beginning of chapter 1 of title 1, United States Code, is amended by inserting after the item relating to section 6 the following new item:

"7.  Definition of 'marriage' and 'spouse'."

50.      In a 1997 Report, the General Accounting Office ("GAO") estimated that at least 1,049 federal laws were affected by DOMA, 1 U.S.C. § 7, because those laws depended on or in some way related to marital status.  U.S. Gen. Accounting Office, GAO/OGC-97-16 Defense of Marriage Act (1997), available at http://www.gao.gov/archive/1997/og97016.pdf.  A follow-up study in 2004 found that 1,138 laws tied benefits, protections, or responsibilities to marital status.  U.S. Gov. Accountability Office, GAO-04-353R Defense of Marriage Act (2004), available at http://www.gao.gov/new.items/d04353r.pdf.

51.      With regard to a gay or lesbian individual married to someone of the same sex, DOMA, 1 U.S.C. § 7, has overridden the longstanding deference of federal to state law in determining the marital status of an individual seeking the benefit or responsibility of any federal law triggered by a person's state-established marital status, and categorically denies both rights and responsibilities.

52.      The official House Report on DOMA, 1 U.S.C. § 7, H.R. Rep. No. 104-664, advances four rationales for why the federal government drew a line between its treatment of an individual married to a person of the same sex versus an individual married to a person of the opposite sex.  Those reasons are:

    (1) H.R. 3396 [the bill number] ADVANCES THE GOVERNMENT'S
         INTEREST IN DEFENDING AND NURTURING THE INSTITUTION OF
         TRADITIONAL HETEROSEXUAL MARRIAGE.

    (2) H.R. 3396 ADVANCES THE GOVERNMENT'S INTEREST IN
         DEFENDING TRADITIONAL NOTIONS OF MORALITY.

    (3) H.R. 3396 ADVANCES THE GOVERNMENT'S INTEREST IN
         PROTECTING STATE SOVEREIGNTY AND DEMOCRATIC SELF
         GOVERNANCE.

    (4) H.R. 3396 ADVANCES THE GOVERNMENT'S INTEREST IN
         PRESERVING SCARCE GOVERNMENT RESOURCES.

53.     None of these interests is adequate to justify discrimination against married persons in same-sex relationships.  The first two rationales have nothing to do with any federal interest and simply reflect a belief that same-sex couples should not be permitted to marry.

54.     The first claimed federal "interest" in "defending" "traditional heterosexual marriage" simply restates the government's intent to discriminate against same-sex couples and provides no independent justification for the government's discriminatory action.  The federal government has long accepted state determinations of marital status, even in the face of changes in marriage licensing by the states.  The only state-licensed marriages it categorically refuses to respect are those of same-sex couples. In short, this "interest" repeats the distinction drawn by DOMA, 1 U.S.C. § 7, that is, between married couples of the same sex and married couples of different sexes, but it does not explain it.

55.     The second claimed federal interest in "morality" is another reframing of Congress's disapproval of gay men and lesbians.  Discrimination for its own sake is not a legitimate purpose upon which disadvantageous classifications may be imposed.

56.      The third claimed interest in "protecting state sovereignty" is actually subverted by DOMA, 1 U.S.C. § 7, not advanced by it.  Congress contravened inherent constitutional principles of federalism and failed to honor our nation's system of dual sovereignty in enacting DOMA, 1 U.S.C. § 7, because it is the states, and not the federal government, that regulate marriage and determine family status.  Congress did not "protect" state sovereignty in enacting DOMA, 1 U.S.C. § 7, since it dishonored the sovereignty of the states that license or recognize marriages of same-sex couples.

57.      As to the fourth claimed interest, while the public fisc is always a matter of concern, it is not a legitimate interest in the context of Congressionally provided protections and responsibilities for spouses and families.  Congress has yet to identify a reason why gay and lesbian individuals who have met their obligations as taxpaying citizens and who are married to someone of the same sex must be denied protections available to persons who are married to someone of a different sex.  Singling out same-sex couples who are married among all married persons is simply an expression of the intent to discriminate against gay people.

58.      At root, DOMA, 1 U.S.C. § 7, is motivated by disapproval of gay men and lesbians and their relationships, an illegitimate federal interest.

### Facts Particular To Individual Plaintiffs

Plaintiffs Nancy Gill and Marcelle Letourneau

59.      Plaintiff Nancy Gill ("Nancy") is, and was at all relevant times, an employee of the defendant, United States Postal Service ("Postal Service").  Nancy has worked for the Postal Service since 1987.

60.     Nancy met her spouse, plaintiff Marcelle Letourneau ("Marcelle"), in 1978, and they have been a committed couple since 1980.

61.     Marcelle has been employed in administrative capacities by a nursing services provider in Massachusetts for more than 25 years.  She also works as an independent medical transcriptionist.

62.     After 12 years together, Nancy and Marcelle had their first child, a daughter, now age 16.  A son, now age 9, followed.  Nancy worked the night shift at the Post Office for many years to be available to her children during the day.  Both children have hyphenated last names with the surnames of their two parents.

63.     Nancy and Marcelle live in a home they jointly own in Bridgewater, Massachusetts, together with their children, who attend public school.

64.     After 24 years together, on Friday, May 21, 2004, Nancy and Marcelle were married by a justice of the peace in Brockton, Massachusetts in strict and complete accordance with Massachusetts law.  They then went away together for the weekend with their family to celebrate.

65.     Although Nancy and Marcelle married to solemnize their longstanding commitment to each other and their family, they also looked forward to the spousal benefits they expected to receive from the Postal Service.

66.     As an employee of the United States Postal Service, Nancy is enrolled in the Federal Employees Health Benefits Program ("FEHB").

67.     Nancy has been enrolled in FEHB with a "Self and Family" Plan since the birth of her and Marcelle's daughter in January 1993.  The plan now covers herself and their two children.

68.        According to the FEHB Handbook, "Self and Family" enrollment is

described as follows:

### Self and Family

A self and family enrollment provides benefits for you and your eligible
family members.  **All of your eligible family members are
automatically covered, even if you didn't list them on your Health
Benefits Election** Form (SF 2809) or other appropriate request.  You
cannot exclude any eligible family member and you cannot provide
coverage for anyone who is not an eligible family member.

You may enroll for self and family coverage before you have any eligible
family members.  Then, **a new eligible family member (such as a
newborn child or a new spouse) will be automatically covered by your
family enrollment from the date he/she becomes a family member.**
When a new family member is added to your existing self and family
enrollment, you do not have to complete a new SF 2809 or other
appropriate request, but your carrier may ask you for information about
your new family member.  You will send the requested information
directly to the carrier.  *Exception*:  if you want to add a foster child to your
coverage, you must provide eligibility information to your employing
office.

FEHB Handbook, Enrollment, Types of Enrollment (emphasis supplied).

69.        According to 5 U.S.C. § 8901(5), "member of family" is defined, in

part, to "mean[] the spouse of an employee or annuitant and an unmarried child under 22

years of age …."

70.        Although Marcelle should have been automatically covered by

Nancy's Self and Family Plan upon Nancy and Marcelle's marriage on May 21, 2004,

Nancy took the additional, permitted step of submitting a standard SF 2809 form to her

employing office, dated May 24, 2004, listing as her family members her children and

her spouse.  This form was submitted on the Monday following Nancy and Marcelle's

marriage the previous Friday.

71.     Nancy's SF 2809 form was received in her employing office on May 24, 2004.

72.     On May 25, 2004, Nancy had a conversation with her Human Resources Manager, Ann Mailloux, concerning her rights to benefits coverage for her spouse, Marcelle.

73.     By letter dated June 4, 2004, the United States Postal Service formally advised Nancy "that the Postal Service is unable to provide you with benefit coverage for your partner [sic]."  Letter from Ann Mailloux, Manager, Human Resources, USPS, Southeast New England Performance Cluster, to Nancy M. Gill (June 4, 2004).

74.     The June 4, 2004, letter provided the following reasoning:

> The Postal Service is bound by rules and regulations issued by the Office of Personnel Management and applicable federal law (as opposed to state law).  Same-sex partners are not considered eligible under Federal Employees Health Benefits (FEHB) or Federal Employees Group Life Insurance (FEGLI) in that federal law defines family members (which are covered) as a spouse and an unmarried dependent child under age 22.  Public Law 104-199, Defense of Marriage Act, states, that the word 'marriage' means a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife.

75.     Nancy and Marcelle were shocked that Marcelle was denied benefits under Nancy's plan.  On June 7, 2004, Nancy filed a request for pre-complaint counseling under the Equal Employment Opportunity Process and was advised to complete and return PS Form 2564-A within 10 days.

76.     Nancy completed PS Form 2564-A within 10 days, asserting that she had not been treated equally and had been "discriminated against for being a lesbian."  PS Form 2654-A, p. 1, Section B.  Specifically, she stated: "Anyone who has gotten married while employed by the US Postal Service has the right to put their new spouse on their

Health Insurance.  That new spouse is entitled by marriage to a host of benefits which my

spouse is denied.  How can this be called anything but discrimination?"  PS Form 2654-

A, p. 2, Section D.

77.      For a resolution to her pre-complaint, Nancy stated: "Allow me to

have the same rights as my co-workers who are married."  PS Form 2654-A, p. 2, Section

F.

78.      By letter dated June 21, 2004, USPS NEEO Dispute Resolution

Specialist Debra A. DeSantis corresponded with Nancy to "conclude the pre-complaint

stage of the EEO Complaints Process."  Letter from Debra DeSantis, NEEO Dispute

Resolution Specialist, USPS, Southeast New England Performance Cluster, to Nancy Gill

(June 21, 2004).

79.      The June 21, 2004 letter apprised Nancy that: (1) benefits are

administered by the Office of Personnel Management, which relies on Public Law 104-

199, i.e., DOMA, 1 U.S.C. § 7, to exclude the marriages of same-sex couples from the

requested benefit; and (2) as to "the factors of discrimination as depicted [sic] in the Civil

Rights Act, Title VII does not include sexual orientation as a protected class."

80.      On June 29, 2004, Nancy signed and filed an "EEO Complaint of

Discrimination in the Postal Service," seeking "the same rights and benefits and

responsibilities as any one of my co-workers who are also married."  Case No. 1B-024-

0007-04; Complaint, Item No. 17.

81.      By decision dated July 20, 2004, Nancy's Complaint in Case No. 1B-

024-007-04 was dismissed for failure to state a claim because discrimination based on

sexual orientation "is not actionable under EEOC Regulations."

82.     Because the Office of Personnel Management, following DOMA, 1 U.S.C. § 7, would not permit Nancy to cover Marcelle through her family health insurance, Nancy and Marcelle had to purchase health insurance for Marcelle that would otherwise have cost nothing, since Nancy already had the "Self and Family" plan.

83.     Because of the extra expense of health insurance for Marcelle, Nancy again sought to add Marcelle to her FEHB Self and Family Plan, as well as to the available vision benefit plan ("FEDVIP") and to her flexible spending account, during the open enrollment period between November 10, 2008 and December 9, 2008.

84.     Initially, Nancy sought to enroll Marcelle through the PostalEASE system through her home computer, and then through the PostalEASE Employee Kiosk at her workplace on Friday, November 21, 2008.

85.     When Nancy attempted to add Marcelle as her spouse for health insurance and identified Marcelle's gender as "female," the system returned a message that said: "Your gender and the gender selected for your spouse cannot be the same."

86.     When Nancy attempted to add Marcelle as her spouse for the vision insurance plan and identified Marcelle's gender as "female," the system again returned a message that said: "Your gender and the gender selected for your spouse cannot be the same."

87.     Although PostalEASE allowed Nancy to enter Marcelle on her list of dependents, when Nancy attempted to "Finish Enrollment," the system produced an error message: "Unknown Tran Codes."

88.     Nancy also received a message from the kiosk system that said: "The system cannot process a 2809 form for you at this time – You must complete an FEHB

enrollment through PostalEASE before you can print a completed 2809 Enrollment Form."

89.     Despite the refusal of the PostalEASE system to accept her enrollment request, Nancy persisted by phone and by mail to obtain assistance from her local Human Resources officer in adding Marcelle to her health and vision benefit plans and flexible spending account.

90.     Nancy received a response by letter dated December 8, 2008, from Michelle Palardy, HR Generalist Principal, USPS – SENE District.  Letter from Michelle Palardy, Human Resources General Specialist, USPS—Southeast New England District, to Nancy Gill (Dec. 8, 2008).

91.     The text of the December 8, 2008, letter stated in its entirety:

This is in response to your inquiry regarding adding your spouse to your health benefits during open season 2009.

After researching the situation, I have found information on the US Office of Personnel Management website (www.opm.gov) that states that same sex partners are not eligible as family members under enrollment in Federal Employees Health Benefits Programs, Federal Employees Dental and Vision Insurance Program, Federal Employees' Group Life Insurance Program, Federal Flexible Spending Account Program, and Federal Long Term Care Insurance Program.

The Office of Personnel Management sites [sic] Public Law 104199 Defense of Marriage Act.  It states, "The word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife."

I have attached a copy of the page from the OPM website that states this. I hope that this has been responsive to your concerns in this matter.

92.     The Office of Personnel Management ("OPM") website material attached to the December 8, 2008, letter indicates that it "can be found on the web at the following url: http://opm.gov/insure/lifeevents/le4a.asp."

93.     Nancy followed up by writing a letter to the United States Postal Service HR Shared Services Center in Greensboro, North Carolina to confirm that there were no further steps she could take to enroll Marcelle for spousal benefits.  Letter from Nancy Gill to Michelle Palardy, Human Resources General Specialist, USPS—Southeast New England District and Open Enrollment Manager, Shared Services, USPS (Dec. 18, 2008).

94.     By letter dated January 2, 2009, the HR Shared Services Center wrote to Nancy regarding Reference # H-2583279 and stated: "the information provided to you by Michelle Palardy is correct."  Letter from USPS, Human Resources Shared Service Center, Greensborough, N.C., to Nancy Gill (Jan. 2, 2009).

95.     As a result of the United States Postal Service's application of DOMA, 1 U.S.C. § 7, Marcelle has been denied both health and vision insurance as well as all other employment-related benefits available to the spouses of United States Postal Service employees.

96.     As a result of the United States Postal Service's application of DOMA, 1 U.S.C. § 7, Nancy has been prohibited from covering Marcelle under her federal flexible spending account as well as all other employment-related benefits available to United States Postal Service employees for the support of their spouses.

97.     As a result of this exclusion from benefits, Marcelle and Nancy have suffered specific and concrete financial harms.  Spousal health insurance and vision

coverage are valuable benefits of employment.  Marcelle and Nancy have been forced to

buy health insurance for Marcelle as if they were not married, to the financial detriment

of Marcelle, Nancy, and their children.  Nancy and Marcelle have also been denied,

among other things, the financial benefits that accrue to a household from the use of a

flexible spending account for the medical expenses of a spouse.

Plaintiffs Martin Koski and James Fitzgerald

98.     Plaintiff Martin Koski ("Martin") is a retired employee of the Social

Security Administration.

99.     Martin and his spouse James Fitzgerald ("Jim") have been in a

committed relationship for over 33 years.

100.     Jim currently works as a counselor's aide at an alcohol treatment

center.

101.     Martin worked as a claims representative for the Social Security

Administration from 1968 until 1979 in Boston.

102.     In 1979, Martin and Jim decided to move to Florida together, and so

Martin left his job at the Social Security Administration.

103.     In Florida, Martin worked as a travel agent, while he and Jim together

took care of Martin's father, who was dying of cancer.  Martin's father passed away in

1994, with Martin and Jim at his side.

104.     In 1995, Martin and Jim returned to Boston.  Martin was welcomed

back to his prior position as a claims representative for the Social Security

Administration, where he worked until his retirement in 2005.

105.     As a former employee and qualified annuitant of the Social Security

Administration, Martin is enrolled in the FEHB.

106.     For some time prior to October 5, 2007, Martin was enrolled in FEHB

under a "Self-Only" plan, covering, as the name suggests, himself only.

107.     Pursuant to 5 U.S.C. § 8905, 5 C.F.R. § 890.306(g)(1) and the FEHB

handbook, an FEHB enrollee is allowed to change his enrollment from "Self Only" to

"Self and Family" beginning 31 days before and ending 60 days after a change in family

status, which includes a change in marital status.

108.     According to the FEHB Handbook, "Self and Family" enrollment is

described as follows:

**Self and Family**

A self and family enrollment provides benefits for you and your eligible family
members.  All of your eligible family members are automatically covered, even if
you didn't list them on your Health Benefits Election Form (SF 2809) or other
appropriate request.  You cannot exclude any eligible family member and you
cannot provide coverage for anyone who is not an eligible family member.

FEHB Handbook, Enrollment, Types of Enrollment.

109.     According to 5 U.S.C. § 8901(5), "member of family" is defined, in

part, to "mean[] the spouse of an employee or annuitant and an unmarried child under 22

years of age . . . ."

110.     After more than 30 years together, Martin and Jim married on

September 10, 2007, in Bourne, Massachusetts, in strict and complete accordance with

Massachusetts law.  They married because of their longstanding commitment to one

another and their belief that marriage would provide them with additional legal security.

111.      On October 5, 2007, within the 60-day period in which to request a change in enrollment, Martin sent OPM a request to change his enrollment for health benefits from "Self-Only" to "Self and Family" and included his Massachusetts marriage certificate as proof of marriage.

112.      By letter dated January 15, 2008, Martin received a denial of his request from the Retirement Benefits Branch of OPM.  Letter from Tianna Butler, Annuitant Insurance Specialist, Retirement Benefits Branch, OPM, to Martin A. Koski (Jan. 15, 2008).

113.      OPM based its denial of Martin's request for family health insurance for Jim on DOMA, 1 U.S.C. § 7.  In its January 15, 2008 letter, OPM stated:

> Coverage under the FEHB Program is limited to certain family members. The FEHB Program is governed by Federal law.  Title 5, United States Code, section 8901(5) defines family members as an employee's or annuitant's spouse and his or her unmarried dependent children under the age of 22.
>
> Public Law 104-199, the Defense of Marriage Act, states, "In determining the meaning of any Act of Congress, or any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is husband or a wife."
>
> Based on the FEHB law and the Defense of Marriage Act, OPM has determined that James Fitzgerald is not a recognized qualified dependant and cannot be added to your existing enrollment in the FEHB Program. Therefore, your enrollment will remain as a self only enrollment.

114.      On January 25, 2008, Martin timely requested reconsideration of his denial.  Letter from Martin A. Koski to OPM, Retirement Operations Center, Boyers, P.A. (Jan. 25, 2008).

115.     By letter dated July 1, 2008, OPM responded to Martin's request for reconsideration and affirmed its original decision to deny Martin's request to change his enrollment to "Self and Family" coverage.  Letter from Antoinette Vanderhorst, Legal Administrative Specialist, Disability, Reconsideration and Appeals Group, OPM, to Martin A. Koski (July 1, 2008).

116.     In its July 1, 2008 denial of Martin's request for reconsideration, OPM again relied upon DOMA, 1 U.S.C. § 7:

> Because your marriage to James Thomas Fitzgerald does not meet the definition of marriage in accordance with § 7 [DOMA, 1 U.S.C. § 7], we find that he does not qualify as a family member as specified under section 8901(5) of title 5, United States Code.  Therefore, we must deny your request to change your FEHB self-only coverage to self and family coverage.

117.     On October 10, 2008, Martin sent a letter to OPM requesting a survivor annuity benefit for his spouse, Jim, and included a copy of his marriage certificate as proof of marriage.  Letter from Martin A. Koski to OPM, Boyers, P.A. (Oct. 25, 2008).

118.     On November 13, 2008, Martin sent an e-mail to OPM requesting information about the processing of his request for a survivor annuity benefit.  E-mail from Martin A. Koski to OPM (Nov. 13, 2008, 4:21:30 PM).

119.     On December 9, 2008, OPM responded to Martin's e-mail informing him that his request had been logged into the "Post-Retirement Section" in Boyers, Pennsylvania on October 23, 2008, and was currently being processed.  E-mail from Bambi Bonaddio, Customer Service Specialist, Customer Services Group, OPM, to Martin A. Koski (Dec. 9, 2008, 10:49 EST).

120.     By letter dated January 26, 2009, OPM denied Martin's request for survivor annuity benefits for Jim, stating that "We do not recognize same sex marriages. The word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband and wife."  Letter from Susan Bonefeste, Legal Administrative Specialist, Post Retirement Section, OPM, to Martin A. Koski (Jan. 26, 2009).  The letter informed Martin of the process for requesting reconsideration of OPM's denial.

121.     On February 2, 2009, Martin timely requested reconsideration of OPM's denial of his request for survivor annuity benefits for Jim.  Letter from Martin A. Koski to OPM, Retirement Operations Center, Boyers, P.A. (Feb. 2, 2009).

122.     As a result of OPM's application of DOMA, 1 U.S.C. § 7, Jim has been denied health insurance and survivor annuity benefits available to the spouses of federal retirees even though he is legally Martin's spouse under Massachusetts law.

123.     As a result of this exclusion from benefits, Martin and Jim have suffered specific and concrete financial harms to themselves and to their household.  In particular, Jim has severe asthma that must be controlled with multiple medications.  Jim has been forced, among other things, to purchase health insurance for himself with coverage inferior to that of the federal employee health insurance benefit and at a cost greater than the cost of the federal spousal health insurance coverage.  His deductibles and prescription medication co-payments are higher than they would be if he had access to the FEHB insurance.

Plaintiff Dean Hara

124.      Plaintiff Dean Hara ("Dean") is a financial advisor working as an independent contractor with a financial services company.

125.      Dean is the widowed spouse of former United States Congressman Gerry E. Studds ("Congressman Studds" or "Gerry").

126.      Congressman Studds served in Congress, as a Representative from Massachusetts, for 24 years from his first election in November 1972 until he did not seek re-election in 1996 and his retirement in January 1997.

127.      Dean moved to Washington, D.C. in 1979 for school and then employment.  He and Gerry first met through mutual acquaintances in the early 1980s, and they crossed paths often in their mutual neighborhood of Dupont Circle.

128.      In January 1991, Gerry and Dean began a dating relationship.  Eight months later, on Labor Day, Gerry proposed to Dean, asking him to accept and return a commitment for life.  Shortly thereafter, Dean accepted, and they were a committed couple from that day in 1991 forward.

129.      Throughout Congressman Studds's terms from 1991 through January 1997, Dean attended countless public, Congressional, and political events as the Congressman's recognized spouse.

130.      Dean became a member of the Democratic Spouses organization.  He continues to belong to that organization to this day.

131.      Dean received and carried the official Congressional Spouse Photo Identification card listing him as the spouse of Congressman Studds, 10th MA, which

was issued by the Sergeant at Arms of the U.S. House of Representatives in January 1995.

132.    Upon Gerry's retirement from federal employment, he and Dean moved to Massachusetts, splitting time between Provincetown, Massachusetts, which was in Gerry's congressional district, and Boston, Massachusetts until 2002, when Boston became their sole residence.

133.    After 13 years as a committed couple, on May 24, 2004, Gerry and Dean were married in Boston, Massachusetts, in strict and complete accordance with Massachusetts law. They married because the law finally allowed them to formalize the vow of lifetime commitment they had made in 1991.

134.    On October 3, 2006, Gerry never returned home from his morning walk with their dog, Bonnie, as he had suddenly lost consciousness and collapsed because of a blood clot in his lung.

135.    Initially, Gerry's condition improved in the hospital but then worsened unexpectedly on Friday, October 13, 2006. He died in the early morning hours of Saturday, October 14, 2006, at Boston Medical Center, leaving Dean as his surviving spouse.

136.    At the time of Congressman Studds's death, he was insured under the Social Security program, and he and Dean had been living together in the same household in Boston, Massachusetts.

137.    Under 42 U.S.C. § 402(i) and 20 C.F.R. §§ 404.390-404.391 and §404.347, a surviving spouse is entitled to a lump-sum death payment of $255 if the surviving spouse was "living in the same household with the deceased at the time of

death," if the surviving spouse applies for the benefit "prior to the expiration of two years after the date of death …," and if the deceased spouse was "fully or currently insured" at the time of death.

138.      Shortly after Gerry's death, Dean applied for this Social Security lump-sum death benefit.

139.      By letter dated November 14, 2006, the Social Security Administration issued a Notice of Disapproved Claim to Dean, stating in pertinent part:

> We have considered your application for Social Security benefits.
>
> Since the Defense of Marriage Act prohibits SSA from finding that you and the insured were married for benefit purposes, you are not eligible for the lump sum death payment.
>
> **Other Social Security Benefits**
>
> You do not qualify for any other Social Security benefits based on the application you filed.  In the future, if you think you may be entitled to benefits, you will need to apply again.
>
> **If You Disagree With The Decision**
>
> If you disagree with the decision, you have the right to appeal….

Letter from Judy Bernstein, Field Office Manager, Social Security Administration, Boston Office, to Dean T. Hara (Nov. 14, 2006).

140.      As a result of the actions of the Social Security Administration and solely because of the existence and operation of DOMA, 1 U.S.C. § 7, Dean, Gerry's surviving legal spouse under Massachusetts law, has been denied the $255 death benefit otherwise available to him under 42 U.S.C. § 402(i).

141.     In 2006, Dean made an explicit and formal request to SSA, and he received an explicit and formal notice from the SSA denying him the right and opportunity to receive a lump-sum death benefit following the death of his legal spouse.

142.     Based upon his 27 years of federal service, including 24 years as a Congressman from Massachusetts, Congressman Studds was a participant in the Civil Service Retirement System ("CSRS").

143.     As part of his retirement planning, on May 17, 1993, Gerry designated Dean as the beneficiary of any "lump sum benefit" payable upon his death under 5 U.S.C. § 8342 and filed that designation with OPM.  Standard Form No. 2808 (May 17, 1993).

144.     On an immediate retirement application dated September 18, 1996, Congressman Studds indicated that he was unmarried, and he elected an unreduced annuity based on 27 years of total federal service.  Standard Form No. 2801 (Sept. 18, 1996).  Congressman Studds had no alternative, because no state had yet recognized his and Dean's right to marry.

145.     While Congressman Studds and Dean married in 2004, DOMA, 1 U.S.C. § 7, still prevented Congressman Studds from electing a retirement annuity that provided a spousal annuity for Dean.

146.     Congressman Studds received retirement annuity benefits from his January 2, 1997, retirement until his death.  These benefits were a meaningful part of the household income that he and Dean relied upon.

147.     On March 1, 2007, Dean applied for death benefits, both as Gerry's widower and as executor of Gerry's estate, by submitting an "Application for Death

Benefits – Civil Service Retirement System" on Standard Form 2800 (Revised May 2000).

148.     OPM issued a check, dated March 29, 2007, to Dean T. Hara in the amount of $4,141.38 and with the notation "78 CSF LUMPSUM."  This represented the lump-sum benefit remaining in Congressman Studds's retirement account.

149.     OPM's communication to Dean that accompanied the March 29, 2007, check included the statement: "You are entitled to a lump sum payment because of the death of a former employee."

150.     OPM's communication to Dean that accompanied the March 29, 2007 check also included, under "Remarks," the following:

> WE REGRET TO INFORM YOU THAT YOUR LATE SPOUSE DID NOT ELECT SURVIVOR BENEFITS.  THIS MONEY IS ALL YOU WILL RECEIVE FROM RETIREMENT.

151.     By letter dated May 30, 2007, OPM advised Dean that it was denying his claim for a monthly survivor annuity.  For its reasons, OPM's letter states, in its entirety: "Our records show that your spouse did not notify our office of your marriage and no election was made to provide a survivor annuity for you."  Letter from Brenda Hughes, Legal Administrative Specialist, Retirement Operations Center, OPM, to Dean T. Hara (May 30, 2007).

152.     Dean requested reconsideration of OPM's decision by letter dated June 28, 2007.  Letter from Dean T. Hara to OPM Retirement Operations Center (June 28, 2007).

153.     By letter dated October 24, 2007, OPM denied Dean's request for reconsideration, reiterating its position that no benefits were available to Dean because

Congressman Studds had not elected a survivor annuity for Dean.  Letter from Joseph E.

Miller, Jr., Legal Administrative Specialist, OPM, to Dean T. Hara (Oct. 24, 2007).

154.     Dean filed a Notice of Appeal to the Merit Systems Protection Board

("MSPB") by letter dated November 27, 2007.  Letter from Dean T. Hara to Regional

Director, Northeastern Regional Office, MSPB, Philadelphia, P.A. (Nov. 27, 2007).

155.     On February 26, 2008, OPM rescinded its final decision of October 24,

2007, indicating that a new reconsideration decision would be issued in the future.  As a

result, Dean's original MSPB appeal was dismissed without prejudice.

156.     By letter dated June 24, 2008, OPM issued a new reconsideration

decision and again reiterated its denial of a survivor annuity to Dean while asserting two

grounds for denial:

> You have not established that Representative Studds elected a survivor
> annuity benefit for you.
>
> A same-sex marriage in any jurisdiction cannot be recognized for benefit
> entitlement purposes under any Federal statute administered by OPM.
> Therefore, even if Representative Studds had elected a survivor benefit for
> you, under 1 U.S.C. §7, we could not approve your application for a
> survivor annuity.

Letter from Joseph E. Miller, Jr., Legal Administrative Specialist, OPM, to Dean T.

Hara (June 24, 2008).

157.     Dean timely re-filed an appeal to the MSPB based upon OPM's new

reconsideration decision.

158.     Following a one-day hearing in October 2008, Chief Administrative

Judge William L. Boulden issued a decision on Dean's appeal on December 17, 2008.

Dean T. Hara v. Office of Personnel Management (CSF3067396), Docket No. PH-0831-

08-0099-I-2.

159.     Judge Boulden's decision determined that Dean was not legally eligible for a federal spousal survivor annuity for the sole reason that, by virtue of DOMA, 1 U.S.C. § 7, Dean and Gerry did not have a "marriage" and Dean was not a "spouse" for purposes of the relevant statutes governing federal spousal survivor annuities.

160.     Judge Boulden also determined that it was beyond the purview of the MSPB to determine the constitutionality of 1 U.S.C. § 7.

161.     Judge Boulden also determined that Congressman Studds was not subject to a two-year election requirement for naming Dean as a survivor annuitant because "pursuant to DOMA, [Dean] was not 'married' to Congressman Studds and they were not 'spouses.'"

162.     Judge Boulden also found that Congressman Studds intended for Dean to have the benefit of a spousal survivor annuity if that was legally possible.  As a result, even if an election by Congressman Studds were required, Judge Boulden determined that the election would be considered to have been timely made and that OPM would be estopped from relying on any asserted failure of election.

163.     Judge Boulden's Initial Decision of December 17, 2008, became final on January 21, 2009.

164.     As a result of the actions of OPM, which were based solely on the existence and operation of DOMA, 1 U.S.C. § 7, Dean has been denied a spousal survivor annuity available to the surviving spouses of eligible federal employees within the CSRS system who, like Congressman Studds, intended to create such a spousal annuity for their spouses.

165.     As a result of this exclusion from the spousal survivor annuity, Dean has suffered substantial ongoing financial harm.

166.     Because the MSPB record demonstrated that Congressman Studds intended to provide Dean with all the federal employment-related benefits available to a spouse, Dean applied to OPM for federal health insurance benefits available to a surviving spouse by Express Mail letter dated January 20, 2009.  Letter from Dean T. Hara to Retirement Operations Center, OPM (Jan. 20, 2009).

167.     That letter dated January 20, 2009, was delivered to the OPM Retirement Operations Center on January 21, 2009.

168.     Dean presented to OPM his claim for federal health insurance benefits as the surviving spouse of Congressman Studds, who intended to establish the availability of such insurance benefit for Dean.

169.     Based upon Dean's prior interactions with OPM, as well as the interactions of others with OPM, including plaintiff Nancy Gill and Martin Koski, it is clear that OPM will deny Dean's request for health insurance coverage and cite DOMA, 1 U.S.C. § 7, as OPM has done to date both privately and publicly in a variety of settings.


Plaintiffs Mary Ritchie and Kathleen Bush

170.     Plaintiff Mary Ritchie ("Mary") is a State Police Sergeant with the Commonwealth of Massachusetts.  Mary has been with the State Police for more than 20 years, and she now specializes in supervising major crime scenes and crime scene forensics.

171.     Plaintiff Kathleen Bush ("Kathy") is a homemaker and an active volunteer in the local school system.

172.     Mary and Kathy met through a mutual friend, at a Christmas party in 1989.  They have been a committed couple for 19 years, since 1990.

173.     Mary and Kathy have two school-age children.  Their sons are 7 and 10 years old, and both have hyphenated last names using their parents' surnames.

174.     When their first son was born, in 1999, Mary took a parenting leave to care for him.  Later, Mary and Kathy reached a joint decision that Kathy would become a stay-at-home parent.  Prior to that time, Kathy had been successfully employed in sales and marketing for an established medical journal.

175.     After 14 years together as a committed couple, Mary and Kathy were married at their home in Framingham on May 22, 2004 in strict and complete accordance with Massachusetts law.  They married because "marriage" is what best described their family to each of them.  Mary also expected to protect their family through employment benefits that their marriage would make available.

176.     Mary, Kathy and their two sons live together in a home that Mary and Kathy jointly own in Framingham.  Both their sons attend the local public schools. Kathy serves on the Executive Board of the Parent Teacher Organization.

177.     Kathy and Mary were born and raised in Framingham and Boston, respectively, and their family is very close with each other's large extended families.

178.     As a legally married couple, Mary and Kathy file their state income tax returns with the Commonwealth of Massachusetts as Married Filing Jointly.  They have filed their state income tax returns as Married Filing Jointly since the 2004 tax year.

179.     Despite their legal marital status, and the requirement that they file their state income tax returns as Married with the Massachusetts Department of Revenue, they have not filed their annual federal income tax returns as Married Filing Jointly because of the federal government's non-recognition of their marriage pursuant to DOMA, 1 U.S.C. § 7.

180.     Each year since their marriage in 2004, Mary has filed and paid federal taxes using the "Head of Household" filing status because of DOMA, 1 U.S.C. § 7. Kathy has had no income and thus has not been required to file any federal income tax return.

181.     Each year since their marriage in 2004, Mary and Kathy have paid substantially more in federal income taxes as a result of their inability to file as Married Filing Jointly.

182.     Additionally, for the tax year 2008, Mary sought to contribute money toward a spousal Individual Retirement Account ("IRA") for the benefit of Kathy, just as any working spouse can do for a spouse who does not earn income.  Due to their inability to file federal income tax returns as Married Filing Jointly, Mary cannot take the allowable tax deduction for her contribution to Kathy's IRA account, even though other working spouses can take the same deduction.

183.     For the tax year 2004, Mary and Kathy paid $1,054 more in federal income tax than they would have paid had they been permitted to file as Married Filing Jointly.

184.     For the tax year 2005, Mary and Kathy paid $2,703 more in federal income tax than they would have paid had they been permitted to file as Married Filing Jointly.

185.     For the tax year 2006, Mary and Kathy paid $4,390 more in federal income tax than they would have paid had they been permitted to file as Married Filing Jointly.

186.     For the tax year 2007, Mary and Kathy paid $ 6,371 more in federal income tax than they would have paid had they been permitted to file as Married Filing Jointly.

187.     Additionally, Mary is and has been unable to contribute on a tax-advantaged basis to Kathy's IRA as is ordinarily permitted for spouses under Section 219(c) of the Internal Revenue Code, as amended ("I.R.C.").

188.     Having timely paid all their federal income taxes in full, Mary and Kathy later submitted amended federal income tax returns, on IRS Form 1040X, changing their filing status from Mary filing alone as Head of Household to Mary and Kathy filing together as Married Filing Jointly.

189.     On April 13, 2008, Mary and Kathy submitted an amended federal income tax return to the IRS on IRS Form 1040X for the tax year 2004.  The 2004 amended federal income tax return included a claim for refund in the amount of $1,054.

190.     Mary and Kathy attached to the IRS Form 1040X Amended Return the Form 8275, Disclosure Statement and the 8275-R, Regulation Disclosure Statement explaining their changes to the originally filed federal income tax return.  In its entirety, the Attachment states:

**Attachment To Form 1040X, Part II, Explanation of Changes**
**Form 8275, Disclosure Statement**
**Form 8275-R, Regulation Disclosure Statement**
**2004 Tax Year**

## REFUND CLAIM BASED ON THE UNCONSTITUTIONALITY OF THE "DEFENSE OF MARRIAGE ACT"

The taxpayer, Mary E. Ritchie, ID #[###-##-####], a spouse in a same-sex couple, was married under the laws of the Commonwealth of Massachusetts as of December 31, 2004. For the tax year of this amended return, the taxpayer filed a joint Massachusetts income tax return with her spouse as a married couple. However, in accordance with the federal law known as the Defense of Marriage Act ("DOMA"), the taxpayer filed an individual, federal income tax return as though she was unmarried. The taxpayer believes that being required to file as though she is unmarried amounts to unequal treatment compared to other married persons in Massachusetts. The taxpayer believes that her marriage, which is valid under Massachusetts law, should be respected for federal tax purposes, just like the Massachusetts marriages of heterosexual couples. Although this position is contrary to DOMA, the taxpayer believes that DOMA is unconstitutional and that she should be allowed to file this amended joint return with her spouse and receive the refund shown herein.

In particular, if the taxpayer were able to file as married filing jointly, such a filing status would affect the following adjustments:

The federal tax as decreased from $5,331 to $4,277.
The taxpayer previously paid $5,331 in federal income tax in her original returnfor this taxable year.
As a result of these adjustments, the amount of overpayment is $1,054.

191.    With each successive amended federal income tax return and refund

claim filed, Mary and Kathy included the same Explanation of Changes and Disclosure

Statement Attachment described in Paragraph 190, except that the tax year, amount of

federal income tax paid and amount of refund claimed were adjusted to reflect the proper

tax year.

192.    Correspondence from the IRS confirms that the 2004 amended federal

income tax return and accompanying refund claim were timely received on April 15,

2008.  Letter from P.J. Bazick, Field Director, Accounts Management, IRS, Andover, M.A., to Mary E. Ritchie (July 17, 2008).

193.     In a reply dated July 17, 2008, the IRS disallowed Mary and Kathy's refund claim for 2004.  *Id.*  Under the heading "Why We Cannot Allow Your Claim," the IRS stated that: "[t]he Federal Government does not recognize same sex marriages and differs with Massachusetts on this point."  *Id.*

194.     On April 13, 2008, Mary and Kathy submitted to the IRS an amended federal income tax return on IRS Form 1040X for the tax year 2005.  The amended federal income tax return included a claim for refund in the amount of $2,703.

195.     Correspondence from the IRS confirms that the 2005 amended federal income tax return and accompanying refund claim were timely received on April 15, 2008.  Letter from P.J. Bazick, Field Director, Accounts Management, IRS, Andover, M.A., to Mary E. Ritchie (July 18, 2008).

196.     In a reply dated July 18, 2008, the IRS disallowed Mary and Kathy's refund claim for 2005.  Under the heading "Why We Cannot Allow Your Claim," the IRS stated that: "[t]he Federal Government does not recognize same sex marriages."  *Id.*

197.     On April 13, 2008, Mary and Kathy submitted to the IRS an amended federal income tax return on IRS Form 1040X for the tax year 2006.  The amended federal income tax return included a claim for refund in the amount of $4,390.

198.     Correspondence from the IRS confirms that the 2006 amended federal income tax return and accompanying refund claim were timely received on April 15, 2008.  Letter from P.J. Bazick, Field Director, Accounts Management, IRS, Andover, M.A., to Mary E. Ritchie (July 18, 2008).

199.    In a reply dated July 18, 2008, the IRS disallowed Mary and Kathy's refund claim for 2006.  *Id.*  Under the heading "Why We Cannot Allow Your Claim," the IRS stated that: "[c]urrent federal law does not recognize same sex marriage even if legally constituted by a sovereign state."  *Id.*

200.    Each disallowance that Mary and Kathy received from the IRS notified them of their right to file suit in the United States District Court within two years from the date of the disallowance letters.

201.    As a result of these IRS disallowances, and solely because of the existence and operation of DOMA, 1 U.S.C. § 7, Mary and Kathy have suffered specific and concrete financial harms to themselves and to their household.  Specifically, the 2004, 2005 and 2006 disallowances have forced Mary and Kathy to pay $8,147 more in federal income taxes than a similarly situated different-sex married couple would have paid for those same tax years.

202.    The additional money that Mary and Kathy had to pay in federal income taxes because of DOMA, 1 U.S.C. § 7, could have gone into savings or toward supporting their two young sons.

203.    Moreover, the specific and concrete financial harms to Mary and Kathy's household continue to grow with each additional year that DOMA, 1 U.S.C. § 7, operates to bar the IRS from recognizing them as a married couple entitled to the Married Filing Jointly status.

Plaintiffs Melba Abreu and Beatrice Hernandez

204.     Plaintiff Melba Abreu ("Melba") is the chief financial officer for a non-profit organization located in Boston, Massachusetts.

205.     Plaintiff Beatrice Hernandez ("Beatrice") is in the process of founding her own web design practice.  The company is presently in its initial stages and generates no income.  Beatrice also is a writer and is currently in the process of writing two books.

206.     Melba and Beatrice met in Miami in May 1987.  They were both living and working in Miami at the time.  Melba and Beatrice's connection was immediate, and, consequently, they became a committed couple after a short period of time.

207.     Shortly after they began their relationship, Melba and Beatrice moved together to Brooklyn, New York because Beatrice was accepted to a degree program at New York University.  In November 1987, the day they moved into their first apartment in Brooklyn, Melba and Beatrice celebrated the beginning of their lives together by sharing a bottle of wine while unpacking a box of new dishes for their new home.  In the simplicity of that day they knew that their commitment was their bond, and that together they would bear witness to each other's lives.  They view this as the beginning of their marriage.

208.     Melba and Beatrice have been a devoted couple for more than 21 years, since 1987.

209.     On May 20, 2004, after 17 years as a committed couple, Melba and Beatrice were married in strict and complete accordance with Massachusetts law because they finally had the opportunity to affirm under law what they had long ago declared in their hearts.

210.     Melba and Beatrice live in Boston, Massachusetts. They dream of the day they can own a home and build a business together

211.     As a legally married couple, Melba and Beatrice file their state income tax returns with the Commonwealth of Massachusetts as Married Filing Jointly.  They have filed their state income tax returns as Married Filing Jointly since the 2004 tax year.

212.     Despite their legal marital status, and the requirement that they file their state income tax returns as Married with the Massachusetts Department of Revenue, they have not filed their annual federal income tax returns as Married Filing Jointly because of the federal government's non-recognition of their marriage pursuant to DOMA, 1 U.S.C. § 7.

213.     Each year since their marriage in 2004, Melba has filed and paid federal income tax returns using the Single filing status because of DOMA, 1 U.S.C. § 7. Beatrice has had no income and thus has not been required to file any federal income tax return.

214.     Each year since their marriage in 2004, Melba and Beatrice have paid substantially more in federal income tax as a result of their inability to file as Married Filing Jointly.

215.     In the tax year 2004, Melba and Beatrice paid $4,687 more in federal income tax than they would have paid had they been permitted to file as Married Filing Jointly.

216.     For the tax year 2005, Melba and Beatrice paid $3,785 more in federal income tax than they would have paid had they been permitted to file as Married Filing Jointly.

217.     For the tax year 2006, Melba and Beatrice paid $5,546 more in federal income tax than they would have paid had they been permitted to file as Married Filing Jointly.

218.     For the tax year 2007, Melba and Beatrice paid $5,697 more in federal income tax than they would have paid had they been permitted to file as Married Filing Jointly.

219.     Having timely paid all their federal income taxes in full, Melba and Beatrice later submitted amended federal tax returns, on IRS Form 1040X, changing their filing status from Melba filing alone as Single to Melba and Beatrice filing together as Married Filing Jointly.

220.     On April 14, 2008, Melba and Beatrice submitted to the IRS an amended federal income tax return on IRS Form 1040X for the tax year 2004.  The 2004 amended federal income tax return included a claim for refund in the amount of $4,687.

221.     With their 2004 amended federal income tax return and refund claim, Melba and Beatrice attached the same Form 8275, Disclosure Statement and 8275-R, Regulation Disclosure Statement described in Paragraph 190, in order to explain their changes to the originally filed federal income tax return.  Melba's and Beatrice's Explanation of Changes, Form 8275 Disclosure Statement and Form 8275-R, Regulation Disclosure Statement differs from that described in Paragraph 190 only insofar as it identifies different taxpayers, a different amount of federal income tax paid, and a different amount of refund claimed.

222.     With each successive amended federal income tax return and refund claim filed, Melba and Beatrice included the same Explanation of Changes and

Disclosure Statement Attachment described in Paragraph 190 and Paragraph 221, except that the tax year, amount of federal income tax paid, and amount of refund claimed were adjusted to reflect the proper tax year.

223.     Correspondence from the IRS confirms that the 2004 amended federal income tax return and accompanying refund claim were timely received on April 15, 2008.

224.     In a reply dated June 20, 2008, the IRS disallowed Melba and Beatrice's refund claim for 2004.  Under the heading "Why We Cannot Allow Your Claim," the IRS stated that: "Same sex marriages are not recognized at the Federal level." Letter from P.J. Bazick, Field Director, Accounts Management, IRS, Andover, M.A., to Melba Abreu (June 20, 2008).

225.     On April 14, 2008, Melba and Beatrice submitted to the IRS an amended federal income tax return on IRS Form 1040X for the tax year 2005.  The amended federal income tax return included a claim for refund in the amount of $3,785.

226.     Correspondence from the IRS confirms that the 2005 amended federal income tax return and accompanying refund claim were timely received on April 15, 2008.  Letter from P.J. Bazick, Field Director, Accounts Management, IRS, Andover, M.A., to Melba Abreu (June 30, 2008).

227.     In a reply dated June 30, 2008, the IRS disallowed Melba and Beatrice's refund claim for 2005.  *Id.*  Under the heading "Why We Cannot Allow Your Claim," the IRS stated that: "Same sex marriages are not recognized at the Federal level." *Id.*

228.     On April 14, 2008, Melba and Beatrice submitted to the IRS an amended federal income tax return on IRS Form 1040X for the tax year 2006.  The amended federal income tax return included a claim for refund in the amount of $ 5,546.

229.     Correspondence from the IRS confirms that the 2006 amended federal income tax return and accompanying refund claim were timely received on April 15, 2008.  Letter from P.J. Bazick, Field Director, Accounts Management, IRS, Andover, M.A., to Melba C. Abreu (June 30, 2008).

230.     In a reply dated June 30, 2008, the IRS disallowed Melba and Beatrice's refund claim for 2006.  *Id.*  Under the heading "Why We Cannot Allow Your Claim," the IRS stated that: "same sex marriages are not recognized at the Federal level." *Id.*

231.     Each disallowance letter that Melba and Beatrice received from the IRS notified them of their right to file suit on their claims to recover federal income tax in the United States District Court within two years from the date of the disallowance letters.

232.     As a result of these IRS disallowances, and solely because of the existence and operation of DOMA, 1 U.S.C. § 7, Melba and Beatrice have suffered specific and concrete financial harms to themselves and to their household.  Specifically, the 2004, 2005 and 2006 disallowances have forced Melba and Beatrice to pay $14,018 more in federal income taxes than a similarly situated married couple would have paid for those same tax years.

233.     The additional money Melba and Beatrice had to pay in federal income taxes because of DOMA, 1 U.S.C. § 7, could have gone into savings for Melba and Beatrice's future or provided for the start-up expenses of Beatrice's practice.

234.     Moreover, the specific and concrete financial harms to Melba and Beatrice's household continue to grow with each additional year that DOMA, 1 U.S.C. § 7, bars the IRS from recognizing them as a married couple entitled to the Married Filing Jointly status.

Plaintiffs Bette Jo Green and Jo Ann Whitehead

235.     Plaintiff Bette Jo Green ("Bette Jo") recently retired from a 35-year career as a Labor and Delivery Nurse at a large, Boston-area hospital.  She is almost 67 years old.

236.     Plaintiff Jo Ann Whitehead ("Jo Ann") is a Community Garden Educator with a non-profit group in the Boston area.  Jo Ann has worked in urban gardening for more than 10 years and previously worked in public school settings.  Jo Ann is 67 years old.

237.     Jo Ann and Bette Jo met in 1960 and were friends at Manchester College in Indiana.  Jo Ann and Bette Jo graduated from Manchester College in 1964 and were roommates during their senior year.

238.     After remaining in contact for more than 15 years, a time during which Bette Jo lived in Massachusetts and Jo Ann remained in Indiana, the two women visited each other on several occasions and then began a romantic relationship in 1981.

239.     For more than 27 years, Bette Jo and Jo Ann have been in a committed relationship and have lived together in Jamaica Plain, Massachusetts, where they are deeply involved in the community.

240.     Jo Ann and Bette Jo both volunteer in their community and are active in their Neighborhood Watch.  Bette Jo takes their elderly neighbors on shopping trips, and both Bette Jo and Jo Ann help at programs for local children and youth, including weekly summer barbecues.

241.     Jo Ann and Bette Jo are both cancer survivors.  Jo Ann survived a difficult fight with bone cancer, but she had to reduce her working hours because of ongoing fatigue.  Bette Jo suffered from both uterine and cervical cancer. Both women have been cancer free for many years but remain conscious of the risk of recurrence.

242.     Jo Ann and Bette Jo have many supportive family members, primarily in the Midwest, where they make annual visits to spend time with their families.

243.     After 23 years as a committed couple, Bette Jo and Jo Ann married in the garden at their home in Jamaica Plain, Massachusetts on June 7, 2004, in strict and complete accordance with Massachusetts law.  Friends and neighbors attended their wedding.

244.     In February 2008, when she was 66 years old, Jo Ann applied for and began receiving Social Security retirement benefits based on her own Social Security earnings record.  Jo Ann is currently 67 years old and continues to receive Social Security retirement benefits based on her own earnings record.

245.     In February 2008, at the age of 65 years and 10 months and in anticipation of her retirement from nursing, Bette Jo applied for and began receiving Social Security retirement benefits on her own earnings record.

246.     Social Security offers the option of receiving benefits based on the earnings record of a spouse.  This option is described by the Social Security Administration ("SSA") on its website, in relevant part, at

http://www.ssa.gov/pubs/10035.html,:

**Spouse's benefits**

A spouse who has not worked or who has low earnings can be entitled to as much as one-half of the retired worker's full benefit. If you are eligible for both your own retirement benefits and for benefits as a spouse, we always pay your own benefits first. If your benefits as a spouse are higher than your retirement benefits, you will get a combination of benefits equaling the higher spouse benefit.

If you have reached your full retirement age, and are eligible for a spouse's or ex-spouse's benefit and your own retirement benefit, you may choose to receive only spouse's benefits and continue accruing delayed retirement credits on your own Social Security record. You may then file for benefits at a later date and receive a higher monthly benefit based on the effect of delayed retirement credits.

247.     On March 26, 2008, Jo Ann appeared in person at the Boston regional office of the SSA and applied for the Social Security spousal benefit based on Bette Jo's earnings record, because Jo Ann recognized that she would receive a higher monthly benefit amount if she drew on the spousal benefit rather than solely on her own earnings record.

248.     If the SSA had permitted Jo Ann to receive spousal benefits based on Bette Jo's earnings record, Jo Ann could have delayed her retirement age for purposes of Social Security.  A later Social Security retirement age could increase Jo Ann's own retirement benefits.

249.     In a letter dated April 4, 2008, the SSA denied Jo Ann's claim for spousal benefits.  Letter from Judy Bernstein, Field Officer Manager, SSA, Boston, M.A., to Jo A Whitehead (Apr. 4, 2008).  The letter stated that:  "Since the Defense of Marriage Act prohibits SSA from finding that your [sic] and the insured were married for benefit purposes, you are not eligible for Spouse's Benefits."  *Id.*

250.     Jo Ann filed a timely Request for Reconsideration on May 19, 2008. Form SSA-561-U2 (9-2007) ef (9-2007) (May, 19, 2008).  In her Request, she wrote:  "I am appealing because I should receive the spousal retirement benefit.  I have been married under Massachusetts law since June 7, 2004.  Since DOMA [1 U.S.C. § 7] blocks recognition of my marital status/marriage and it treats me differently from other married people in Massachusetts, I believe DOMA [1 U.S.C. § 7] is unconstitutional."  *Id.*

251.     The SSA did not respond to Jo Ann's Request for Reconsideration until January 17, 2009, Letter from Phyllis M. Smith, Assistant Regional Commissioner, Great Lakes Processing Center Operations, SSA, Chicago, I.L., to Jo Ann Whitehead (Jan. 17, 2009), and then did so only after Jo Ann sought the assistance of one of her Senators.  Letter from Edward M. Kennedy, United States Senator, Boston, M.A., to Jo Ann Whitehead (Nov. 10, 2008).  Eight months elapsed between when Jo Ann filed her Request for Reconsideration and when the SSA finally responded with a denial.

252.     In the SSA's written denial of Jo Ann's Request for Reconsideration dated January 17, 2009, it stated that it looks to the laws of the applicant's state of residence in determining marital status.  Letter from Phyllis M. Smith to Jo Ann Whitehead (Jan. 17, 2009).  It further noted that "[o]n May 17, 2004, Massachusetts became the first state to legalize same-sex marriages."  *Id.*

253.     However, the SSA's denial letter went on to cite DOMA, 1 U.S.C. § 7, for the proposition that marriage for federal purposes means only a legal union between one man and one woman as husband and wife and stated that therefore: "for all benefit purposes, SSA does not recognize such individual as the spouse of the [number holder.]" *Id.*

254.     On February 2, 2009, Jo Ann went to her local SSA office in Roxbury, Massachusetts and requested, in writing, the Expedited Appeals Process ("EAP").  Letter from Jo Ann Whitehead to SSA, Roxbury, M.A., (Feb. 2, 2009).  She has yet to receive a response to her EAP request.

255.     Jo Ann made an explicit and formal request for benefits in 2008, and in 2009, Jo Ann received explicit and formal notice from SSA denying her request.

256.     Jo Ann and Bette Jo have suffered specific and concrete financial harm as a result of the denial of spousal benefits.  In addition to the harm from the denial of the spousal benefit, Jo Ann and Bette Jo have an ongoing concern, reasonable in light of their health travails, about Jo Ann's lack of access to the Social Security survivor benefit in the event that Bette Jo predeceases her.

257.     As Bette Jo and Jo Ann plan and budget yearly expenses, there is the concern that if Bette Jo died before Jo Ann, Jo Ann would have no safety net and would not be able to meet the costs of living, including maintaining her home, as well as paying for food and non-insured medical care.  Without the survivor benefit, Jo Ann would likely live in enforced isolation from their family and friends in the Midwest, as the cost of traveling would be prohibitive.

Plaintiff Randell Lewis-Kendell

258.     Plaintiff Randell Lewis-Kendell, ("Randy") is the surviving spouse of a 30-year committed relationship with Robert Lewis-Kendell ("Robert").

259.     Robert died in November 2007, at age 72, after a long battle with recurrent colon cancer.

260.     Randy and Robert began their relationship in 1977 while both were living in Connecticut.  Their relationship was rooted in deep love and close friendship.

261.     Their families and community welcomed Randy and Robert's relationship from early on.  Robert's now adult children have always treated Randy as their stepfather, and now their children consider Randy to be their grandpa.

262.     Robert grew up in a Boston suburb and was eager to return to Massachusetts when the opportunity arose.  In 1985, Randy and Robert moved together to Massachusetts, and Robert began working in fundraising and development.  Randy worked in retail and became a manager at several stores.

263.     In 1993, Randy and Robert realized their mutual dream of relocating to a small town on Cape Cod when they purchased a gift shop in Harwich Port, Massachusetts.

264.     Randy and Robert quickly became an integral part of the local business community and also became active in their local church.

265.     Initially, Randy and Robert rented a house in West Dennis, Massachusetts, while they were building up their gift shop business.  They reinvested all the money they earned in the business and so, initially, they could not afford to purchase their own home in Harwich Port.

266.     In 2006, however, Robert and Randy purchased a small condominium together in Harwich Port.  Randy continues to live in that condominium.

267.     In 2002, Robert was diagnosed with colon cancer.  Initially, he was treated with surgery and monitoring but then, in 2004, there was a recurrence, and Robert's prognosis became far more serious.  In 2004, Robert began chemotherapy treatments.

268.     Randy took Robert to every medical appointment, including appointments in Boston.  Randy sat with Robert through every treatment and administered needed medications at home. When necessary, Randy would close the gift shop to care for Robert.  As Robert's condition worsened, Randy stayed with him at all times and took care of him.

269.     Randy and Robert married on May 21, 2004, in Harwich Port, Massachusetts, in strict and complete accordance with Massachusetts law.  They married to solidify their lifelong commitment.  At the time of their marriage, they were both well aware of the serious nature of Robert's illness.

270.     After his long battle with colon cancer, Robert died on November 14, 2007, with Randy at his side.

271.     At the time of his death, Robert was receiving Social Security retirement benefits in the amount of $1,161 per month based on his lifelong earnings record.  This benefit was a critical source of support for the couple.

272.     Since Robert passed away, Randy has lived in difficult economic circumstances.  The challenging economy and reduced tourism have negatively affected sales at the gift shop.  He has fallen behind on some bills.

273.       Under 42 U.S.C. § 402(i) and 20 C.F.R. §§ 404.390-404.391 and §404.347, a surviving spouse is entitled to a lump-sum death payment of $255 if the surviving spouse was "living in the same household with the deceased at the time of death," if the surviving spouse applies for the benefit "prior to the expiration of two years after the date of death …," and if the deceased spouse was "fully or currently insured" at the time of death.

274.       When Randy made Robert's funeral arrangements, the funeral director informed Randy about the $255 lump-sum death benefit and mentioned that it could help with funeral expenses.  He made an application on Randy's behalf, as the funeral home does for other clients.

275.       On December 21, 2007, Randy again applied for the lump-sum death benefit by appearing in person at the SSA office in Hyannis, Massachusetts and submitting a written application.  Form SSA-8-F4 (5-2003) EF (02-2006).

276.       The SSA denied Randy's claim by letter dated April 16, 2008.  Letter from G.A. Sorrow, District Manager, SSA, Worcester, M.A., to Randell Lewis-Kendell (Apr. 16, 2008).

277.       This letter stated that: "Since the Defense of Marriage Act prohibits SSA from finding that you and the insured were married for benefit purposes, you are not eligible for the lump sum death payment."  *Id.,* at ¶ 2.

278.       Randy timely filed a Request for Reconsideration on May 30, 2008. Form SSA-561-U2 (9-2007) ef (9-2007) (May 30, 2008).

279.       Randy's Request for Reconsideration stated, "I am appealing because I should receive the lump-sum death benefit.  I was married under Massachusetts law since

May 21, 2004.  My spouse, Robert Lewis-Kendell, died on November 14, 2007.  Since

DOMA [1 U.S.C. § 7] blocks recognition of my marital status/marriage and it treats me

differently from other married people in Massachusetts, I believe DOMA [1 U.S.C. § 7]

is unconstitutional." *Id.*

280.     Randy did not receive any response to his Request for Reconsideration

for several months.  On October 23, 2008, nearly five months after Randy had made his

Request for Reconsideration, he even visited the Hyannis office of the SSA to try to get a

response.  They told him that his request for the lump-sum benefit was in processing and

out of the control of the local office.

281.     Finally, in a letter dated November 19, 2008, the SSA denied Randy's

Request for Reconsideration.  Letter from Anne Jacobosky, Assistant Regional

Commissioner, Processing Center Operations, SSA, Northeast Program Service Center,

Jamaica, N.Y., to Randell Lewis-Kendell (Nov. 19, 2008).

282.     In its letter, the SSA wrote, "You are not entitled to benefits because

We [sic] cannot consider you to have been married to Robert A. Lewis-Kendell[.]"  *Id.*, at

4.

283.     In an explanation of its decision, the SSA cited DOMA, 1 U.S.C. § 7,

for the statement that, under federal law, "a marriage is the legal union of a man and a

woman as husband and wife, and a spouse is a husband or wife of the opposite sex."  *Id.*,

at 5.

284.     On December 31, 2008, Randy went to his local SSA office in

Hyannis, Massachusetts and requested, in writing, the EAP.  Letter from Randell Lewis-

Kendell to SSA, Hyannis, M.A. (Dec. 31, 2008).  He has yet to receive a response to his EAP request.

285.      In 2007 and 2008, Randy made explicit and formal requests for the lump-sum death benefit.  In 2008, Randy received explicit and formal notice from SSA that his claim for that benefit was denied.

286.      Because Randy has been denied Social Security benefits that similarly situated people who have survived a spouse of the opposite sex routinely receive, Randy has suffered specific and concrete financial harm.  Randy applied for this $255 death benefit and was denied.  Additionally, Randy intends to apply for the Social Security widower/survivor benefit when he turns 60 and becomes age-eligible.  Randy fears for his financial security in his later years if he does not receive the widower/survivor benefit.

Plaintiff Herbert Burtis

287.      Plaintiff Herbert Burtis ("Herb") met John Ferris ("John") in the late 1940s while both attended Michigan State University.  The two men were brought together by their mutual interest in classical music and had long careers as musicians.

288.      The couple moved to New York City after John was accepted into a graduate program there.  Herb transferred to Columbia University, where he worked part-time as the associate choirmaster while pursuing his own graduate studies.  John worked as the choirmaster and organist at a church in New Jersey.

289.      In 1958, John left New York to conduct the Harvard University choir, a position he held for 32 years, and to teach conducting at several schools.  When John

took the job at Harvard, Herb assumed John's former position at the church in New Jersey.

290.    The two men continued their loving relationship despite the distance between them.  In 1961, Herb and John purchased a home in Sandisfield, Massachusetts, where they could be together when they did not have work responsibilities.

291.    In 1979, Herb left his church position in New Jersey and moved to Massachusetts so that he and John could begin living together full time.  During this time, Herb gave private music lessons to students locally and at studios he maintained in New York City and in New Jersey.

292.    In 1990, John retired from Harvard University and began to collect Social Security benefits.

293.    For many years thereafter, both men were deeply involved in teaching music.  During this time, Herb continued to provide private music lessons to students, including at his studios in New York City and New Jersey.

294.    Herb and John were married by a justice of the peace at their home in Sandisfield, Massachusetts, on May 23, 2004, in strict and complete accordance with Massachusetts law.  After 55 years together, they were already a family, but they hoped that marriage would increase their legal protections.

295.    At the time they married, John's longstanding struggle with Parkinson's disease had intensified, and his health declined markedly over the next few years due to Parkinson's and other medical problems.

296.    Herb was the principal care-provider for John.  He arranged for medical treatments and dealt with the many emergencies and other issues that arose as

John's condition worsened.  They both preferred that John be at home, and Herb labored mightily to make that possible, although there were times when John needed to be hospitalized or to convalesce in a rehabilitation facility.

297.    John had a stroke at the home he shared with Herb on July 3, 2008.

298.    John died on August 1, 2008 at the Great Barrington Nursing and Rehabilitation Center in Great Barrington, Massachusetts.  At the time of his death, he and Herb had been in a relationship for 60 years and had been married for more than four.

299.    Under 42 U.S.C. § 402(i) and 20 C.F.R. §§ 404.390-404.391 and §404.347, a surviving spouse is entitled to a lump-sum death payment of $255 if the surviving spouse was "living in the same household with the deceased at the time of death," if the surviving spouse applies for the benefit "prior to the expiration of two years after the date of death …," and if the deceased spouse was "fully or currently insured" at the time of death.  John was insured by the Social Security program when he died because he had contributed to the program while he worked.

300.    Under 42 U.S.C. § 402(f), widowers are entitled to insurance benefits equal to the primary insurance amount earned by their deceased spouses.

301.    On October 20, 2008, Herb went to the Pittsfield, Massachusetts office of the SSA to file an application for the lump-sum death benefit and the Social Security survivor's benefit based on John's earnings record.  Herb went to the SSA because he recognized that he would receive a higher monthly benefit amount if he drew on the survivor benefit rather than solely on his own earnings record.

302.      A clerk of the SSA, Mrs. Rogers, refused to accept Herb's application. Mrs. Rogers informed Herb that the Social Security administration does not recognize marriages between people of the same sex.

303.      On November 6, 2008, Erik Hawley of the SSA contacted Herb to follow up on his request for Social Security benefits.

304.      Mr. Hawley informed Herb that Social Security would not process Herb's application, and that in any case it would be denied.

305.      By letter dated November 6, 2008, the SSA informed Herb that his claim was denied.  The letter stated:

> An individual whose claim for benefits is based on a State recognized same-sex marriage or having the same status as spouse for State inheritance purposes cannot meet the statutory gender-based definition of husband, wife, widow, widower of the NH, including one who is divorced. Under the Defense of Marriage Act, the word "marriage" means only a legal union between one man and one woman as husband and wife, and the word "spouse" refers only to a person of the opposite sex who is a husband or wife.  Therefore, for benefit purposes, SSA does not recognize such individual as the spouse of the NH.

> Letter from Jaime Nieves, District Manager, SSA, Pittsfield, M.A., to Herbert Burtis (Nov. 6, 2008).

306.      Herb timely filed a Request for Reconsideration by mail in December, 2008.  Form SSA-561-U2 (9-2007) ef (7-2008).  Herb's request stated:  "I am appealing because I should receive the death benefit and widower's benefit.  I was married under Massachusetts law since May 23, 2004.  My spouse, John Ferris, died on August 1, 2008. Since DOMA [1 U.S.C. § 7] blocks recognition of my marital status/marriage, and it treats me differently from other married people in Massachusetts, I believe DOMA [1 U.S.C. § 7] is unconstitutional."  *Id.*

307.	By letter dated January 20, 2009, the SSA informed Herb that its letter "supplements our prior response of November 6, 2008" and advised him that he could appeal if he believed that "this revised and reconsidered determination is not correct." Letter from P.M. Smith, Assistant Regional Commissioner, Processing Center Operations, SSA. Great Lakes Program Service Center, Chicago, I.L., to Herbert Burtis (Jan. 20, 2009).

308.	On February 9, 2009, Herb requested the EAP for his claim for the lump-sum death benefit and survivor benefit in response to the SSA's January 20, 2009 letter.  Letter from Herbert Burtis to SSA, Pittsfield, M.A. (Feb. 9. 2009).  He has not received a response to his EAP request.

309.	In 2008 and 2009, Herb made explicit and formal requests for benefits to SSA and received explicit and formal denials.

310.	Because the SSA does not recognize Herb's marriage, Herb has been denied the Social Security death benefit and the Social Security survivor's benefit and thus has suffered specific and concrete financial harm.

Plaintiffs Keith Toney and Albert Toney III

311.	Plaintiffs Keith Toney ("Keith") and Albert Toney III ("Al") met in 1998 and have been in a committed relationship since 1999.

312.	Al is a retired and disabled police officer and currently serves as the President of AK Consulting Services Inc., which he and Keith started together.

313.	Keith also works in the consulting company as Vice President, helping to operate the company from day to day.

314.    Together, Al and Keith have raised Al's daughter from a previous marriage since she was 12 years old.  She now attends college and lives with Keith and Al in the home they jointly own in the village of Jefferson, in the town of Holden, Massachusetts.

315.    Together, they have contributed to the civic life of their community. They have opened their home to foster children for both long term and respite care.  In addition, they have been active in and helped raise money for numerous charities and benefits, including an annual walk to raise awareness about violence against women.

316.    After five years together, Al and Keith were married on May 20, 2004, by the city clerk at Worcester City Hall, in strict and complete accordance with Massachusetts law.  Their marriage was the realization of a dream they had held ever since they had become a committed couple.  They will have been married for five years as of May 20, 2009.

317.    Prior to marrying Al, Keith's legal surname was Fitzpatrick.  Keith, Al, and their daughter discussed having the same last name after Keith and Al's marriage and agreed that Keith would change his surname to "Toney."

318.    In accordance with Massachusetts General Laws Chapter 46, Section 1D, Keith legally changed his surname to "Toney" pursuant to marriage, as evidenced by his listing "Toney" under "Surname After Marriage" on his marriage certificate, thus sharing the same surname as Al and his daughter.  Commonwealth of Massachusetts, Department of Public Health, Registry of Vital Records and Statistics, Certificate of Marriage, part 11A (May 20, 2004).

319.     On August 15, 2007, Keith applied to United States Department of State ("State Department"), requesting that his passport be reissued under his true legal and proper married name, Keith Douglas Toney.

320.     In support of his application, Keith provided his marriage license, Massachusetts driver's license, and other documents evidencing his legal name.

321.     At the time of Keith's application in August 2007, the State Department had a policy recognizing a marriage license as adequate evidence of a name change.  This policy was later codified as 22 C.F.R. § 51.25(c), which now states in relevant part that "a name change will be recognized for purposes of issuing a passport if the name change occurs in one of the following ways," including subsection (3): "Marriage.  An applicant who has adopted a new name following marriage must present a copy of the marriage certificate."

322.     By letter dated September 11, 2007, the Washington Passport Agency of the State Department denied Keith's passport application.  Letter from Ms. C. Pamela Holliday, Regional Director, State Department, Washington, D.C., to Keith Douglas Toney (Sept. 11, 2007).

323.     The September 11, 2007 denial provided the following reasoning:

We are unable to comply with your request for a name change based on the documentation you sent because the Defense of Marriage Act, Public Law 104-199, provides that: "In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife.'" Therefore, the marriage certificate issued by Massachusetts, which you have submitted in support of your name change, is not acceptable as evidence for recognizing an immediate name change on the basis of marriage.

324.     On October 2, 2007, Keith replied to the September 11, 2007 denial with a letter requesting that the Washington Passport Agency reconsider its denial of his application and reissue his passport under his true legal and proper name, Keith Douglas Toney.  Letter from Keith Douglas Toney to C. Pamela Holliday, Regional Director, State Department, Washington, D.C. (Oct. 2, 2007).

325.     In support of his October 2, 2007 request, Keith submitted an affidavit attesting to his legal name change, along with copies of the following state-issued documents: (a) his marriage certificate listing his surname after marriage as "Toney," (b) his reissued Massachusetts driver's license under his legal surname after marriage, Toney, and (c) a notice from the Town of Holden acknowledging that his voter registration name has been changed to his legal surname after marriage, Toney.

326.     The Washington Passport Agency of the State Department phoned Keith on October 31, 2007, informing him that his application had been denied and that his passport would be reissued under his prior surname, Fitzpatrick.  He later received a new passport in his prior surname.

327.     The only dispute between Keith and the State Department concerns an issue of constitutional law that lies beyond the purview of the State Department.

328.     As a result of the State Department's refusal to issue Keith's passport in his correct legal name, both Al and Keith have suffered specific and concrete harm, including emotional harm.  In particular, given heightened security concerns world-wide since September 11, 2001, travelling in a foreign country with an inconsistent and inaccurate passport that does not match Keith's other identification documents or have his correct, legal name has caused them both to feel vulnerable and insecure when they

have travelled abroad.  It has also caused inconvenience and confusion when conducting

simple transactions such as renting a car or cashing a traveler's check.  Given that Keith

carries conflicting identification, and his passport does not match his credit cards, he is

forced to explain his personal circumstances to complete strangers in other countries,

often across language barriers, further heightening his and Al's sense of vulnerability.

<u>COUNT I</u>
(Nancy Gill and Marcelle Letourneau
v.
Office of Personnel Management, United States Postal Service and John E. Potter)

329.    Plaintiffs Nancy Gill and Marcelle Letourneau repeat and reallege the

allegations set forth in Paragraphs 13-14, 35-58, and 59-97 as if fully set forth herein.

330.    The FEHB program is a creature of federal statute, Chapter 89 of Title

5 of the United States Code.  <u>See</u> <u>generally</u> 5 U.S.C. §§ 8901 et seq.

331.    Federal employees who are eligible for FEHB are also eligible to

participate in the Federal Flexible Spending Account Program, including HCFSA.

332.    In 2004, Congress expanded health insurance benefits for federal

employees by adopting the "Federal Employee Dental and Vision Benefits Enhancement

Act of 2004."  Public Law 108-496.

333.    The vision portion of the FEDVIP is a creature of federal statute,

Chapter 89B of Title 5 of the United States Code.  <u>See</u> <u>generally</u> 5 U.S.C. §§ 8981-92.

334.    The FEHB Program, the Federal Flexible Spending Account Program,

and the FEDVIP Program extend to United States Postal employees.  <u>See</u> 39 U.S.C.

§1005(f).

335.     Pursuant to Congressional authority, 5 U.S.C. § 8913, OPM prescribes all regulations to carry out the FEHB program.

336.     The pertinent regulations promulgated by OPM are contained in Part 890 of Title 5 of the Code of Federal Regulations.

337.     Under existing FEHB statutory and regulatory provisions, the spouse of a covered employee who has elected "Self and Family" coverage is automatically enrolled for health insurance purposes under the FEHB Program.

338.     Under existing FEHB statutory and regulatory provisions, Nancy would be able to provide for health insurance coverage to her spouse Marcelle under the "Self and Family" plan but for OPM's application of DOMA, 1 U.S.C. § 7, which denies health insurance coverage to a Postal Service employee's spouse if that spouse is of the same sex.

339.     Under existing FEHB statutory and regulatory provisions, Marcelle would receive health insurance coverage under Nancy's "Self and Family" plan but for OPM's application of DOMA, 1 U.S.C. § 7, which denies health insurance coverage to a Postal Service employee's spouse if that spouse is of the same sex.

340.     In addition to spousal coverage under the FEHB program, a Postal Service employee's spouse can be covered under the employee's HCFSA.

341.     Nancy would be able to extend her HCFSA coverage to include Marcelle but for OPM's application of DOMA, 1 U.S.C. § 7, which precludes HCFSA coverage to a Postal Service employee's spouse if that spouse is of the same sex.

342.     Marcelle would be covered by Nancy's HCFSA but for OPM's application of DOMA, 1 U.S.C. § 7, which precludes HCFSA coverage to a Postal Service employee's spouse if that spouse is of the same sex.

343.     Pursuant to Congressional authority, 5 U.S.C. § 8992(a), OPM prescribes regulations to carry out FEDVIP.

344.     The pertinent regulations promulgated by OPM are contained in Part 894 of Title 5 of the Code of Federal Regulations.

345.     Under FEDVIP statutory and regulatory provisions, a covered employee who has elected "Self and Family" enrollment for FEDVIP makes coverage available for all eligible family members.  "Member of family" is defined in Chapter 89B, 5 U.S.C. § 8991(2), as having the same meaning as that term has for FEHB under Chapter 89, 5 U.S.C. § 8901(5), i.e., including the covered employee's spouse.

346.     Under existing FEDVIP statutory and regulatory provisions, Nancy would be able to enroll Marcelle in the vision coverage under the FEDVIP but for OPM's application of DOMA, 1 U.S.C. § 7, which precludes spousal vision insurance coverage to a Postal Service employee's spouse if that spouse is the same sex as the employee.

347.     Under existing FEDVIP statutory and regulatory provisions, Marcelle would be enrolled in Nancy's enhanced vision coverage under the FEDVIP but for OPM's application of DOMA, 1 U.S.C. § 7, which precludes spousal vision insurance coverage to a Postal Service employee's spouse if that spouse is of the same sex as the employee.

348.     The disparity of treatment with regard to federal employment-related benefits available to Nancy and Marcelle is not mandated by DOMA, 1 U.S.C. § 7, but

rather reflects an improper and overly narrow construction of the permissible bounds of OPM's authority to extend coverage to family members.

349.     All federal statutory provisions as to employment-related benefits that turn on "member of family," "family" or "family members," including but not limited to 5 U.S.C. §§ 8901 and 8981, set general guidelines and minimum requirements of coverage availability but do not establish absolute ceilings or outer boundaries of coverage.

350.     To the extent that the disparity of treatment with regard to federal employment-related benefits available to Nancy and Marcelle is, in fact, mandated by DOMA, 1 U.S.C. § 7, that disparity of treatment creates a classification that treats similarly-situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

351.     An actual controversy exists between and among the parties.

COUNT II
(Martin Koski and James Fitzgerald
v.
Office of Personnel Management)

352.     Plaintiffs Martin Koski and James Fitzgerald repeat and reallege the allegations set forth in Paragraphs 15-16, 35-58, and 98-123 as if fully set forth herein.

353.     The FEHB program is a creature of federal statute, Chapter 89 of Title 5 of the United States Code.  See generally 5 U.S.C. §§ 8901 et seq.

354.     Pursuant to Congressional authority, 5 U.S.C. § 8913, the OPM prescribes all regulations to carry out Chapter 89 of Title 5 of the United States Code.

355.     The pertinent regulations promulgated by OPM are contained in Part 890 of Title 5 of the Code of Federal Regulations.

356.     The FEHB Program extends to qualified annuitants of the Social Security Administration, including Martin.  See 5 U.S.C. §§ 8901, 8905.

357.     Under existing FEHB statutory and regulatory provisions, a qualified annuitant may elect "Self and Family" coverage and enroll his spouse for health insurance benefits under the FEHB program.

358.     Under existing FEHB statutory and regulatory provisions, Martin would be able to enroll Jim in a "Self and Family" plan but for OPM's application of DOMA, 1 U.S.C. § 7, which denies spousal health insurance coverage to a retired federal employee's spouse if that spouse is of the same sex.

359.     Under existing FEHB statutory and regulatory provisions, Jim would be enrolled in Martin's "Self and Family" plan but for OPM's application of DOMA, 1 U.S.C. § 7, which denies spousal health insurance coverage to a retired federal employee's spouse if that spouse is of the same sex.

360.     The disparity of treatment with regard to federal employment-related benefits available to Martin and Jim is not mandated by DOMA, 1 U.S.C. § 7, but rather reflects an improper and overly narrow construction of the permissible bounds of OPM's authority to extend coverage to family members.

361.     All federal statutory provisions as to employment-related benefits that turn on "member of family," "family" or "family members," including but not limited to 5 U.S.C. §§ 8901 and 8981, set general guidelines and minimum requirements of

coverage availability but do not establish absolute ceilings or outer boundaries of coverage.

362.     To the extent that the disparity of treatment with regard to federal employment-related benefits available to Martin and Jim is, in fact, mandated by DOMA, 1 U.S.C. § 7, that disparity of treatment creates a classification that treats similarly-situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

363.     An actual controversy exists between and among the parties.

COUNT III
(Dean Hara
v.
Office of Personnel Management
and Michael J. Astrue)

364.     Plaintiff Dean Hara repeats and realleges the allegations set forth in Paragraph 17, 35-58, 90-94, 112-116, and 124-169 as if fully set forth herein.

365.     The Social Security Act is codified in Chapter 7 of Title 42 of the United States Code.  See generally 42 U.S.C. §§ 301 et seq.

366.     Pursuant to Congressional authority, 42 U.S.C. § 902, defendant Michael J. Astrue enforces federal law relative to eligibility of benefits through his supervision of the SSA.

367.     The pertinent regulations promulgated by the SSA are contained in Parts 400 to 499 of Title 20 of the Code of Federal Regulations.

368.     Under 42 U.S.C. § 402(i), the widower of a deceased person shall receive a lump-sum benefit of $255 after the death of his spouse.

369.     Under existing Social Security statutory and regulatory provisions, Dean would be entitled to the $255 death benefit as the legal surviving spouse of Gerry Studds but for DOMA, 1 U.S.C. § 7, which denies the benefit to an otherwise qualifying surviving spouse if that spouse is the same sex.

370.     DOMA, 1 U.S.C. § 7, as applied by the SSA, creates a classification with respect to Social Security benefits that treats similarly-situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

371.     Dean's constitutional claims are ripe for review by this Court.

372.     Dean's application for the lump-sum benefit raises no disputed issues of fact.

373.     DOMA, 1 U.S.C. § 7, alone bars Dean from receiving the lump-sum benefit.

374.     It would be futile for Dean to pursue any further administrative process, because the SSA's position that DOMA, 1 U.S.C. § 7, bars him from receiving the lump-sum death benefit is the sole basis for its denial of his claim and raises a constitutional issue that is beyond the SSA's purview.

375.     The civil service retirement program for federal employees is a creature of federal statute, Subchapter III of Chapter 83 of Title 5 of the United States Code.  See generally 5 U.S.C. §§ 8331 et seq.

376.     Survivor annuities for surviving spouses of federal employees, including Members of Congress, are also a creature of federal statute, 5 U.S.C. §§ 8339 and 8341.

377.     Pursuant to Congressional authority, 5 U.S.C. § 8347(a), OPM prescribes all regulations to carry out Subchapter III of Chapter 83 of Title 5 of the United States Code.

378.     The pertinent regulations promulgated by OPM are contained in Part 831 of Title 5 of the Code of Federal Regulations.

379.     Under existing civil service statutory and regulatory provisions and in light of the MSPB's final decision in <u>Dean Hara v. Office of Personnel Management (CSF3067396)</u>, Docket No. PH-0831-08-0099-I-2, Dean would be entitled to a spousal survivor annuity as the legal surviving spouse of retired federal employee Gerry Studds but for DOMA, 1 U.S.C. § 7, which precludes the granting of the surviving spousal annuity to an otherwise qualifying surviving spouse if that spouse is of the same sex.

380.     The disparity of treatment with regard to CSRS survivor annuities that is mandated by OPM's application of DOMA, 1 U.S.C. § 7, creates a classification that treats similarly-situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

381.     Dean has exhausted all administrative remedies to adjudicate all necessary factual issues regarding his claim for a CSRS survivor annuity within the purview of the MSPB.

382.     In light of the MSPB's decision, there are no factual disputes.

383.     Dean's spousal survivor annuity claim is properly presented in federal district court.

384.     The FEHB program is a creature of federal statute, Chapter 89 of Title 5 of the United States Code.  See generally 5 U.S.C. § 8901 et seq.

385.     Pursuant to Congressional authority, 5 U.S.C. § 8913, the OPM prescribes all regulations to carry out Chapter 89 of Title 5 of the United States Code.

386.     The pertinent regulations promulgated by OPM are contained in Part 890 of Title 5 of the Code of Federal Regulations.

387.     Under FEHB statutory and regulatory provisions, the surviving spouse of a retired federal employee/annuitant is eligible to enroll in a federal health insurance program if, at the time of the annuitant's death, the annuitant had elected "Self and Family" health insurance coverage and if the surviving spouse is also eligible for a spousal survivor annuity.

388.     Under pertinent FEHB statutory and regulatory provisions and in light of the MSPB's final decision in Dean Hara v. Office of Personnel Management (CSF3067396), Docket No. PH-0831-08-0099-I-2, Gerry Studds intended to provide to Dean, or, in the alternative, is deemed to have in fact elected for Dean, a spousal survivor annuity.

389.     Under pertinent FEHB statutory and regulatory provisions and in light of the MSPB's final decision in Dean Hara v. Office of Personnel Management (CSF3067396), Docket No. PH-0831-08-0099-I-2, Gerry Studds intended to provide to Dean, or, in the alternative, is deemed to have in fact elected for Dean, his inclusion under federal health insurance coverage.

390.     OPM is estopped under the MSPB's final decision in <u>Dean Hara v.</u>
<u>Office of Personnel Management (CSF3067396)</u>, Docket No. PH-0831-08-0099-I-2,
from enforcing any asserted requirement of election by Congressman Studds vis-à-vis
"Self and Family" coverage.

391.     Under pertinent FEHB statutory and regulatory provisions, Dean
would be able to receive health insurance coverage but for OPM's application of DOMA,
1 U.S.C. § 7, which denies health insurance coverage to a federal employee's surviving
spouse if that surviving spouse is of the same sex.

392.     The disparity of treatment with regard to FEHB health insurance
available to Dean is not mandated by DOMA, 1 U.S.C. § 7, but rather reflects an
improper and overly narrow construction of the permissible bounds of OPM's authority
to extend benefits to family members.

393.     All federal statutory provisions as to FEHB health insurance that turn
on "member of family" or "spouse," including but not limited to 5 U.SC. §§ 8901, set
general guidelines and minimum requirements of coverage availability but do not
establish absolute ceilings or outer boundaries of coverage.

394.     To the extent that a disparity of treatment with regard to the FEHB
program is mandated by DOMA, 1 U.S.C. § 7, it creates a classification that treats
similarly-situated individuals differently without justification in excess of Congressional
authority in violation of the right of equal protection secured by the Fifth Amendment of
the Constitution of the United States.

395.     Dean has made presentment of his claim for enrollment in the FEHB
program.

396.     Dean's application for FEHB health insurance raises no disputed issues of fact.

397.     DOMA, 1 U.S.C. § 7, alone bars Dean from receiving FEHB health insurance.

398.     It would be futile for him to pursue further administrative remedies given OPM's practice and policy of barring members of marriages between two individuals of the same sex from receiving FEHB benefits on the basis of DOMA, 1 U.S.C. § 7, including plaintiffs Nancy Gill and Martin Koski.

399.     Review of this practice and policy raises a constitutional issue beyond the purview of OPM.

400.     An actual controversy exists between and among the parties.

COUNT IV
(Mary Ritchie and Kathleen Bush
v.
United States of America)

401.     Plaintiffs Mary Ritchie and Kathleen Bush repeat and reallege the allegations set forth in Paragraphs 18-19, 35-58, and 170- 203 as if fully set forth herein.

402.     This is an action for the recovery of federal income tax erroneously or illegally assessed and collected.  This Court has jurisdiction under 28 U.S.C. § 1346 (a)(1).  This action also arises under 26 U.S.C. § 7422.  The defendant is the United States of America.

403.     Mary and Kathy seek recovery of federal income tax for the taxable year ending December 31, 2004.

404.     On or before April 15, 2005, Mary timely filed with the IRS Service Center at Andover, Massachusetts a federal income tax return for the year 2004 using the Head of Household filing status.  Mary timely paid federal income tax of $5,531 on account of this federal income tax return.

405.     The IRS stated in a 1958 Revenue Ruling that for federal tax law purposes an individual is married if she or he is married under local law.  Rev. Rul. 58-66, 1958-1 C.B. 60.

406.     On April 14, 2008, consistent with the 1958 Revenue Ruling, Mary and Kathy filed an IRS Form 1040X claim with the IRS Service Center at Andover, Massachusetts, for a refund of federal income tax overpaid in the amount of $1,054, based on the fact that they were married under Massachusetts law.  They stated that, because of DOMA, 1 U.S.C. § 7, Mary had been forced to file as Head of Household, rather than Mary and Kathy being permitted to file one federal income tax return as Married Filing Jointly, and stated that DOMA, 1 U.S.C. § 7, was unconstitutional.

407.     The IRS disallowed the claim by letter dated July 17, 2008.  The disallowance was solely because of DOMA, 1 U.S.C. § 7.

408.     An individual who is married to a person of a different sex is not forced to file his or her federal income tax returns as anything other than Married. Indeed, he or she is required to file using his or her legal marital status.  Legally married same-sex couples are forced to use an incorrect marital status.  As a result of this disparity of treatment, Mary and Kathy paid $1,054 more in federal income tax in 2004 than a similarly situated different-sex married couple would have paid.

409.     Because DOMA, 1 U.S.C. § 7, as applied by the IRS, requires this disparity of treatment with regard to the federal income tax filing of Mary and Kathy, it creates a classification that treats similarly-situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

COUNT V
(Mary Ritchie and Kathleen Bush
v.
United States of America)

410.     Plaintiffs Mary Ritchie and Kathleen Bush, repeat and reallege the allegations set forth in Paragraphs 18-19, 35-58, and 170- 203 as if fully set forth herein.

411.     This is an action for the recovery of federal income tax erroneously or illegally assessed and collected.  This Court has jurisdiction by reason of 28 U.S.C. § 1346(a)(1).  This action also arises under 26 U.S.C. § 7422.  The defendant is the United States of America.

412.     Mary and Kathy seek recovery of federal income tax for the taxable year ending December 31, 2005.

413.     On or before April 15, 2006, Mary timely filed with the IRS Center at Andover, Massachusetts a federal income tax return for the year 2005 using the Head of Household filing status.  Mary timely paid federal income tax of $7,554 on account of this federal income tax return.

414.     The IRS stated in a 1958 Revenue Ruling that for federal tax law purposes an individual is married if she or he is married under local law.  Rev. Rul. 58-66, 1958-1 C.B. 60.

415.     On April 14, 2008, consistent with the 1958 Revenue Ruling, Mary
and Kathy filed an IRS Form 1040X claim with the IRS Service Center at Andover,
Massachusetts, for a refund of federal income tax overpaid in the amount of $2,703,
based on the fact that they were married under Massachusetts law.  They stated that,
because of DOMA, 1 U.S.C. § 7, Mary had been forced to file as Head of Household,
rather than Mary and Kathy being able to file on one federal income tax return as Married
Filing Jointly, and stated that DOMA, 1 U.S.C. § 7, was unconstitutional.

416.     The IRS disallowed the claim by letter dated July 18, 2008.  The
disallowance was solely because of DOMA, 1 U.S.C. § 7.

417.     An individual married to a person of a different sex is not forced to file
his or her federal income tax returns as anything other than Married.  Indeed, he or she is
required to file using his or her legal marital status.  Legally married same-sex couples
are forced to use an incorrect marital status, which results in a different federal income
tax assessment than if they had used their correct married status.  As a result of this
disparity of treatment, Mary Ritchie and Kathleen Bush paid $2,703 more in federal
income tax in 2005 than a similarly situated different-sex married couple would have
paid.

418.     Because DOMA, 1 U.S.C. § 7, as applied by the IRS, requires this
disparity of treatment with regard to the federal income tax filing of Mary and Kathy, it
creates a classification that treats similarly-situated individuals differently without
justification in excess of Congressional authority in violation of the right of equal
protection secured by the Fifth Amendment of the Constitution of the United States.

COUNT VI
(Mary Ritchie and Kathleen Bush
v.
United States of America)

419.    Plaintiffs Mary Ritchie and Kathleen Bush repeat and reallege the allegations set forth in Paragraphs 18-19, 35-58, and 170- 203 as if fully set forth herein.

420.    This is an action for the recovery of federal income tax erroneously or illegally assessed and collected.  This Court has jurisdiction by reason of 28 U.S.C. § 1346(a)(1).  This action also arises under 26 U.S.C. § 7422.  The defendant is the United States of America.

421.    Mary and Kathy seek recovery of federal income tax for the taxable year ending December 31, 2006.

422.    On or before April 15, 2007, Mary timely filed with the IRS Service Center at Andover, Massachusetts a federal income tax return for the year 2006 using the Head of Household filing status.  Mary timely paid federal income tax of $13,626 on account of this federal income tax return.

423.    The IRS stated in a 1958 Revenue Ruling that for federal tax law purposes an individual is married if she or he is married under local law.  Rev. Rul. 58-66, 1958-1 C.B. 60.

424.    On April 14, 2008, consistent with the 1958 Revenue Ruling, Mary and Kathy filed an IRS Form 1040X claim with the IRS Service Center at Andover, Massachusetts, for a refund of federal income tax overpaid in the amount of $4,390, based on the fact that they were married under Massachusetts law.  They stated that, because of DOMA, 1 U.S.C. § 7, Mary had been forced to file as Head of Household,

rather than Mary and Kathy Bush being able to file on one federal income tax return as Married Filing Jointly, and stated that DOMA, 1 U.S.C. § 7, was unconstitutional.

425.     The IRS disallowed the claim by letter dated July 18, 2008.  The disallowance was solely because of DOMA, 1 U.S.C. § 7.

426.     An individual who is married to a person of a different sex is not forced to file his or her federal income tax returns as anything other than Married. Indeed, he or she is required to file using his or her legal marital status.  Legally married same-sex couples are forced to use an incorrect marital status, which results in a different federal income tax assessment than if they had used their correct married status.  As a result of this disparity of treatment, Mary Ritchie and Kathleen Bush paid $4,390 more in federal income tax in 2006 than a similarly situated different-sex married couple would have paid.

427.     Because DOMA, 1 U.S.C. § 7, as applied by the IRS, requires this disparity of treatment with regard to the federal income tax filing of Mary and Kathy, it creates a classification that treats similarly-situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

COUNT VII
(Melba Abreu and Beatrice Hernandez
v.
United States of America)

428.     Plaintiffs Melba Abreu and Beatrice Hernandez, repeat and reallege the allegations set forth in Paragraphs 20-21, 35-58, and 204-234 as if fully set forth herein.

429.     This is an action for the recovery of federal income tax erroneously or illegally assessed and collected.  This Court has jurisdiction by reason of 28 U.S.C. § 1346(a)(1).  This action also arises under 26 U.S.C. § 7422.  The defendant is the United States of America.

430.     Melba and Beatrice seek recovery of federal income tax for the taxable year ending December 31, 2004.

431.     On or before April 15, 2005, Melba timely filed with the IRS Service Center in Andover, Massachusetts a federal income tax return for the year 2004 using the Single filing status.  Melba timely paid federal income taxes of $16,306 on account of this federal income tax return.

432.     The IRS stated in a 1958 Revenue Ruling that for federal tax law purposes an individual is married if she or he is married under local law.  Rev. Rul. 58-66, 1958-1 C.B. 60.

433.     On April 14, 2008, consistent with the 1958 Revenue Ruling, Melba and Beatrice filed an IRS Form 1040X claim with the IRS Service Center at Andover, Massachusetts, for refund of federal income tax overpaid in the amount of $4,687, based on the fact that they were married under Massachusetts law.  They stated that, because of DOMA, 1 U.S.C. § 7, Melba had been forced to file as Single, rather than Melba and Beatrice being able to file on one federal income tax return as Married Filing Jointly.

434.     The IRS disallowed the claim by letter dated June 20, 2008.  The disallowance was solely because of DOMA, 1 U.S.C. § 7.

435.     An individual who is married to a person of a different sex is not forced to file his or her federal income tax returns as anything other than Married.

Indeed, he or she is required to file using his or her legal marital status.  Legally married same-sex couples are forced to use an incorrect marital status, which results in a different federal income tax assessment than if they had used their correct married status.  As a result of this disparity of treatment, Melba Abreu and Beatrice Hernandez paid $4,687 more in federal income tax in 2004 than a similarly situated different-sex married couple would have paid.

436.    Because DOMA, 1 U.S.C. § 7, as applied by the IRS, requires this disparity of treatment with regard to the federal income tax filing of Melba and Beatrice, it creates a classification that treats similarly-situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

COUNT VIII
(Melba Abreu and Beatrice Hernandez
v.
United States of America)

437.    Melba Abreu and Beatrice Hernandez, repeat and reallege the allegations set forth in Paragraphs 20-21, 35-58, and 204-234 as if fully set forth herein.

438.    This is an action for the recovery of federal income tax erroneously or illegally assessed and collected.  This Court has jurisdiction by reason of 28 U.S.C. § 1346(a)(1).  This action also arises under 26 U.S.C. § 7422.  The defendant is the United States of America.

439.    Melba and Beatrice seek recovery of federal income tax for the taxable year ending December 31, 2005.

440.     On or before April 15, 2006, Melba timely filed with the IRS Service Center in Andover, Massachusetts a federal income tax return for the year 2005 using the Single filing status.  Melba timely paid federal income tax of $12,621 on account of this federal income tax return.

441.     The IRS stated in a 1958 Revenue Ruling that for federal tax law purposes an individual is married if she or he is married under local law.  Rev. Rul. 58-66, 1958-1 C.B. 60.

442.     On April 14, 2008, consistent with the 1958 Revenue Ruling, Melba and Beatrice filed an IRS Form 1040X claim with the IRS Service Center at Andover, Massachusetts, for refund of federal income tax overpaid in the amount of $3,785 based on the fact that they were married under Massachusetts law.  They stated that, because of DOMA, 1 U.S.C. § 7, Melba had been forced to file as Single, rather than Melba and Beatrice being able to file on one federal income tax return as Married Filing Jointly.

443.     The IRS disallowed the claim by letter dated June 20, 2008.  The disallowance was solely because of DOMA, 1 U.S.C. § 7.

444.     An individual who is married to a person of a different sex is not forced to file his or her federal income tax returns as anything other than Married. Indeed, he or she is required to file using his or her legal marital status.  Legally married same-sex couples are forced to use an incorrect marital status, which results in a different federal income tax assessment than if they had used their correct married status.  As a result of this disparity of treatment, Melba and Beatrice paid $3,785 more in federal income tax in 2005 than a similarly situated different-sex married couple would have paid.

445.     Because DOMA, 1 U.S.C. § 7, as applied by the IRS, requires this disparity of treatment with regard to the federal income tax filing of Melba and Beatrice, it creates a classification that treats similarly-situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

COUNT IX
(Melba Abreu and Beatrice Hernandez
v.
United States of America)

446.     Plaintiffs Melba Abreu and Beatrice Hernandez, repeat and reallege the allegations set forth in Paragraphs 20-21, 35-58, and 204-234 as if fully set forth herein.

447.     This is an action for the recovery of federal income tax erroneously or illegally assessed and collected.  This Court has jurisdiction by reason of 28 U.S.C. § 1346(a)(1).  This action also arises under 26 U.S.C. § 7422.  The defendant is the United States of America.

448.     Melba and Beatrice seek recovery of federal income tax for the taxable year ending December 31, 2006.

449.     On or before April 15, 2007, Melba timely filed with the IRS Service Center in Andover, Massachusetts a federal income tax return for the year 2006 using the Single filing status.  Melba timely paid federal income tax of $24,467 on account of this federal income tax return.

450.      The IRS stated in a 1958 Revenue Ruling that for federal tax law purposes an individual is married if she or he is married under local law.  Rev. Rul. 58-66, 1958-1 C.B. 60.

451.      On April 14, 2008, consistent with the 1958 Revenue Ruling, Melba and Beatrice filed an IRS Form 1040X claim with the IRS Service Center at Andover, Massachusetts, for refund of federal income tax overpaid in the amount of $5,546 based on the fact that they were married under Massachusetts law.  They stated that, because of DOMA, 1 U.S.C. § 7, Melba had been forced to file as Single, rather than Melba and Beatrice being able to file on one federal income tax return as Married Filing Jointly.

452.      The IRS disallowed the claim by letter dated June 20, 2008.  The disallowance was solely because of DOMA, 1 U.S.C. § 7.

453.      An individual married to a person of a different sex is not forced to file his or her federal income tax returns as anything other than Married.  Indeed, he or she is required to file using his or her legal marital status.  Legally married same-sex couples are forced to use an incorrect marital status, which results in a different federal income tax assessment than if they had used their correct married status.  As a result of this disparity of treatment, Melba and Beatrice paid $5,546 more in federal income tax in 2006 than a similarly situated different-sex married couple would have paid.

454.      Because DOMA, 1 U.S.C. § 7, as applied by the IRS, requires this disparity of treatment with regard to the federal income tax filing of Melba and Beatrice, it creates a classification that treats similarly-situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

COUNT X
(Jo Ann Whitehead and Bette Jo Green
v.
Michael J. Astrue)

455.     Plaintiffs Bette Jo Green and Jo Ann Whitehead repeat and reallege

the allegations set forth in Paragraphs 22-23, 35-58, and 235-257 as if fully set forth

herein.

456.     The Social Security Act is codified in Chapter 7 of Title 42 of the

United States Code.  See generally 42 U.S.C. §§ 301 et seq.

457.     Pursuant to 42 U.S.C. § 902, defendant Michael J. Astrue enforces

federal law concerning eligibility for Social Security benefits through his supervision of

the SSA.

458.     The pertinent regulations promulgated by the SSA are contained in

Parts 400 to 499 of Title 20 of the Code of Federal Regulations.

459.     Under existing Social Security statutory and regulatory provisions, see

42 U.S.C. § 402(f), individuals who qualify for old-age insurance benefits are eligible to

extend those benefits to their spouses.  Pursuant to the Social Security Act, a spouse who

applies for Social Security benefits at full retirement age and has a benefit lower than

50% of that of his or her spouse receives an amount equal to 50% of his or her spouse's

full retirement benefit.

460.     As a person legally married under Massachusetts law, Bette Jo would

be able to share the benefit of her earnings record with her spouse Jo Ann but for DOMA,

1 U.S.C. § 7, which denies old-age insurance benefits to a covered individual's spouse if

that spouse is of the same sex.

461.     As a person legally married under Massachusetts law, Jo Ann would be entitled to old-age insurance benefits from her spouse Bette Jo but for DOMA, 1 U.S.C. § 7, which denies old-age insurance benefits to a covered individual's spouse if that spouse is the same sex.

462.     DOMA, 1 U.S.C. § 7, creates a classification with respect to Social Security benefits that treats similarly-situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

463.     It would be futile for Jo Ann to proceed further with the SSA because she cannot obtain the spousal benefit solely because of DOMA, 1 U.S.C. § 7 and because the SSA cannot consider the constitutionality of DOMA, 1 U.S.C. § 7.

464.     An actual controversy exists between and among the parties.


COUNT XI
(Randell Lewis-Kendell
v.
Michael J. Astrue)

465.     Plaintiff Randell Lewis-Kendell repeats and realleges the allegations set forth in Paragraphs 24, 35-58, and 258-286 as if fully set forth herein.

466.     The Social Security Act is codified in Chapter 7 of Title 42 of the United States Code.  See generally 42 U.S.C. §§ 301 et seq.

467.     Pursuant to Congressional authority, 42 U.S.C. § 902, defendant Michael J. Astrue enforces federal law relative to eligibility of benefits through his supervision of the SSA.

468.     The pertinent regulations promulgated by the SSA are contained in Parts 400 to 499 of Title 20 of the Code of Federal Regulations.

469.     Under existing federal law, 42 U.S.C. § 402(i), the widower of a deceased person shall receive a lump-sum benefit of $255 after the death of his spouse.

470.     As a person legally married under Massachusetts law, Randy would receive the lump-sum death benefit authorized under the Social Security Act but for DOMA, 1 U.S.C. § 7, which denies the lump-sum death benefit to an individual who is married to someone of the same sex.

471.     DOMA, 1 U.S.C. § 7, creates a classification with respect to Social Security benefits that treats similarly-situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

472.     It would be futile for Randy to proceed further with the SSA because he cannot obtain the lump-sum benefit solely because of DOMA, 1 U.S.C. § 7, and because the SSA cannot consider the constitutionality of DOMA, 1 U.S.C. § 7.

473.     An actual controversy exists between and among the parties.


COUNT XII
(Herbert Burtis
v.
Michael J. Astrue)

474.     Plaintiff Herbert Burtis repeats and realleges the allegations set forth in Paragraphs 25, 35-58, and 287-310 as if fully set forth herein.

475.     The Social Security Act is codified in Chapter 7 of Title 42 of the United States Code.  See generally 42 U.S.C. §§ 301 et seq.

476.     Pursuant to Congressional authority, 42 U.S.C. § 902, defendant Michael J. Astrue enforces federal law relative to eligibility of benefits through his supervision of the SSA.

477.     The pertinent regulations promulgated by the SSA are contained in Parts 400 to 499 of Title 20 of the Code of Federal Regulations.

478.     Under federal law, 42 U.S.C. § 402(i), the widower of a deceased person shall receive a lump-sum of $255 after the death of his spouse.

479.     Herb's claim for the lump-sum death benefit was denied because of DOMA, 1 U.S.C. § 7, and because the SSA is required under DOMA, 1 U.S.C. § 7, to interpret the Social Security Act to deny benefits to persons married to spouses of the same sex.

480.     As a legally married person under Massachusetts law, Herb would receive the lump-sum death benefit authorized under the Social Security Act, but for the SSA's position that federal law—as applied by the SSA—precludes the grant of the lump-sum death benefit to an individual who is married to someone of the same sex.

481.     DOMA, 1 U.S.C. § 7, creates a classification with respect to Social Security benefits that treats similarly-situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

482.     It would be futile for Herb to proceed further with the SSA because he cannot obtain the lump-sum benefit solely because of DOMA, 1 U.S.C. § 7, and because the SSA cannot consider the constitutionality of DOMA, 1 U.S.C. § 7.

483.     Under federal law, 42 U.S.C. § 402(g), the widower of a deceased insured shall receive insurance benefits up to the primary insurance amount earned by his insured deceased spouse.

484.     Herb's claim for the survivor benefit was denied because of DOMA, 1 U.S.C. § 7, and because the SSA is required under DOMA, 1 U.S.C. § 7, to interpret the Social Security Act to deny benefits to persons married to spouses of the same sex.

485.     As a person legally married under Massachusetts law, Herb would be entitled to the survivor benefit from his deceased spouse John but for DOMA, 1 U.S.C. § 7, which denies survivor benefits to a covered individual's spouse if that spouse is of the same sex.

486.     DOMA, 1 U.S.C. § 7, as applied by the SSA, creates a classification with respect to Social Security benefits that treats similarly-situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

487.     Further administrative process within the SSA is futile because DOMA, 1 U.S.C. § 7, requires the survivor benefit be denied to Herb, and the SSA cannot consider the constitutionality of DOMA, 1 U.S.C. § 7, or the constitutionality of any interpretation of the Social Security statute denying the validity of his marriage.

488.     An actual controversy exists between and among the parties.

COUNT XIII
(Keith Toney & Albert Toney III
v.
Hillary Rodham Clinton)

489.     Plaintiffs Keith and Albert Toney III repeat and reallege the allegations set forth in Paragraphs 26-27, 35-58, and 311-328 as if fully set forth herein.

490.     The issuance of United States passports is controlled generally by Chapter 4 of Title 22 of the United States Code.  See generally 22 U.S.C. §§ 211a, et. seq.

491.     Under 22 U.S.C. § 211a, the Secretary of State has the authority to grant and issue passports in accordance with United States law.

492.     Pursuant to Congressional authority, 22 U.S.C. § 2651a(4), the Secretary of State prescribes all regulations to carry out Chapter 4 of Title 22 of the United States Code.

493.     The pertinent regulations promulgated by the Secretary of State are contained in Part 51 of Title 22 of the Code of Federal Regulations.

494.     The Secretary of State refused to issue Keith's passport in his married name solely because of the State Department's position that DOMA, 1 U.S.C. § 7, precludes the interpretation of the term "marriage" to include a marriage between people of the same sex.

495.     Under the practice now codified by 22 C.F.R. § 51.25(c)(3), if Keith were married to a woman, not a man, he would be entitled to the issuance of a United States passport in his legal surname after marriage upon presenting a copy of the marriage certificate to the State Department.  Because of DOMA, 1 U.S.C. § 7, as applied by the State Department, Keith was treated differently from a similarly situated person married to an individual of a different sex.

496.      Both Keith and Al are harmed by the fact that Keith must travel with a passport that is not issued in his true legal name.  Both are subjected to insecurity and fear that Keith may be detained, denied entry into other countries, or denied re-entry into the United States.

497.      DOMA, 1 U.S.C. § 7, as applied by the State Department, creates a classification with respect to the issuance of passports that treats similarly-situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

498.      An actual controversy exists between and among the parties.

<u>PRAYERS FOR RELIEF</u>

WHEREFORE, the plaintiffs pray that this Court:

1.      Declare that the FEHB Program, the HCSFA, and the FEDVIP Program permit coverage of same-sex spouses under their authorizing statutes and regulations.

2.      Declare DOMA, 1 U.S.C. § 7, unconstitutional as applied to the plaintiffs.

3.      Enjoin the defendants from continuing to discriminate against the plaintiffs by treating them differently from similarly situated individuals who are married to persons of the opposite sex.

4.      Issue an injunction ordering defendant Michael J. Astrue to review the applications for benefits of plaintiffs Jo Ann Whitehead, Randy Lewis-Kendell, Herb Burtis, and Dean Hara without regard to DOMA, 1 U.S.C. § 7.

5.      Award plaintiffs Mary Ritchie and Kathleen Bush judgment in the amount

of $8,147, plus interest and costs as allowed by law, and such other relief as this Court

may deem just, including the award of reasonable litigation costs incurred in this

proceeding under 26 U.S.C. § 7430.

6.      Award plaintiffs Melba Abreu and Beatrice Hernandez judgment in the

amount of $14,018, plus interest and costs as allowed by law, and such other relief as this

Court may deem just, including the award of reasonable litigation costs incurred in this

proceeding under 26 U.S.C. § 7430.

7.      Award attorney's fees and costs to plaintiffs pursuant to 28 U.S.C. § 2412

or any other applicable statutory provision.

8.      Grant such other relief as is just and appropriate.

> NANCY GILL & MARCELLE LETOURNEAU
> MARTIN KOSKI & JAMES FITZGERALD
> DEAN HARA
> MARY RITCHIE & KATHLEEN BUSH
> MELBA ABREU & BEATRICE HERNANDEZ
> JO ANN WHITEHEAD & BETTE JO GREEN
> RANDELL LEWIS-KENDELL
> HERBERT BURTIS
> KEITH TONEY & ALBERT TONEY III
>
> By their attorneys,
>
> GAY & LESBIAN ADVOCATES &
>    DEFENDERS
>
> /s/  Gary D. Buseck
> Gary D. Buseck, BBO # 067540
> gbuseck@glad.org
> Mary L. Bonauto, BBO # 549967
> mbonauto@glad.org
> Nima R. Eshghi, BBO # 633716
> neshghi@glad.org
> Janson Wu, BBO # 600949
> jwu@glad.org

30 Winter Street, Suite 800
Boston, MA  02108
(617) 426-1350

AS TO PLAINTIFFS
MARTIN KOSKI & JAMES FITZGERALD,
DEAN HARA,
MARY RITCHIE & KATHLEEN BUSH,
MELBA ABREU & BEATRICE HERNANDEZ,
JO ANN WHITEHEAD & BETTE JO GREEN,
RANDELL LEWIS-KENDELL,
HERBERT BURTIS, AND
KEITH TONEY & ALBERT TONEY III,

FOLEY HOAG LLP

/s/  Claire Laporte
Claire Laporte, BBO # 554979
claporte@foleyhoag.com
Vickie L. Henry, BBO # 632367
vhenry@foleyhoag.com
Matthew Miller, BBO # 655544
mmiller@foleyhoag.com
Amy Senier, BBO # 672912
asenier@foleyhoag.com
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA  02210-2600
(617) 832-1000

AS TO PLAINTIFFS
MARY RITCHIE & KATHLEEN BUSH, AND
MELBA ABREU & BEATRICE HERNANDEZ,

SULLIVAN & WORCESTER LLP

/s/  David J. Nagle
David J. Nagle, BBO # 638385
dnagle@sandw.com
Richard L. Jones, BBO # 631273
rjones@sandw.com
One Post Office Square
Boston, MA  02109
617 338-2800

DATED:  March 3, 2009