UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 1:09-cv-10309

_____
NANCY GILL & MARCELLE LETOURNEAU,  )
MARTIN KOSKI & JAMES FITZGERALD,    )
DEAN HARA,  )
MARY RITCHIE & KATHLEEN BUSH,  )
MELBA ABREU & BEATRICE HERNANDEZ,  )
MARLIN NABORS & JONATHAN KNIGHT,  )
MARY BOWE-SHULMAN &  )
DORENE BOWE-SHULMAN,  )
JO ANN WHITEHEAD & BETTE JO GREEN,  )
RANDELL LEWIS-KENDELL, and  )
HERBERT BURTIS,  )
  )
      Plaintiffs,  )
  )
v.  )
  )
OFFICE OF PERSONNEL MANAGEMENT,  )
UNITED STATES POSTAL SERVICE,  )
JOHN E. POTTER, in his official capacity as  )
the Postmaster General of the United States of  )
America,  )
MICHAEL J. ASTRUE, in his official capacity  )
as the Commissioner of the Social Security  )
Administration,  )
ERIC H. HOLDER JR., in his official capacity  )
as the United States Attorney General, and  )
THE UNITED STATES OF AMERICA,  )
      Defendants.  )
_____)

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY,
INJUNCTIVE, OR OTHER RELIEF AND FOR REVIEW OF AGENCY ACTION

<u>Introduction/Nature of the Action</u>

1.     This is a case about federal discrimination against gay and lesbian individuals married to someone of the same sex, and the harm that discrimination has caused each plaintiff.

2.     Plaintiffs in this action are citizens of the Commonwealth of Massachusetts and the United States of America.  Each of the plaintiffs is, or was until becoming a widower, legally married to a person of the same sex in accordance with the requirements of Massachusetts state law.

3.     Although the federal government does not license marriages, a large number of its programs take marital status into account in determining eligibility for federal protections, benefits and responsibilities.  Statute, precedent, and practice establish state law as the touchstone for determining a couple's marital status for purposes of determining eligibility for federal programs.

4.     Each plaintiff, or his or her spouse, has made one or more requests to the appropriate agencies or authorities within the federal government for treatment as a married couple, a spouse, or a widower with respect to particular programs or benefits.  Yet each of the plaintiffs has been denied and is still being denied legal protections and benefits under federal law that are available to a similarly situated person married to an individual of a different sex under Massachusetts law.

5.     With each denial of specific protections or benefits, the defendants or their agents have invoked the "Defense of Marriage Act," P.L. 104-199, codified in part as 1 U.S.C. § 7 ("DOMA, 1 U.S.C. § 7") and have stated that the federal government will only respect marriages between a man and a woman.

6.      Several of the plaintiffs, as set forth below, seek spousal protections based on their employment with, or their spouse's employment with, the United States government.  Plaintiff Nancy Gill, a 21-year employee of the United States Post Office, already receives "Self and Family" health insurance coverage for herself and the two children she has with her spouse, plaintiff Marcelle Letourneau, through her job at the Post Office.  Yet, unlike postal workers married to spouses of the opposite sex (see below at Paragraphs 60-105), she is unable to add her spouse, Marcelle, to that plan or to the vision benefit plan, nor can she use her flexible spending account for Marcelle's medical expenses.  Plaintiff Martin Koski, a retiree from the Social Security Administration, has been denied health insurance coverage for his spouse, plaintiff James Fitzgerald, although retired employees who are married to someone of a different sex may add their spouses to such coverage, as described below at Paragraphs 106-136.  Plaintiff Dean Hara is the surviving spouse of Gerry Studds, a retired Member of the United States Congress.  Dean has been denied both health insurance and the survivor annuity normally available to surviving spouses, which is described below at Paragraphs 137-184.  In each instance, DOMA, 1 U.S.C. § 7, has barred the plaintiffs' access to benefits routinely granted to others in similar circumstances.

7.      Several of the plaintiffs, as set forth below, are being denied their correct spousal status by the Internal Revenue Service ("IRS") on the basis of DOMA, 1 U.S.C. § 7, and thus have been required to pay more in federal income taxes than other similarly situated people married to someone of a different sex.  Plaintiffs Melba Abreu and Beatrice Hernandez, as described below at Paragraphs 223-259, plaintiffs Mary Ritchie and Kathleen Bush, as described below at Paragraphs 185-222, plaintiffs Marlin Nabors

and Jonathan Knight, as described below at Paragraphs 260-289, and plaintiffs Mary

Bowe-Shulman and Dorene Bowe-Shulman, as described below at Paragraphs 290-315,

seek to file their federal income tax returns as "Married Filing Jointly" rather than as

"Single" or "Head of Household."  Plaintiff Mary Ritchie also seeks to contribute funds

to a "spousal IRA" for her spouse Kathleen Bush, to contribute to her retirement security,

as an income-earning person who is married to someone of a different sex may do (see

below at Paragraph 197).  Plaintiff Mary Bowe-Shulman, whose employment provides

her spouse and children with family health insurance coverage, also seeks an exclusion of

the value of her spouse's health insurance coverage from her federally taxable income,

just as a person who is married to someone of a different sex receives that exclusion from

federal taxable income when his or her spouse receives employer provided health

insurance coverage.  Plaintiffs Abreu and Hernandez, plaintiffs Ritchie and Bush,

plaintiffs Nabors and Knight, and plaintiffs Bowe-Shulman filed amended federal income

tax returns with the IRS, asking to be re-categorized as married taxpayers and requesting

refunds.

    8.    Several of the plaintiffs, as set forth below, seek spousal protections

afforded by the Social Security program.  Three different widowers, plaintiff Randell

Lewis-Kendell, as described below at Paragraphs 342-372, plaintiff Herbert Burtis, as

described below at Paragraphs 373-398, and plaintiff Dean Hara, as described below at

Paragraphs 137-184, seek the "One-Time Lump-Sum Death Benefit" normally available

upon the death of a spouse.  Plaintiff Burtis, relying on the long work record of his

spouse, also seeks the survivor benefit normally available to a widower married to

someone of the opposite sex, as described below at Paragraphs 386-398.  This benefit

would increase his monthly Social Security payment by approximately $700 per month, to the level of the monthly payment that his deceased spouse, John Ferris, received before his death.  As a person married to a spouse of a different sex is entitled to do (see below at Paragraph 327), plaintiff Jo Ann Whitehead, as described below at Paragraphs 316-341, seeks to increase her monthly Social Security payment based on the work record of her spouse, plaintiff Bette Jo Green, who has had higher earnings during their long relationship.  Each of these plaintiffs has been denied these benefits by the Social Security Administration because of DOMA, 1 U.S.C. § 7.

9.      This is an action for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. Rule 57 and for review of agency action pursuant to 5 U.S.C. §§ 701-706.  It seeks a determination that DOMA, 1 U.S.C. § 7, as applied to plaintiffs, violates the United States Constitution by refusing to recognize lawful marriages for purposes of the laws governing benefits for federal employees and retirees, the Internal Revenue Code, and the Social Security laws.  The result of these violations of the Constitution is that each of the plaintiffs has been denied, and will continue to be denied, legal protections and benefits under federal law that would be available to them if their spouses were of the opposite sex.

## Jurisdiction and Venue

10.     This action arises under the Constitution of the United States and the laws of the United States, including 26 U.S.C. § 7422.  The jurisdiction of this Court is invoked pursuant to 5 U.S.C. § 8912; 5 U.S.C. § 8991; 28 U.S.C. § 1331; 28 U.S.C. § 1346(a)(1); and 42 U.S.C. § 405(g).

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) and 28 U.S.C. § 1402(a)(1), because the plaintiffs reside in this district, and the events giving rise to these claims arose in this district.

<u>Parties</u>

12.     Plaintiff NANCY GILL is a citizen of the Commonwealth of Massachusetts and resides in Bridgewater, Massachusetts.

13.     Plaintiff MARCELLE LETOURNEAU is a citizen of the Commonwealth of Massachusetts and resides in Bridgewater, Massachusetts.

14.     Plaintiff MARTIN KOSKI is a citizen of the Commonwealth of Massachusetts and resides in Bourne, Massachusetts.

15.     Plaintiff JAMES FITZGERALD is a citizen of the Commonwealth of Massachusetts and resides in Bourne, Massachusetts.

16.     Plaintiff DEAN HARA is a citizen of the Commonwealth of Massachusetts and resides in Boston, Massachusetts.

17.     Plaintiff MARY RITCHIE is a citizen of the Commonwealth of Massachusetts and resides in Framingham, Massachusetts.

18.     Plaintiff KATHLEEN BUSH is a citizen of the Commonwealth of Massachusetts and resides in Framingham, Massachusetts.

19.     Plaintiff MELBA ABREU is a citizen of the Commonwealth of Massachusetts and resides in Boston, Massachusetts.

20.     Plaintiff BEATRICE HERNANDEZ is a citizen of the Commonwealth of Massachusetts and resides in Boston, Massachusetts.

21.     Plaintiff MARLIN NABORS is a citizen of the Commonwealth of Massachusetts and resides in Hyde Park, Massachusetts.

22.     Plaintiff JONATHAN KNIGHT is a citizen of the Commonwealth of Massachusetts and resides in Hyde Park, Massachusetts.

23.     Plaintiff MARY BOWE-SHULMAN is a citizen of the Commonwealth of Massachusetts and resides in Acton, Massachusetts.

24.     Plaintiff DORENE BOWE-SHULMAN is a citizen of the Commonwealth of Massachusetts and resides in Acton, Massachusetts.

25.     Plaintiff JO ANN WHITEHEAD is a citizen of the Commonwealth of Massachusetts and resides in Jamaica Plain, Massachusetts.

26.     Plaintiff BETTE JO GREEN is a citizen of the Commonwealth of Massachusetts and resides in Jamaica Plain, Massachusetts.

27.     Plaintiff RANDELL LEWIS-KENDELL is a citizen of the Commonwealth of Massachusetts and resides in Harwich Port, Massachusetts.

28.     Plaintiff HERBERT BURTIS is a citizen of the Commonwealth of Massachusetts and resides in Sandisfield, Massachusetts.

29.     Defendant OFFICE OF PERSONNEL MANAGEMENT is an independent establishment of the Executive Branch of the government of the United States.  Its actions, rules, and regulations are subject to review by the federal courts.

30.     Defendant UNITED STATES POSTAL SERVICE is an independent establishment of the Executive Branch of the government of the United States, empowered by Congress to sue and be sued in its own name.

31.     Defendant JOHN E. POTTER is currently the Postmaster General of the United States of America.  In his official capacity, the Postmaster General is responsible for the administration of employee-related benefits within the United States Postal Service.

32.     Defendant MICHAEL J. ASTRUE is currently the Commissioner of the Social Security Administration, an independent agency of the United States Government. In his official capacity, the Commissioner of the Social Security Administration is responsible for the administration and enforcement of the Social Security Act.

33.     Defendant ERIC H. HOLDER JR. is currently the Attorney General of the United States.  In his official capacity, the Attorney General is the chief federal official responsible for the enforcement of all federal statutes in accordance with the Constitution of the United States of America.

34.     Defendant THE UNITED STATES OF AMERICA is the proper defendant in a complaint seeking refund of federal income taxes pursuant to 26 U.S.C. § 7422(f)(1).

## Facts Common To All Plaintiffs And All Claims

35.     Each plaintiff is a citizen of the Commonwealth of Massachusetts and of the United States and has borne the obligations of citizenship by paying taxes and contributing to Social Security.

36.     As United States citizens, each of the plaintiffs is entitled to equal consideration and treatment from the federal government, and with respect to each and every program operated by the federal government, including employment and retirement

8

benefit programs arising from employment with the federal government, Social Security, and income taxation.

37.     Each of the plaintiffs is, or was until becoming a widower, married to a person of the same sex in accordance with the legal requirements of the Commonwealth of Massachusetts.  Each of the plaintiffs married to nurture and support his or her family and, for some plaintiffs, to raise children.  Each of these marriages was duly recognized under state law.

38.     DOMA, 1 U.S.C. § 7, burdens the plaintiffs' familial relationships, including their ability to form and support their marriages and families and to raise their children.

39.     Although each of the plaintiffs is similarly situated to all other married or widowed persons in the Commonwealth of Massachusetts, DOMA, 1 U.S.C. § 7, requires the plaintiffs to deny the existence of their families and the nature of their familial relationships.  DOMA, 1 U.S.C. § 7, thereby causes confusion and complexity in a culture where people are expected to have one familial and marital status, whether dealing with private, state or federal entities.

40.     As a general matter, DOMA, 1 U.S.C. § 7, forces plaintiffs to misstate their actual marital status and describe themselves as "unmarried" to United States government officials and on United States government forms on pain of civil or criminal sanctions.  For example, federal employees like plaintiff Nancy Gill could face criminal charges for false statements if she claimed Marcelle as her spouse on a health benefits election form.  18 U.S.C. § 1001.  Under the Social Security Act, "any false statement" of a "material fact," including marriage, in connection with an application for benefits, is

punishable as a felony. 42 U.S.C. § 408.   Federal income tax law requires income tax returns to be signed under the pains and penalties of perjury, 26 U.S.C. § 7206, but DOMA, 1 U.S.C. § 7, forces the plaintiffs to make blatant misrepresentations about their families and their marital status.

41.     The requirement, imposed by DOMA, 1 U.S.C. § 7, that plaintiffs inaccurately identify their marital status as "single" or "unmarried" in federal contexts, even though they are legally married, burdens and stigmatizes their family relationships.

42.     As a sovereign State of the United States of America, the Commonwealth of Massachusetts (hereafter, "the Commonwealth," or "Massachusetts") has, since its ratification of the United States Constitution and, indeed, before then, exclusively established and ordained the legal requirements for civil marriage within the Commonwealth and the status of spouses to such marriages entered into within the Commonwealth.

43.     Effective May 17, 2004, with the implementation of the Massachusetts Supreme Judicial Court's constitutional determination in Goodridge v. Dept. of Public Health, 440 Mass. 309 (2003), same-sex couples who otherwise complied with the requirements for obtaining a marriage license in the Commonwealth of Massachusetts were and are entitled to marry under the law of the Commonwealth.

44.     Since May 17, 2004, the Commonwealth of Massachusetts, pursuant to the Constitution of Massachusetts, has created, established, and recognized a single marital status that is available to every qualifying couple, whether same-sex or different-sex, i.e., regardless of the sex of the two parties to the marriage.

45.     Massachusetts has also made a political determination that different-sex couples and same-sex couples must be treated the same with respect to marriage and its attendant rights and responsibilities.  The Massachusetts Legislature has rejected every proposed constitutional amendment that would have reversed the <u>Goodridge</u> decision, most recently at the constitutional convention session of June 14, 2007.  Uncorrected Proof of the Journal of the Senate, Thursday, June 14, 2007.

46.     The plaintiffs are similarly situated to persons married to individuals of a different sex and, under Massachusetts law, are accorded the same status, responsibilities, and protections as other married persons.  Federal law, however, treats same-sex and opposite-sex couples differently in the specific ways set forth in Paragraphs 67 through 398 below.

47.     The federal government of the United States has, since its founding and at least until 1996, recognized the exclusive authority every state possesses, as an essential part of its sovereignty, to determine the civil status and capacities of all its inhabitants, including the absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created.

48.     Throughout history and at least until 1996, the United States has consistently deferred to the sovereignty of the States when the marital status of an individual has been used as a marker of eligibility or access to some benefit, right, or responsibility identified by the federal government.

<u>The "Defense of Marriage Act"</u>

49.     Congress enacted the so-called "Defense of Marriage Act" ("DOMA, 1 U.S.C. § 7"), P.L. 104-199, in 1996, and it was approved on September 21, 1996.

50.     This law responded to "a very particular development in the State of Hawaii."  H.R. Rep. No. 104-664, <u>reprinted in</u> 1996 U.S.C.C.A.N. 2905, at 2906.   As the controlling House Judiciary Committee Report explained "the state courts in Hawaii appear on the verge of requiring that State to issue marriage licenses to same-sex couples," and that development "threatens to have very real consequences … on federal law…."  Id.  More specifically,

> [I]f Hawaii does ultimately permit homosexuals to 'marry,' that development could have profound practical implications for federal law.  For to the extent that federal law has simply accepted state law determinations of who is married, a redefinition of marriage in Hawaii to include homosexual couples could make such couples eligible for a whole range of federal rights and benefits.

Id., at 2914.

51.     Section 3 of DOMA, 1 U.S.C. § 7, provides in its entirety as follows:

Sec. 3  DEFINITION OF MARRIAGE.

(a)  IN GENERAL – Chapter 1 of title 1, United States Code is amended by adding at the end the following:

§7.  Definition of 'marriage' and 'spouse'

"In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife."

(b)  CLERICAL AMENDMENT. – The table of sections at the beginning
of chapter 1 of title 1, United States Code, is amended by inserting after
the item relating to section 6 the following new item:

"7.  Definition of 'marriage' and 'spouse'."

52.     In passing DOMA, 1 U.S.C. § 7, Congress took the unprecedented step of

preemptively nullifying a class of marriages that it expected states would begin to license

at some point in the future, that is, marriages of same-sex couples.  It withdrew from

these marriages, but not from others, all federal financial and other responsibilities and

protections.

53.     With regard to a gay or lesbian individual married to someone of the same

sex, DOMA, 1 U.S.C. § 7, has overridden the longstanding deference of federal to state

law in determining the marital status of an individual seeking the benefit or responsibility

of any federal law triggered by a person's state-established marital status, and

categorically denies both rights and responsibilities.

54.     In a 1997 Report, the General Accounting Office ("GAO") estimated that

at least 1,049 federal laws were affected by DOMA, 1 U.S.C. § 7, because those laws

depended on or in some way related to marital status.  U.S. Gen. Accounting Office,

GAO/OGC-97-16 Defense of Marriage Act (1997), available at

http://www.gao.gov/archive/1997/og97016.pdf.  A follow-up study in 2004 found that

1,138 federal laws tied benefits, protections, or responsibilities to marital status.  U.S.

Gov. Accountability Office, GAO-04-353R Defense of Marriage Act (2004), available at

http://www.gao.gov/new.items/d04353r.pdf.

55.     If not for the application of DOMA, 1 U.S.C. § 7, to all federal programs,

the plaintiffs, as persons married under Massachusetts law, would receive the same

13

status, responsibilities and protections under federal law as other married persons.  Yet when same-sex couples began to marry in Massachusetts, DOMA, 1 U.S.C. § 7, operated to single out one class of marriages legally recognized by the Commonwealth of Massachusetts, those of same-sex couples, and to deny their existence for all conceivable ends and purposes of federal law.

56.     Plaintiffs have been denied legal protections normally available to spouses under federal law.  Despite plaintiffs' willingness to assume the legally imposed responsibilities of marriage at the federal level, just as they do at the state level, they are prevented from doing so by DOMA, 1 U.S.C. § 7.

57.     DOMA, 1 U.S.C. § 7, grants preferred legal status and unique privileges to individuals married to someone of a different sex.

58.     The official House Report on DOMA, 1 U.S.C. § 7, H.R. Rep. No. 104-664, advances four rationales for why the federal government drew a line between its treatment of an individual married to a person of the same sex versus an individual married to a person of the opposite sex.  Those reasons are:

(1) H.R. 3396 [the bill number] ADVANCES THE GOVERNMENT'S INTEREST IN DEFENDING AND NURTURING THE INSTITUTION OF TRADITIONAL HETEROSEXUAL MARRIAGE.

(2) H.R. 3396 ADVANCES THE GOVERNMENT'S INTEREST IN DEFENDING TRADITIONAL NOTIONS OF MORALITY.

(3) H.R. 3396 ADVANCES THE GOVERNMENT'S INTEREST IN PROTECTING STATE SOVEREIGNTY AND DEMOCRATIC SELF GOVERNANCE.

(4) H.R. 3396 ADVANCES THE GOVERNMENT'S INTEREST IN PRESERVING SCARCE GOVERNMENT RESOURCES.

59.     None of these interests is adequate to justify discrimination against married persons in same-sex relationships.  The first two rationales have nothing to do with any federal interest and simply reflect a belief that same-sex couples should not be permitted to marry.

60.     The first claimed federal "interest" in "defending" "traditional heterosexual marriage" simply restates the government's intent to discriminate against same-sex couples and provides no independent justification for the government's discriminatory action.  The federal government has long accepted state determinations of marital status, even in the face of changes in marriage licensing by the states.  The only state-licensed marriages it categorically refuses to respect are those of same-sex couples.  In short, this "interest" repeats the distinction drawn by DOMA, 1 U.S.C. § 7, that is, between married couples of the same sex and married couples of different sexes, but it does not explain it.

61.     The federal government's refusal to recognize the plaintiffs' marriages does not nurture, improve, stabilize or enhance the marriages of other married couples.  Nor would the federal government's recognition of plaintiffs' marriages degrade, destabilize or have any other deleterious effect on the marriages of other married couples.

62.     The second claimed federal interest in "morality" is another reframing of Congress's disapproval of gay men and lesbians.  Gay men, lesbians and bisexuals have suffered a long history of public and private discrimination.  Discrimination for its own sake is not a legitimate purpose upon which disadvantageous classifications may be imposed.  Moreover, sexual orientation bears no relation whatsoever to an individual's ability to participate in or contribute to society.

63.     The third claimed interest in "protecting state sovereignty" is actually subverted by DOMA, 1 U.S.C. § 7, not advanced by it.  Congress contravened inherent constitutional principles of federalism and failed to honor our nation's system of dual sovereignty in enacting DOMA, 1 U.S.C. § 7, because it is the states, and not the federal government, that regulate marriage and determine family status.  Congress did not "protect" state sovereignty in enacting DOMA, 1 U.S.C. § 7, since it dishonored the sovereignty of the states that license or recognize marriages of same-sex couples.

64.     As to the fourth claimed interest of preserving government resources, the available data from the Congressional Budget Office establishes that recognizing the marriages of individuals married to a person of the same sex would result in an annual net increase in federal revenue through 2014.  Congressional Budget Office, U.S. Congress, The Potential Budgetary Impact of Recognizing Same-Sex Marriages, June 21, 2004.  There was and is no factual basis for the claim that DOMA, 1 U.S.C. § 7, "preserve[es] scarce government resources."

65.     While the public fisc is always a matter of concern, it is not a legitimate interest in the context of Congressionally provided protections and responsibilities for spouses and families.  Congress has yet to identify a reason why gay and lesbian individuals who have met their obligations as taxpaying citizens and who are married to someone of the same sex must be denied protections available to persons who are married to someone of a different sex.  Singling out same-sex couples who are married among all married persons is simply an expression of the intent to discriminate against gay people.

66.     At root, DOMA, 1 U.S.C. § 7, is motivated by disapproval of gay men and lesbians and their relationships, an illegitimate federal interest.

16

Facts Particular To Individual Plaintiffs

Plaintiffs Nancy Gill and Marcelle Letourneau

67.     Plaintiff Nancy Gill ("Nancy") is, and was at all relevant times, an employee of the defendant, United States Postal Service ("Postal Service"). Nancy has worked for the Postal Service since 1987.

68.     Nancy met her spouse, plaintiff Marcelle Letourneau ("Marcelle"), in 1978, and they have been a committed couple since 1980.

69.     Marcelle has been employed in administrative capacities by a nursing services provider in Massachusetts for more than 25 years. She also works as an independent medical transcriptionist.

70.     After 12 years together, Nancy and Marcelle had their first child, a daughter, now age 16. A son, now age 9, followed. Nancy worked the night shift at the Post Office for many years to be available to her children during the day. Both children have hyphenated last names with the surnames of their two parents.

71.     Nancy and Marcelle live in a home they jointly own in Bridgewater, Massachusetts, together with their children, who attend public school.

72.     After 24 years together, on Friday, May 21, 2004, Nancy and Marcelle were married by a justice of the peace in Brockton, Massachusetts in strict and complete accordance with Massachusetts law. They then went away together for the weekend with their family to celebrate.

17

73.     Although Nancy and Marcelle married to solemnize their longstanding commitment to each other and their family, they also looked forward to the spousal benefits they expected to receive from the Postal Service.

74.     As an employee of the United States Postal Service, Nancy is enrolled in the Federal Employees Health Benefits Program ("FEHB").

75.     Nancy has been enrolled in FEHB with a "Self and Family" Plan since the birth of her and Marcelle's daughter in January 1993.  The plan now covers herself and their two children.

76.     According to the FEHB Handbook, "Self and Family" enrollment is described as follows:

> **Self and Family**
>
> A self and family enrollment provides benefits for you and your eligible family members.  **All of your eligible family members are automatically covered, even if you didn't list them on your Health Benefits Election** Form (SF 2809) or other appropriate request.  You cannot exclude any eligible family member and you cannot provide coverage for anyone who is not an eligible family member.
>
> You may enroll for self and family coverage before you have any eligible family members.  Then, **a new eligible family member (such as a newborn child or a new spouse) will be automatically covered by your family enrollment from the date he/she becomes a family member.**  When a new family member is added to your existing self and family enrollment, you do not have to complete a new SF 2809 or other appropriate request, but your carrier may ask you for information about your new family member.  You will send the requested information directly to the carrier.  *Exception*:  if you want to add a foster child to your coverage, you must provide eligibility information to your employing office.

FEHB Handbook, Enrollment, Types of Enrollment (emphasis supplied).

77.     According to 5 U.S.C. § 8901(5), "member of family" is defined, in part, to "mean[] the spouse of an employee or annuitant and an unmarried child under 22 years of age …."

78.     Although Marcelle should have been automatically covered by Nancy's Self and Family Plan upon Nancy and Marcelle's marriage on May 21, 2004, Nancy took the additional, permitted step of submitting a standard SF 2809 form to her employing office, dated May 24, 2004, listing as her family members her children and her spouse. This form was submitted on the Monday following Nancy and Marcelle's marriage the previous Friday.

79.     Nancy's SF 2809 form was received in her employing office on May 24, 2004.

80.     On May 25, 2004, Nancy had a conversation with her Human Resources Manager, Ann Mailloux, concerning her rights to benefits coverage for her spouse, Marcelle.

81.     By letter dated June 4, 2004, the United States Postal Service formally advised Nancy "that the Postal Service is unable to provide you with benefit coverage for your partner [sic]." Letter from Ann Mailloux, Manager, Human Resources, USPS, Southeast New England Performance Cluster, to Nancy M. Gill (June 4, 2004).

82.     The June 4, 2004, letter provided the following reasoning:

The Postal Service is bound by rules and regulations issued by the Office of Personnel Management and applicable federal law (as opposed to state law). Same-sex partners are not considered eligible under Federal Employees Health Benefits (FEHB) or Federal Employees Group Life Insurance (FEGLI) in that federal law defines family members (which are covered) as a spouse and an unmarried dependent child under age 22. Public Law 104-199, Defense of Marriage Act, states, that the word 'marriage' means a legal union between one man and one woman as

19

husband and wife, and the word 'spouse' refers only to a person of the
opposite sex who is a husband or a wife.

83.     Nancy and Marcelle were shocked that Marcelle was denied benefits
under Nancy's plan.  On June 7, 2004, Nancy filed a request for pre-complaint
counseling under the Equal Employment Opportunity Process and was advised to
complete and return PS Form 2564-A within 10 days.

84.     Nancy completed PS Form 2564-A within 10 days, asserting that she had
not been treated equally and had been "discriminated against for being a lesbian."  PS
Form 2654-A, p. 1, Section B.  Specifically, she stated: "Anyone who has gotten married
while employed by the US Postal Service has the right to put their new spouse on their
Health Insurance.  That new spouse is entitled by marriage to a host of benefits which my
spouse is denied.  How can this be called anything but discrimination?"  PS Form 2654-
A, p. 2, Section D.

85.     For a resolution to her pre-complaint, Nancy stated: "Allow me to have
the same rights as my co-workers who are married."  PS Form 2654-A, p. 2, Section F.

86.     By letter dated June 21, 2004, USPS NEEO Dispute Resolution Specialist
Debra A. DeSantis corresponded with Nancy to "conclude the pre-complaint stage of the
EEO Complaints Process."  Letter from Debra DeSantis, NEEO Dispute Resolution
Specialist, USPS, Southeast New England Performance Cluster, to Nancy Gill (June 21,
2004).

87.     The June 21, 2004 letter apprised Nancy that: (1) benefits are administered
by the Office of Personnel Management, which relies on Public Law 104-199, i.e.,
DOMA, 1 U.S.C. § 7, to exclude the marriages of same-sex couples from the requested

benefit; and (2) as to "the factors of discrimination as depicted [sic] in the Civil Rights Act, Title VII does not include sexual orientation as a protected class."

88.     On June 29, 2004, Nancy signed and filed an "EEO Complaint of Discrimination in the Postal Service," seeking "the same rights and benefits and responsibilities as any one of my co-workers who are also married."  Case No. 1B-024-0007-04; Complaint, Item No. 17.

89.     By decision dated July 20, 2004, Nancy's Complaint in Case No. 1B-024-007-04 was dismissed for failure to state a claim because discrimination based on sexual orientation "is not actionable under EEOC Regulations."

90.     Because the Office of Personnel Management, following DOMA, 1 U.S.C. § 7, would not permit Nancy to cover Marcelle through her family health insurance, Nancy and Marcelle had to purchase health insurance for Marcelle that would otherwise have cost nothing, since Nancy already had the "Self and Family" plan.

91.     Because of the extra expense of health insurance for Marcelle, Nancy again sought to add Marcelle to her FEHB Self and Family Plan, as well as to the available vision benefit plan ("FEDVIP") and to her flexible spending account, during the open enrollment period between November 10, 2008 and December 9, 2008.

92.     Initially, Nancy sought to enroll Marcelle through the PostalEASE system through her home computer, and then through the PostalEASE Employee Kiosk at her workplace on Friday, November 21, 2008.

93.     When Nancy attempted to add Marcelle as her spouse for health insurance and identified Marcelle's gender as "female," the system returned a message that said: "Your gender and the gender selected for your spouse cannot be the same."

94.     When Nancy attempted to add Marcelle as her spouse for the vision insurance plan and identified Marcelle's gender as "female," the system again returned a message that said: "Your gender and the gender selected for your spouse cannot be the same."

95.     Although PostalEASE allowed Nancy to enter Marcelle on her list of dependents, when Nancy attempted to "Finish Enrollment," the system produced an error message: "Unknown Tran Codes."

96.     Nancy also received a message from the kiosk system that said: "The system cannot process a 2809 form for you at this time – You must complete an FEHB enrollment through PostalEASE before you can print a completed 2809 Enrollment Form."

97.     Despite the refusal of the PostalEASE system to accept her enrollment request, Nancy persisted by phone and by mail to obtain assistance from her local Human Resources officer in adding Marcelle to her health and vision benefit plans and flexible spending account.

98.     Nancy received a response by letter dated December 8, 2008, from Michelle Palardy, HR Generalist Principal, USPS – SENE District.  Letter from Michelle Palardy, Human Resources General Specialist, USPS—Southeast New England District, to Nancy Gill (Dec. 8, 2008).

99.     The text of the December 8, 2008, letter stated in its entirety:

This is in response to your inquiry regarding adding your spouse to your health benefits during open season 2009.

After researching the situation, I have found information on the US Office of Personnel Management website (www.opm.gov) that states that same sex partners are not eligible as family members under enrollment in

Federal Employees Health Benefits Programs, Federal Employees Dental and Vision Insurance Program, Federal Employees' Group Life Insurance Program, Federal Flexible Spending Account Program, and Federal Long Term Care Insurance Program.

The Office of Personnel Management sites [sic] Public Law 104199 Defense of Marriage Act.  It states, "The word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife."

I have attached a copy of the page from the OPM website that states this. I hope that this has been responsive to your concerns in this matter.

100.    The Office of Personnel Management ("OPM") website material attached to the December 8, 2008, letter indicates that it "can be found on the web at the following url: http://opm.gov/insure/lifeevents/le4a.asp."

101.    Nancy followed up by writing a letter to the United States Postal Service HR Shared Services Center in Greensboro, North Carolina to confirm that there were no further steps she could take to enroll Marcelle for spousal benefits.  Letter from Nancy Gill to Michelle Palardy, Human Resources General Specialist, USPS—Southeast New England District and Open Enrollment Manager, Shared Services, USPS (Dec. 18, 2008).

102.    By letter dated January 2, 2009, the HR Shared Services Center wrote to Nancy regarding Reference # H-2583279 and stated: "the information provided to you by Michelle Palardy is correct."  Letter from USPS, Human Resources Shared Service Center, Greensborough, N.C., to Nancy Gill (Jan. 2, 2009).

103.    As a result of the United States Postal Service's application of DOMA, 1 U.S.C. § 7, Marcelle has been denied both health and vision insurance as well as all other employment-related benefits available to the spouses of United States Postal Service employees.

104.    As a result of the United States Postal Service's application of DOMA, 1 U.S.C. § 7, Nancy has been prohibited from covering Marcelle under her federal flexible spending account as well as all other employment-related benefits available to United States Postal Service employees for the support of their spouses.

105.    As a result of this exclusion from benefits, Marcelle and Nancy have suffered specific and concrete financial harms.  Spousal health insurance and vision coverage are valuable benefits of employment.  Marcelle and Nancy have been forced to buy health insurance for Marcelle as if they were not married, to the financial detriment of Marcelle, Nancy, and their children.  Nancy and Marcelle have also been denied, among other things, the financial benefits that accrue to a household from the use of a flexible spending account for the medical expenses of a spouse.

Plaintiffs Martin Koski and James Fitzgerald

106.    Plaintiff Martin Koski ("Martin") is a retired employee of the Social Security Administration.

107.    Martin and his spouse James Fitzgerald ("Jim") have been in a committed relationship for over 34 years.

108.    Jim currently works as a counselor's aide at an alcohol treatment center.

109.    Martin worked as a claims representative for the Social Security Administration from 1968 until 1979 in Boston.

110.    In 1979, Martin and Jim decided to move to Florida together, and so Martin left his job at the Social Security Administration.

24

111.    In Florida, Martin worked as a travel agent, while he and Jim together took care of Martin's father, who was dying of cancer.  Martin's father passed away in 1994, with Martin and Jim at his side.

112.    In 1995, Martin and Jim returned to Boston.  Martin was welcomed back to his prior position as a claims representative for the Social Security Administration, where he worked until his retirement in 2005.

113.    As a former employee and qualified annuitant of the Social Security Administration, Martin is enrolled in the FEHB.

114.    For some time prior to October 5, 2007, Martin was enrolled in FEHB under a "Self-Only" plan, covering, as the name suggests, himself only.

115.    Pursuant to 5 U.S.C. § 8905, 5 C.F.R. § 890.306(g)(1) and the FEHB handbook, an FEHB enrollee is allowed to change his enrollment from "Self Only" to "Self and Family" beginning 31 days before and ending 60 days after a change in family status, which includes a change in marital status.

116.    According to the FEHB Handbook, "Self and Family" enrollment is described as follows:

**Self and Family**

A self and family enrollment provides benefits for you and your eligible family members.  All of your eligible family members are automatically covered, even if you didn't list them on your Health Benefits Election Form (SF 2809) or other appropriate request.  You cannot exclude any eligible family member and you cannot provide coverage for anyone who is not an eligible family member.

FEHB Handbook, Enrollment, Types of Enrollment.

117.    According to 5 U.S.C. § 8901(5), "member of family" is defined, in part, to "mean[] the spouse of an employee or annuitant and an unmarried child under 22 years of age . . . ."

118.    After more than 30 years together, Martin and Jim married on September 10, 2007, in Bourne, Massachusetts, in strict and complete accordance with Massachusetts law.  They married because of their longstanding commitment to one another and their belief that marriage would provide them with additional legal security.

119.    On October 5, 2007, within the 60-day period in which to request a change in enrollment, Martin sent OPM a request to change his enrollment for health benefits from "Self-Only" to "Self and Family" and included his Massachusetts marriage certificate as proof of marriage.

120.    By letter dated January 15, 2008, Martin received a denial of his request from the Retirement Benefits Branch of OPM.  Letter from Tianna Butler, Annuitant Insurance Specialist, Retirement Benefits Branch, OPM, to Martin A. Koski (Jan. 15, 2008).

121.    OPM based its denial of Martin's request for family health insurance for Jim on DOMA, 1 U.S.C. § 7.  In its January 15, 2008 letter, OPM stated:

> Coverage under the FEHB Program is limited to certain family members. The FEHB Program is governed by Federal law.  Title 5, United States Code, section 8901(5) defines family members as an employee's or annuitant's spouse and his or her unmarried dependent children under the age of 22.
>
> Public Law 104-199, the Defense of Marriage Act, states, "In determining the meaning of any Act of Congress, or any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is husband or a wife."

> Based on the FEHB law and the Defense of Marriage Act, OPM has determined that James Fitzgerald is not a recognized qualified dependant and cannot be added to your existing enrollment in the FEHB Program. Therefore, your enrollment will remain as a self only enrollment.

122.    On January 25, 2008, Martin timely requested reconsideration of his denial.  Letter from Martin A. Koski to OPM, Retirement Operations Center, Boyers, PA (Jan. 25, 2008).

123.    By letter dated July 1, 2008, OPM responded to Martin's request for reconsideration and affirmed its original decision to deny Martin's request to change his enrollment to "Self and Family" coverage.  Letter from Antionette Vanderhorst, Legal Administrative Specialist, Disability, Reconsideration and Appeals Group, OPM, to Martin A. Koski (July 1, 2008).

124.    In its July 1, 2008 denial of Martin's request for reconsideration, OPM again relied upon DOMA, 1 U.S.C. § 7:

> Because your marriage to James Thomas Fitzgerald does not meet the definition of marriage in accordance with § 7 [DOMA, 1 U.S.C. § 7], we find that he does not qualify as a family member as specified under section 8901(5) of title 5, United States Code.  Therefore, we must deny your request to change your FEHB self-only coverage to self and family coverage.

125.    On October 10, 2008, Martin sent a letter to OPM requesting a survivor annuity benefit for his spouse, Jim, and included a copy of his marriage certificate as proof of marriage.  Letter from Martin A. Koski to OPM, Boyers, PA (Oct. 25, 2008).

126.    On November 13, 2008, Martin sent an e-mail to OPM requesting information about the processing of his request for a survivor annuity benefit.  E-mail from Martin A. Koski to OPM (Nov. 13, 2008, 4:21:30 PM).

127.    On December 9, 2008, OPM responded to Martin's e-mail informing him that his request had been logged into the "Post-Retirement Section" in Boyers, Pennsylvania on October 23, 2008, and was currently being processed.  E-mail from Bambi Bonaddio, Customer Service Specialist, Customer Services Group, OPM, to Martin A. Koski (Dec. 9, 2008, 10:49 EST).

128.    By letter dated January 26, 2009, OPM denied Martin's request for survivor annuity benefits for Jim, stating that "We do not recognize same sex marriages. The word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband and wife."  Letter from Susan Bonefeste, Legal Administrative Specialist, Post Retirement Section, OPM, to Martin A. Koski (Jan. 26, 2009).  The letter informed Martin of the process for requesting reconsideration of OPM's denial.

129.    On February 2, 2009, Martin timely requested reconsideration of OPM's denial of his request for survivor annuity benefits for Jim.  Letter from Martin A. Koski to OPM, Retirement Operations Center, Boyers, PA (Feb. 2, 2009).

130.    OPM denied Martin's request for reconsideration and affirmed its initial decision by letter dated March 24, 2009. Letter from Antionette Vanderhorst, Legal Administrative Sepcialist, Disabilities, Reconsideration and Appeals Group, OPM, to Martin A. Koski (March 24, 2009).

131.    On April 23, 2009, Martin appealed the OPM's denial of his request for survivor annuity benefits for Jim to the Merit Systems Protection Board ("MSPB"). Letter from Martin Koski to William L. Boulden, Chief Administrative Judge, Northeastern Regional Office, MSPB, April 23, 2009.

132.    The MSPB acknowledged receipt of Martin's appeal on April 24, 2009. Acknowledgment Order, <u>Martin A. Koski v. Office of Personnel Management (CSA: 826487)</u>, Docket No. PH-0843-09-0411-I-1.

133.    On June 12, 2009, Martin filed at the MSPB an unopposed motion for dismissal without prejudice to re-filing.

134.    Administrative Judge Lystra A. Harris granted Martin's motion to dismiss without prejudice on June 15, 2009.  The appeal may be re-filed between July 25, 2009 and December 15, 2010.  Initial Decision, <u>Martin A. Koski v. Office of Personnel Management (CSA: 826487)</u>, Docket No. PH-0843-09-0411-I-1

135.    As a result of OPM's application of DOMA, 1 U.S.C. § 7, Jim has been denied health insurance and survivor annuity benefits available to the spouses of federal retirees even though he is legally Martin's spouse under Massachusetts law.

136.    As a result of this exclusion from benefits, Martin and Jim have suffered specific and concrete financial harms to themselves and to their household.  In particular, Jim has severe asthma that must be controlled with multiple medications.  Jim has been forced, among other things, to purchase health insurance for himself with coverage inferior to that of the federal employee health insurance benefit and at a cost greater than the cost of the federal spousal health insurance coverage.  His deductibles and prescription medication co-payments are higher than they would be if he had access to the FEHB insurance.

<u>Plaintiff Dean Hara</u>

137.    Plaintiff Dean Hara ("Dean") is a financial advisor working as an independent contractor with a financial services company.

138.     Dean is the widowed spouse of former United States Congressman Gerry E. Studds ("Congressman Studds" or "Gerry").

139.     Congressman Studds served in Congress, as a Representative from Massachusetts, for 24 years from his first election in November 1972 until he did not seek re-election in 1996 and his retirement in January 1997.

140.     Dean moved to Washington, D.C. in 1979 for school and then employment.  He and Gerry first met through mutual acquaintances in the early 1980s, and they crossed paths often in their mutual neighborhood of Dupont Circle.

141.     In January 1991, Gerry and Dean began a dating relationship.  Eight months later, on Labor Day, Gerry proposed to Dean, asking him to accept and return a commitment for life.  Shortly thereafter, Dean accepted, and they were a committed couple from that day in 1991 forward.

142.     Throughout Congressman Studds's terms from 1991 through January 1997, Dean attended countless public, Congressional, and political events as the Congressman's recognized spouse.

143.     Dean became a member of the Democratic Spouses organization.  He continues to belong to that organization to this day.

144.     Dean received and carried the official Congressional Spouse Photo Identification card listing him as the spouse of Congressman Studds, 10th MA, which was issued by the Sergeant at Arms of the U.S.  House of Representatives in January 1995.

145.     Upon Gerry's retirement from federal employment, he and Dean moved to Massachusetts, splitting time between Provincetown, Massachusetts, which was in

Gerry's congressional district, and Boston, Massachusetts until 2002, when Boston became their sole residence.

146.   After 13 years as a committed couple, on May 24, 2004, Gerry and Dean were married in Boston, Massachusetts, in strict and complete accordance with Massachusetts law.  They married because the law finally allowed them to formalize the vow of lifetime commitment they had made in 1991.

147.   On October 3, 2006, Gerry never returned home from his morning walk with their dog, Bonnie, as he had suddenly lost consciousness and collapsed because of a blood clot in his lung.

148.   Initially, Gerry's condition improved in the hospital but then worsened unexpectedly on Friday, October 13, 2006.  He died in the early morning hours of Saturday, October 14, 2006, at Boston Medical Center, leaving Dean as his surviving spouse.

149.   At the time of Congressman Studds's death, he was insured under the Social Security program, and he and Dean had been living together in the same household in Boston, Massachusetts.

150.   Under 42 U.S.C. § 402(i) and 20 C.F.R. §§ 404.390-404.391 and §404.347, a surviving spouse is entitled to a lump-sum death payment of $255 if the surviving spouse was "living in the same household with the deceased at the time of death," if the surviving spouse applies for the benefit "prior to the expiration of two years after the date of death …," and if the deceased spouse was "fully or currently insured" at the time of death.

151.     Shortly after Gerry's death, Dean applied for this Social Security lump-sum death benefit.

152.     By letter dated November 14, 2006, the Social Security Administration issued a Notice of Disapproved Claim to Dean, stating in pertinent part:

> We have considered your application for Social Security benefits.
>
> Since the Defense of Marriage Act prohibits SSA from finding that you and the insured were married for benefit purposes, you are not eligible for the lump sum death payment.
>
> **Other Social Security Benefits**
>
> You do not qualify for any other Social Security benefits based on the application you filed.  In the future, if you think you may be entitled to benefits, you will need to apply again.
>
> **If You Disagree With The Decision**
>
> If you disagree with the decision, you have the right to appeal….

Letter from Judy Bernstein, Field Office Manager, Social Security Administration, Boston Office, to Dean T. Hara (Nov. 14, 2006).

153.     As a result of the actions of the Social Security Administration and solely because of the existence and operation of DOMA, 1 U.S.C. § 7, Dean, Gerry's surviving legal spouse under Massachusetts law, has been denied the $255 death benefit otherwise available to him under 42 U.S.C. § 402(i).

154.     In 2006, Dean made an explicit and formal request to SSA, and he received an explicit and formal notice from the SSA denying him the right and opportunity to receive a lump-sum death benefit following the death of his legal spouse.

155.    Because the SSA does not recognize Dean's marriage, Dean has been denied the Social Security death benefit and has thus suffered specific and concrete financial harm.

156.    Based upon his 27 years of federal service, including 24 years as a Congressman from Massachusetts, Congressman Studds was a participant in the Civil Service Retirement System ("CSRS").

157.    As part of his retirement planning, on May 17, 1993, Gerry designated Dean as the beneficiary of any "lump sum benefit" payable upon his death under 5 U.S.C. § 8342 and filed that designation with OPM.  Standard Form No. 2808 (May 17, 1993).

158.    On an immediate retirement application dated September 18, 1996, Congressman Studds indicated that he was unmarried, and he elected an unreduced annuity based on 27 years of total federal service.  Standard Form No. 2801 (Sept. 18, 1996).  Congressman Studds had no alternative, because no state had yet recognized his and Dean's right to marry.

159.    While Congressman Studds and Dean married in 2004, DOMA, 1 U.S.C. §7, still prevented Congressman Studds from electing a retirement annuity that provided a spousal annuity for Dean.

160.    Congressman Studds received retirement annuity benefits from his January 2, 1997, retirement until his death.  These benefits were a meaningful part of the household income that he and Dean relied upon.

161.    On March 1, 2007, Dean applied for death benefits, both as Gerry's widower and as executor of Gerry's estate, by submitting an "Application for Death

Benefits – Civil Service Retirement System" on Standard Form 2800 (Revised May 2000).

162.    OPM issued a check, dated March 29, 2007, to Dean T. Hara in the amount of $4,141.38 and with the notation "78 CSF LUMPSUM."  This represented the lump-sum benefit remaining in Congressman Studds's retirement account.

163.    OPM's communication to Dean that accompanied the March 29, 2007, check included the statement: "You are entitled to a lump sum payment because of the death of a former employee."

164.    OPM's communication to Dean that accompanied the March 29, 2007 check also included, under "Remarks," the following:

> WE REGRET TO INFORM YOU THAT YOUR LATE SPOUSE DID NOT ELECT SURVIVOR BENEFITS.  THIS MONEY IS ALL YOU WILL RECEIVE FROM RETIREMENT.

165.    By letter dated May 30, 2007, OPM advised Dean that it was denying his claim for a monthly survivor annuity.  For its reasons, OPM's letter states, in its entirety: "Our records show that your spouse did not notify our office of your marriage and no election was made to provide a survivor annuity for you."  Letter from Brenda Hughes, Legal Administrative Specialist, Retirement Operations Center, OPM, to Dean T. Hara (May 30, 2007).

166.    Dean requested reconsideration of OPM's decision by letter dated June 28, 2007.  Letter from Dean T. Hara to OPM Retirement Operations Center (June 28, 2007).

167.    By letter dated October 24, 2007, OPM denied Dean's request for reconsideration, reiterating its position that no benefits were available to Dean because

Congressman Studds had not elected a survivor annuity for Dean.  Letter from Joseph E.

Miller, Jr., Legal Administrative Specialist, OPM, to Dean T. Hara (Oct. 24, 2007).

168.    Dean filed a Notice of Appeal to the MSPB by letter dated November 27,

2007.  Letter from Dean T. Hara to Regional Director, Northeastern Regional Office,

MSPB, Philadelphia, P.A. (Nov. 27, 2007).

169.    On February 26, 2008, OPM rescinded its final decision of October 24,

2007, indicating that a new reconsideration decision would be issued in the future.  As a

result, Dean's original MSPB appeal was dismissed without prejudice.

170.    By letter dated June 24, 2008, OPM issued a new reconsideration decision

and again reiterated its denial of a survivor annuity to Dean while asserting two grounds

for denial:

> You have not established that Representative Studds elected a survivor
> annuity benefit for you.
>
> A same-sex marriage in any jurisdiction cannot be recognized for benefit
> entitlement purposes under any Federal statute administered by OPM.
> Therefore, even if Representative Studds had elected a survivor benefit for
> you, under 1 U.S.C. §7, we could not approve your application for a
> survivor annuity.

Letter from Joseph E. Miller, Jr., Legal Administrative Specialist, OPM, to Dean T.

Hara (June 24, 2008).

171.    Dean timely re-filed an appeal to the MSPB based upon OPM's new

reconsideration decision.

172.    Following a one-day hearing in October 2008, Chief Administrative Judge

William L. Boulden issued a decision on Dean's appeal on December 17, 2008.  Dean T.

Hara v. Office of Personnel Management (CSF3067396), Docket No. PH-0831-08-0099-

I-2.

173.    Judge Boulden's decision determined that Dean was not legally eligible for a federal spousal survivor annuity for the sole reason that, by virtue of DOMA, 1 U.S.C.§ 7, Dean and Gerry did not have a "marriage" and Dean was not a "spouse" for purposes of the relevant statutes governing federal spousal survivor annuities.

174.    Judge Boulden also determined that Congressman Studds was not subject to a two-year election requirement for naming Dean as a survivor annuitant because "pursuant to DOMA, [Dean] was not 'married' to Congressman Studds and they were not 'spouses.'"

175.    Judge Boulden also found that Congressman Studds intended for Dean to have the benefit of a spousal survivor annuity if that was legally possible.  As a result, even if an election by Congressman Studds were required, Judge Boulden determined that the election would be considered to have been timely made and that OPM would be estopped from relying on any asserted failure of election.

176.    Judge Boulden's Initial Decision of December 17, 2008, became final on January 21, 2009.

177.    Dean filed a timely appeal of the MSPB decision in the United States Court of Appeals for the Federal Circuit.

178.    OPM did not appeal any aspect of the MSPB decision nor did it file a cross appeal in response to the appeal filed by Dean in the Federal Circuit.

179.    The appellate process in the Federal Circuit on Dean's appeal has been stayed pending disposition of this action.

180.    Because the MSPB record demonstrated that Congressman Studds intended to provide Dean with all the federal employment-related benefits available to a

spouse, Dean applied to OPM for federal health insurance benefits available to a surviving spouse by Express Mail letter dated January 20, 2009.  Letter from Dean T. Hara to Retirement Operations Center, OPM (Jan. 20, 2009).

181.    That letter, dated January 20, 2009, was delivered to the OPM Retirement Operations Center on January 21, 2009.

182.    On April 6, 2009, OPM denied Dean's claim for federal health insurance benefits as the surviving spouse of Congressman Studds on the grounds that Congressman Studds did not elect such benefits for Dean.  Letter from Karl M. Bartley, Retirement Benefits Branch, Office of Personnel Management, to Dean Hara, April 6, 2009.

183.    Dean requested reconsideration of this denial on May 4, 2009.  Letter from Dean Hara to Office of Personnel Management, Retirement Operations Center, Boyers, PA, May 4, 2009.

184.    OPM affirmed its initial denial of Dean's claim for federal health insurance benefits as the surviving spouse of Congressman Studds in a final decision dated June 18, 2009.  Letter from Joseph E. Miller, Jr., Legal Administrative Specialist, Disability, Reconsideration and Appeals Group, Office of Personnel Management, to Dean Hara, June 18, 2009.


Plaintiffs Mary Ritchie and Kathleen Bush

185.    Plaintiff Mary Ritchie ("Mary") is a State Police Sergeant with the Commonwealth of Massachusetts.  Mary has been with the State Police for more than 20

years, and she now specializes in supervising major crime scenes and crime scene forensics.

186.    Plaintiff Kathleen Bush ("Kathy") is a homemaker and an active volunteer in the local school system.

187.    Mary and Kathy met through a mutual friend, at a Christmas party in 1989.  They have been a committed couple for 19 years, since 1990.

188.    Mary and Kathy have two school-age children.  Their sons are 8 and 10 years old, and both have hyphenated last names using their parents' surnames.

189.    When their first son was born, in 1999, Mary took a parenting leave to care for him.  Later, Mary and Kathy reached a joint decision that Kathy would become a stay-at-home parent.  Prior to that time, Kathy had been successfully employed in sales and marketing for an established medical journal.

190.    After 14 years together as a committed couple, Mary and Kathy were married at their home in Framingham on May 22, 2004 in strict and complete accordance with Massachusetts law.  They married because "marriage" is what best described their family to each of them.  Mary also expected to protect their family through employment benefits that their marriage would make available.

191.    Mary, Kathy and their two sons live together in a home that Mary and Kathy jointly own in Framingham.  Both their sons attend the local public schools. Kathy serves on the Executive Board of the Parent Teacher Organization.

192.    Kathy and Mary were born and raised in Framingham and Boston, respectively, and their family is very close with each other's large extended families.

193.     As a legally married couple, Mary and Kathy file their state income tax returns with the Commonwealth of Massachusetts as Married Filing Jointly.  They have filed their state income tax returns as Married Filing Jointly since the 2004 tax year.

194.     Despite their legal marital status, and the requirement that they file their state income tax returns as Married with the Massachusetts Department of Revenue, they have not filed their annual federal income tax returns as Married Filing Jointly because of the federal government's non-recognition of their marriage pursuant to DOMA, 1 U.S.C. § 7.

195.     Each year since their marriage in 2004, Mary has filed and paid federal taxes using the "Head of Household" filing status because of DOMA, 1 U.S.C. § 7. Kathy has had no income and thus has not been required to file any federal income tax return.

196.     Each year since their marriage in 2004, Mary and Kathy have paid substantially more in federal income taxes as a result of their inability to file as Married Filing Jointly.

197.     Additionally, for the tax year 2008, Mary sought to contribute money toward a spousal Individual Retirement Account ("IRA") for the benefit of Kathy, just as any working spouse can do for a spouse who does not earn income.  Due to their inability to file federal income tax returns as Married Filing Jointly, Mary cannot take the allowable tax deduction for her contribution to Kathy's IRA account, even though other working spouses can take the same deduction.

198.    For the tax year 2004, Mary and Kathy paid $1,054 more in federal income tax than they would have paid had they been permitted to file as Married Filing Jointly.

199.    For the tax year 2005, Mary and Kathy paid $2,703 more in federal income tax than they would have paid had they been permitted to file as Married Filing Jointly.

200.    For the tax year 2006, Mary and Kathy paid $4,390 more in federal income tax than they would have paid had they been permitted to file as Married Filing Jointly.

201.    For the tax year 2007, Mary and Kathy paid $ 6,371 more in federal income tax than they would have paid had they been permitted to file as Married Filing Jointly.

202.    Additionally, Mary is and has been unable to contribute on a tax-advantaged basis to Kathy's IRA as is ordinarily permitted for spouses under Section 219(c) of the Internal Revenue Code, as amended ("I.R.C.").

203.    Having timely paid all their federal income taxes in full, Mary and Kathy later submitted amended federal income tax returns, on IRS Form 1040X, changing their filing status from Mary filing alone as Head of Household to Mary and Kathy filing together as Married Filing Jointly.

204.    On April 13, 2008, Mary and Kathy submitted an amended federal income tax return to the IRS on IRS Form 1040X for the tax year 2004.  The 2004 amended federal income tax return included a claim for refund in the amount of $1,054.

205.    Mary and Kathy attached to the IRS Form 1040X Amended Return the

Form 8275, Disclosure Statement and the 8275-R, Regulation Disclosure Statement

explaining their changes to the originally filed federal income tax return.  In its entirety,

the Attachment states:

> **Attachment To Form 1040X, Part II, Explanation of Changes**
> **Form 8275, Disclosure Statement**
> **Form 8275-R, Regulation Disclosure Statement**
> **2004 Tax Year**

**REFUND CLAIM BASED ON THE UNCONSTITUTIONALITY OF THE
"DEFENSE OF MARRIAGE ACT"**

The taxpayer, Mary E. Ritchie, ID #[###-##-####], a spouse in a same-sex
couple, was married under the laws of the Commonwealth of Massachusetts as of
December 31, 2004.  For the tax year of this amended return, the taxpayer filed a joint
Massachusetts income tax return with her spouse as a married couple.  However, in
accordance with the federal law known as the Defense of Marriage Act ("DOMA"), the
taxpayer filed an individual, federal income tax return as though she was unmarried.  The
taxpayer believes that being required to file as though she is unmarried amounts to
unequal treatment compared to other married persons in Massachusetts.  The taxpayer
believes that her marriage, which is valid under Massachusetts law, should be respected
for federal tax purposes, just like the Massachusetts marriages of heterosexual couples.
Although this position is contrary to DOMA, the taxpayer believes that DOMA is
unconstitutional and that she should be allowed to file this amended joint return with her
spouse and receive the refund shown herein.

In particular, if the taxpayer were able to file as married filing jointly, such a
filing status would affect the following adjustments:

The federal tax as decreased from $5,331 to $4,277.
The taxpayer previously paid $5,331 in federal income tax in her original return
for this taxable year.
As a result of these adjustments, the amount of overpayment is $1,054.

206.    With each successive amended federal income tax return and refund claim

filed, Mary and Kathy included the same Explanation of Changes and Disclosure

Statement Attachment described in Paragraph 205, except that the tax year, amount of

federal income tax paid and amount of refund claimed were adjusted to reflect the proper tax year.

207.　　Correspondence from the IRS confirms that the 2004 amended federal income tax return and accompanying refund claim were timely received on April 15, 2008.  Letter from P.J. Bazick, Field Director, Accounts Management, IRS, Andover, MA, to Mary E. Ritchie (July 17, 2008).

208.　　In a reply dated July 17, 2008, the IRS disallowed Mary and Kathy's refund claim for 2004.  *Id.*  Under the heading "Why We Cannot Allow Your Claim," the IRS stated that: "[t]he Federal Government does not recognize same sex marriages and differs with Massachusetts on this point."  *Id.*

209.　　On April 13, 2008, Mary and Kathy submitted to the IRS an amended federal income tax return on IRS Form 1040X for the tax year 2005.  The amended federal income tax return included a claim for refund in the amount of $2,703.

210.　　Correspondence from the IRS confirms that the 2005 amended federal income tax return and accompanying refund claim were timely received on April 15, 2008.  Letter from P.J. Bazick, Field Director, Accounts Management, IRS, Andover, MA, to Mary E. Ritchie (July 18, 2008).

211.　　In a reply dated July 18, 2008, the IRS disallowed Mary and Kathy's refund claim for 2005.  Under the heading "Why We Cannot Allow Your Claim," the IRS stated that: "[t]he Federal Government does not recognize same sex marriages."  *Id.*

212.　　On April 13, 2008, Mary and Kathy submitted to the IRS an amended federal income tax return on IRS Form 1040X for the tax year 2006.  The amended federal income tax return included a claim for refund in the amount of $4,390.

213.    Correspondence from the IRS confirms that the 2006 amended federal income tax return and accompanying refund claim were timely received on April 15, 2008.  Letter from P.J. Bazick, Field Director, Accounts Management, IRS, Andover, MA, to Mary E. Ritchie (July 18, 2008).

214.    In a reply dated July 18, 2008, the IRS disallowed Mary and Kathy's refund claim for 2006.  *Id.*  Under the heading "Why We Cannot Allow Your Claim," the IRS stated that: "[c]urrent federal law does not recognize same sex marriage even if legally constituted by a sovereign state."  *Id.*

215.    On February 25, 2009, Mary and Kathy submitted to the IRS an amended federal income tax return on IRS Form 1040X for the tax year 2007.  The amended federal income tax return included a claim for refund in the amount of $6,371.

216.    Correspondence from the IRS confirms that the 2007 amended federal income tax return and accompanying refund claim were timely received on March 2, 2009.  Letter from P.J. Bazick, Field Director, Accounts Management, IRS, Andover, MA, to Mary E. Ritchie (May 8, 2009).

217.    In a reply dated May 8, 2009, the IRS disallowed Mary and Kathy's refund claim for 2007.  *Id.*  Under the heading "Why We Cannot Allow Your Claim," the IRS stated that: "for federal tax purposes, a marriage means only a legal union between a man and a woman as husband and wife."  *Id.*

218.    Despite having already replied with a disallowance to Mary and Kathy's 2007 amended federal income tax return and claim for refund, the IRS sent another nearly identical reply dated May 26, 2009.  Again, under the heading "Why We Cannot Allow Your Claim," the IRS stated that "for federal tax purposes, a marriage means only

43

a legal union between a man and a woman as husband and wife."  The only difference

between this disallowance letter and the May 8, 2009 disallowance letter was that they

were signed by different IRS employees.  Letter from Charles F. Clinton, A/Field

Director, Accts. Management, IRS, Andover, MA to Mary E. Ritchie (May 26, 2009).

219.    Each disallowance that Mary and Kathy received from the IRS, for the

years 2004, 2005, 2006 and 2007, notified them of their right to file suit in the United

States District Court within two years from the date of the disallowance letters.

220.    As a result of these IRS disallowances, and solely because of the existence

and operation of DOMA, 1 U.S.C. § 7, Mary and Kathy have suffered specific and

concrete financial harms to themselves and to their household.  Specifically, the 2004,

2005, 2006, and 2007 disallowances have forced Mary and Kathy to pay $14,518 more in

federal income taxes than a similarly situated different-sex married couple would have

paid for those same tax years.

221.    The additional money that Mary and Kathy had to pay in federal income

taxes because of DOMA, 1 U.S.C. § 7, could have gone into savings or toward

supporting their two young sons.

222.    Moreover, the specific and concrete financial harms to Mary and Kathy's

household continue to grow with each additional year that DOMA, 1 U.S.C. § 7, operates

to bar the IRS from recognizing them as a married couple entitled to the Married Filing

Jointly status.

Plaintiffs Melba Abreu and Beatrice Hernandez

223.    Plaintiff Melba Abreu ("Melba") is the chief financial officer for a non-

profit organization located in Boston, Massachusetts.

44

224.    Plaintiff Beatrice Hernandez ("Beatrice") is in the process of founding her own web design practice. The company is presently in its initial stages and generates no income. Beatrice also is a writer and is currently in the process of writing two books.

225.    Melba and Beatrice met in Miami in May 1987. They were both living and working in Miami at the time. Melba and Beatrice's connection was immediate, and, consequently, they became a committed couple after a short period of time.

226.    Shortly after they began their relationship, Melba and Beatrice moved together to Brooklyn, New York because Beatrice was accepted to a degree program at New York University. In November 1987, the day they moved into their first apartment in Brooklyn, Melba and Beatrice celebrated the beginning of their lives together by sharing a bottle of wine while unpacking a box of new dishes for their new home. In the simplicity of that day they knew that their commitment was their bond, and that together they would bear witness to each other's lives. They view this as the beginning of their marriage.

227.    Melba and Beatrice have been a devoted couple for more than 22 years, since 1987.

228.    On May 20, 2004, after 17 years as a committed couple, Melba and Beatrice were married in strict and complete accordance with Massachusetts law because they finally had the opportunity to affirm under law what they had long ago declared in their hearts.

229.    Melba and Beatrice live in Boston, Massachusetts. After 22 years together, they finally realized their dream of owning a home together. They continue to look forward to a time when they can build a business together as well.

230.    As a legally married couple, Melba and Beatrice file their state income tax returns with the Commonwealth of Massachusetts as Married Filing Jointly.  They have filed their state income tax returns as Married Filing Jointly since the 2004 tax year.

231.    Despite their legal marital status, and the requirement that they file their state income tax returns as Married with the Massachusetts Department of Revenue, they have not filed their annual federal income tax returns as Married Filing Jointly because of the federal government's non-recognition of their marriage pursuant to DOMA, 1 U.S.C. § 7.

232.    Each year since their marriage in 2004, Melba has filed and paid federal income tax returns using the Single filing status because of DOMA, 1 U.S.C. § 7. Beatrice has had no income and thus has not been required to file any federal income tax return.

233.    Each year since their marriage in 2004, Melba and Beatrice have paid substantially more in federal income tax as a result of their inability to file as Married Filing Jointly.

234.    In the tax year 2004, Melba and Beatrice paid $4,687 more in federal income tax than they would have paid had they been permitted to file as Married Filing Jointly.

235.    For the tax year 2005, Melba and Beatrice paid $3,785 more in federal income tax than they would have paid had they been permitted to file as Married Filing Jointly.

236.   For the tax year 2006, Melba and Beatrice paid $5,546 more in federal income tax than they would have paid had they been permitted to file as Married Filing Jointly.

237.   For the tax year 2007, Melba and Beatrice paid $5,697 more in federal income tax than they would have paid had they been permitted to file as Married Filing Jointly.

238.   Having timely paid all their federal income taxes in full, Melba and Beatrice later submitted amended federal tax returns, on IRS Form 1040X, changing their filing status from Melba filing alone as Single to Melba and Beatrice filing together as Married Filing Jointly.

239.   On April 14, 2008, Melba and Beatrice submitted to the IRS an amended federal income tax return on IRS Form 1040X for the tax year 2004.  The 2004 amended federal income tax return included a claim for refund in the amount of $4,687.

240.   With their 2004 amended federal income tax return and refund claim, Melba and Beatrice attached the same Form 8275, Disclosure Statement and 8275-R, Regulation Disclosure Statement described in Paragraph 205, in order to explain their changes to the originally filed federal income tax return.  Melba's and Beatrice's Explanation of Changes, Form 8275 Disclosure Statement and Form 8275-R, Regulation Disclosure Statement differs from that described in Paragraph 205 only insofar as it identifies different taxpayers, a different amount of federal income tax paid, and a different amount of refund claimed.

241.   With each successive amended federal income tax return and refund claim filed, Melba and Beatrice included the same Explanation of Changes and Disclosure

Statement Attachment described in Paragraph 205 and Paragraph 240, except that the tax year, amount of federal income tax paid, and amount of refund claimed were adjusted to reflect the proper tax year.

242.    Correspondence from the IRS confirms that the 2004 amended federal income tax return and accompanying refund claim were timely received on April 15, 2008.

243.    In a reply dated June 20, 2008, the IRS disallowed Melba and Beatrice's refund claim for 2004.  Under the heading "Why We Cannot Allow Your Claim," the IRS stated that: "Same sex marriages are not recognized at the Federal level."  Letter from P.J. Bazick, Field Director, Accounts Management, IRS, Andover, MA, to Melba Abreu (June 20, 2008).

244.    On April 14, 2008, Melba and Beatrice submitted to the IRS an amended federal income tax return on IRS Form 1040X for the tax year 2005.  The amended federal income tax return included a claim for refund in the amount of $3,785.

245.    Correspondence from the IRS confirms that the 2005 amended federal income tax return and accompanying refund claim were timely received on April 15, 2008.  Letter from P.J. Bazick, Field Director, Accounts Management, IRS, Andover, MA, to Melba Abreu (June 30, 2008).

246.    In a reply dated June 30, 2008, the IRS disallowed Melba and Beatrice's refund claim for 2005.  *Id.*  Under the heading "Why We Cannot Allow Your Claim," the IRS stated that: "Same sex marriages are not recognized at the Federal level."  *Id.*

247.     On April 14, 2008, Melba and Beatrice submitted to the IRS an amended federal income tax return on IRS Form 1040X for the tax year 2006.  The amended federal income tax return included a claim for refund in the amount of $ 5,546.

248.     Correspondence from the IRS confirms that the 2006 amended federal income tax return and accompanying refund claim were timely received on April 15, 2008.  Letter from P.J. Bazick, Field Director, Accounts Management, IRS, Andover, MA, to Melba C. Abreu (June 30, 2008).

249.     In a reply dated June 30, 2008, the IRS disallowed Melba and Beatrice's refund claim for 2006.  *Id.*  Under the heading "Why We Cannot Allow Your Claim," the IRS stated that: "same sex marriages are not recognized at the Federal level."  *Id.*

250.     On February 27, 2009, Melba and Beatrice submitted to the IRS an amended federal income tax return for the tax year 2007.  The amended federal income tax return included a claim for refund in the amount of $5,697.

251.     Correspondence from the IRS confirms that the 2007 amended federal income tax return and accompanying refund claim were timely received by the IRS on March 12, 2009.  Letter from Ivy S. McChesney, Field Director, Accounts Management, IRS, Philadelphia, PA, to Melba Abreu (April 20, 2009).

252.     Although Melba and Beatrice filed their 2007 amended federal income tax return and claim for refund with the IRS office in Andover, MA, as they had done for all prior years since their marriage, the April 20, 2009 letter from the IRS to Melba responding to the 2007 claim was generated by the Philadelphia, PA IRS office.

253.     The April 20, 2009 letter from the IRS failed to answer Melba and Beatrice's 2007 amended federal income tax return and claim for refund.  Instead, the

letter stated that "[w]e cannot finish processing your claims until we receive supporting information for each item you asked us to change.  In general your filing status depends on whether you are considered unmarried or married.  For federal purposes, a marriage means only a legal union between a man and a woman as husband and wife."  The IRS letter asked Melba and Beatrice to send additional information regarding their claim within 30 days from the date of their letter.  Letter from Ivy S. McChesney, Field Director, Accounts Management, IRS, Philadelphia, PA, to Melba Abreu (April 20, 2009).

254.    Melba and Beatrice timely complied with the IRS request by resubmitting their 2007 amended federal income tax return and claim for refund together with a cover letter restating their request to be treated as married for purposes of federal income tax law.  Melba Abreu and Beatrice Hernandez letter to the IRS Philadelphia, PA (May 4, 2009).

255.    To date, Melba and Beatrice have received no decision from the IRS to their 2007 amended federal income tax return and claim for refund.

256.    Each disallowance letter that Melba and Beatrice did receive from the IRS, for years 2004, 2005 and 2006, notified them of their right to file suit on their claims to recover federal income tax in the United States District Court within two years from the date of the disallowance letters.

257.    As a result of these IRS disallowances, and solely because of the existence and operation of DOMA, 1 U.S.C. § 7, Melba and Beatrice have suffered specific and concrete financial harms to themselves and to their household.  Specifically, the 2004, 2005 and 2006 disallowances have forced Melba and Beatrice to pay $14,018 more in

federal income taxes than a similarly situated different-sex married couple would have paid for those same tax years.  When the pending 2007 claim is disallowed, Melba and Beatrice's financial harm will grow to $19,715.

258.    The additional money Melba and Beatrice had to pay in federal income taxes because of DOMA, 1 U.S.C. § 7, could have gone into savings for Melba and Beatrice's future or provided for the start-up expenses of Beatrice's practice.

259.    Moreover, the specific and concrete financial harms to Melba and Beatrice's household continue to grow with each additional year that DOMA, 1 U.S.C. § 7, bars the IRS from recognizing them as a married couple entitled to the Married Filing Jointly status.


 Plaintiffs Marlin Nabors and Jonathan Knight

260.    Plaintiffs Marlin Nabors ("Marlin") and Jonathan Knight ("Jonathan") are a committed couple who relocated together from Indiana to Massachusetts in 2006.

261.    Marlin and Jonathan met more than 4 years ago in Indiana.  They became a committed couple within 6 months of dating.

262.    Six months into their relationship, Marlin was offered a job at a Boston-area college as a student services administrator.  Marlin and Jonathan recognized this offer as an opportunity to advance Marlin's career.  Together, Marlin and Jonathan decided to relocate to Massachusetts so that Marlin could accept this job offer.

263.    Upon moving with Marlin to the Boston area, Jonathan registered with a temporary agency and was eventually placed at a local medical school.  He has been

working there in a permanent position dealing with financial services since February 9, 2009.

264.    After having been in a committed relationship for more than a year, Marlin and Jonathan realized that their relationship was "for life" and that they wanted to be together no matter what.  They agreed that it was time to marry.

265.    On October 26, 2006, Marlin and Jonathan were married at Newton City Hall with one friend present.  Marlin and Jonathan were married in strict and complete accordance with Massachusetts law.  Later that evening, they celebrated their marriage at their home with more than 25 friends and family members.

266.    In 2007, Marlin and Jonathan purchased a home together in Hyde Park, Massachusetts.  This is the first time either of them has been a homeowner.

267.    Since 2007, Marlin and Jonathan have been devoting energy and resources to fixing up and maintaining their new property.  Jonathan's father has visited from Indiana several times in order to assist them with home improvement projects.

268.    As a legally married couple, Marlin and Jonathan file their state income tax returns with the Commonwealth of Massachusetts as Married Filing Jointly.  They have filed their state income tax returns as Married Filing Jointly since the 2006 tax year.

269.    Despite their legal marital status, and the requirement that they file their state income tax returns as Married with the Massachusetts Department of Revenue, Marlin and Jonathan have not filed their annual federal income tax returns as Married Filing Jointly because of the federal government's non-recognition of their marriage pursuant to DOMA, 1 U.S.C. § 7.

270.     Each year since their marriage in 2006, Marlin and Jonathan have filed and paid their federal income taxes separately, each using the Single filing status because of DOMA, 1 U.S.C. § 7.

271.     Each year since their marriage in 2006, Marlin and Jonathan have paid substantially more in federal income taxes as a result of their inability to file as Married Filing Jointly.

272.     For the tax year 2006, Marlin and Jonathan paid $1,286 more in federal income tax than they would have paid had they been permitted to file as Married Filing Jointly.

273.     For the tax year 2007, Jonathan and Marlin paid $1,234 more in federal income tax than they would have paid had they been permitted to file as Married Filing Jointly.

274.     Having timely paid all their 2006 and 2007 federal income taxes in full, Marlin and Jonathan later submitted amended federal income tax returns, on IRS Form 1040X, changing their filing status from two individual taxpayers each filing as a Single filer to a married couple filing together as Married Filing Jointly.

275.     On February 25, 2009, Marlin and Jonathan submitted an amended federal income tax return to the IRS on Form 1040X for the tax year 2006.  The amended federal income tax return included a claim for refund in the amount of $1,286.

276.     On February 25, 2009, Marlin and Jonathan submitted an amended federal income tax return to the IRS on Form 1040X for the tax year 2007.  The amended federal income tax return included a claim for refund in the amount of $1,234.

277.    With their 2006 and 2007 amended federal income tax returns and refund claims, Marlin and Jonathan attached the same Form 8275, Disclosure Statement and 8275-R, Regulation Disclosure Statement described in Paragraph 205, in order to explain their changes to the originally filed federal income tax returns.  Marlin's and Jonathan's Explanation of Changes, Form 8275 Disclosure Statements and Form 8275-R, Regulation Disclosure Statements differ from those described in Paragraph 205 only insofar as they identify different taxpayers, different amounts of federal income tax paid, and different amounts of refund claimed.

278.    In a notice received on May 15, 2009, but dated May 18, 2009, the IRS noted that it was changing Marlin and Jonathan's 2007 filing status to Married Filing Jointly, and further noted an "Amount to be refunded to you" of $1,234.

279.    Shortly thereafter, Marlin and Jonathan received a joint refund check for $1,234 from the IRS.

280.    Because Marlin and Jonathan believe that this 2007 refund check was issued in error and in violation of DOMA, § 3, they have set the refund check aside and have not cashed it.

281.    Counsel for Marlin and Jonathan contacted the IRS Customer Service Office by telephone on May 18, 2009 to address the refund check.  Counsel described the situation and also inquired about the then pending 2006 amended federal income tax return and refund claim.  Counsel spoke with two IRS representatives who confirmed that the 2007 and 2006 amended federal income tax returns and refund claims had been approved, but the representatives were unable to do anything further.  They could not re-open the returns or mark them to be re-examined for error.

282.     On May 20, 2009, counsel sent a letter to the IRS Andover Service Center on behalf of Marlin and Jonathan.  Counsel notified the IRS of the 2007 refund check already received and the expected 2006 refund check and stated that "[i]t is our understanding that the Taxpayers' claim for a filing status change and refund should have been denied pursuant to DOMA, and we can arrange for the Taxpayers to return the refund check they have received."

283.     The IRS Andover acknowledged receipt of the May 20, 2009 letter via return receipt dated June 12, 2009.

284.     In a second notice of refund dated May 25, 2009, the IRS issued a second joint refund check for $1,286 relating to Marlin and Jonathan's 2006 amended federal income tax return and refund claim.

285.     Because Marlin and Jonathan believe that this 2006 refund check was issued in error and in violation of DOMA, § 3, they have set the check aside and have not cashed it.

286.     The IRS has not yet resolved this issue.  However, counsel for the defendants in this action has stated that the IRS acknowledges that both refund checks were issued in error and that the IRS will be contacting the taxpayers to request that the refund checks be returned.

287.     Solely because of the existence and operation of DOMA, 1 U.S.C. § 7, Marlin and Jonathan have suffered specific and concrete financial harms to themselves and to their household.  Specifically, in the 2006 and 2007 tax years Marlin and Jonathan were forced to pay $2,520 more in federal income taxes than a similarly situated different-sex married couple would have paid for those same tax years.

288.    The additional money that Marlin and Jonathan had to pay in federal income taxes because of DOMA, 1 U.S.C. § 7, could have gone into household expenses or savings for their future.

289.    Moreover, the specific and concrete financial harms to Marlin and Jonathan's household continue to grow with each additional year that DOMA, 1 U.S.C. § 7, bars the IRS from recognizing them as a married couple entitled to the Married Filing Jointly status.

Plaintiffs Mary Bowe-Shulman and Dorene Bowe-Shulman

290.    Plaintiff Mary Bowe-Shulman ("Mary") is an attorney employed by the Commonwealth of Massachusetts.

291.    Plaintiff Dorene Bowe-Shulman ("Dorene") is a self-employed licensed acupuncturist as well as a teacher of acupuncture courses.  Prior to becoming an acupuncturist, Dorene worked as a database manager for several non-profit organizations in the Boston area.  Dorene also spent time as the primary caretaker and stay-at-home parent for the two daughters she and Mary have together, who are now 8 and 10 years old.

292.    Mary and Dorene met in Somerville in 1995 while they were both participating in the same book group.  They have been a committed couple since that time and have now been together for 14 years.

293.    On August 9, 1997, Mary and Dorene had a commitment ceremony that was attended by family and friends.  It was a very special event in their family and signified their lifelong bond.

294.     After 9 years together as a committed couple, and with their two daughters at their side, Mary and Dorene were legally married at their home in Somerville, Massachusetts on May 23, 2004.  Mary and Dorene were married in strict and complete accordance with Massachusetts law.

295.     Mary, Dorene and their two daughters live together in a home that Mary and Dorene jointly own in Acton, Massachusetts.  Mary's mother also lives with them.

296.     Mary and Dorene are active in the Acton community, where both of their daughters attend the local public schools and play soccer in the town's youth league.

297.     Immediately after their marriage, Mary added Dorene to her family health insurance plan provided by Mary's employer, the Commonwealth of Massachusetts. Previously, they were unable to add Dorene to the plan because she was not recognized as a legal spouse.  Their two daughters had already been on Mary's family health insurance plan.

298.     For Dorene to have access to quality affordable health insurance is particularly important to their family because Dorene is a two-time cancer survivor, and her own mother died very young from cancer.

299.     Several months after adding Dorene to her family health insurance plan, Mary received a paycheck that was approximately $1,000 less than her regular paycheck. After meeting with her employer's Human Resources representative, Mary learned that she was obliged to pay federal income taxes on the value of Dorene's health insurance coverage because, by virtue of DOMA, 1 U.S.C. § 7, she was unable to claim an exclusion from taxable income for the value of employer-provided health insurance coverage provided to her spouse.  In the ordinary course, the value of employer-provided

health coverage to an employee's spouse is treated as a pre-tax benefit and is excluded from the participating employee's federally taxable income.  26 U.S.C. § 106; 26 CFR § 1.106-1.

300.    The first decreased paycheck Mary received represented the cumulative effect of several months of this federal taxation.  Subsequently, additional imputed income was added to each of Mary's bi-weekly paychecks, forcing her to pay higher federal income taxes as a result of the additional amounts.

301.    As a legally married couple, Mary and Dorene file their state income tax returns with the Commonwealth of Massachusetts as Married Filing Jointly.  They have filed their state income tax returns as Married Filing Jointly since the 2004 tax year.

302.    Despite their legal marital status, and the requirement that they file their state income tax returns as Married with the Massachusetts Department of Revenue, Mary and Dorene have not filed their annual federal income tax returns as Married Filing Jointly because of the federal government's non-recognition of their marriage pursuant to DOMA, 1 U.S.C. § 7.

303.    Each year since their marriage in 2004, Mary has filed and paid federal taxes using the "Head of Household" filing status.  Dorene has filed her federal income tax returns using the "Single" filing status.

304.    Each year since their marriage, Mary has been forced to pay additional federal income taxes on the value of the health insurance coverage she carries for Dorene. The value of the health insurance coverage is added to Mary's income as "imputed income," forcing her to pay federal income tax on a typically nontaxable employee benefit, employer-provided spousal health insurance.

305.    For the tax year 2006, Mary and Dorene were forced to pay $3,332 more in federal income tax than they would have paid had they been permitted to file as Married Filing Jointly.  Had they been permitted to file as Married Filing Jointly, Mary would not have had to pay federal income tax on imputed income attributable solely to the value of Dorene's spousal health insurance.

306.    Having timely paid all their 2006 federal income taxes in full, Mary and Dorene later submitted an amended federal income tax return for 2006 on IRS Form 1040X, changing their filing status from Mary filing as Head of Household and Dorene filing as Single, to Mary and Dorene filing together as Married Filing Jointly.

307.    In their 2006 amended federal income tax return, Mary and Dorene excluded the imputed income attributable to the value of Dorene's spousal health insurance, since employer-sponsored health care benefits provided to an employee's spouse are not taxable under the Internal Revenue Code.

308.    With their 2006 amended federal income tax return and refund claim, Mary and Dorene attached the same Form 8275, Disclosure Statement and 8275-R, Regulation Disclosure Statement described in Paragraph 205, in order to explain their changes to the originally filed federal income tax returns.  Mary's and Dorene's Explanation of Changes, Form 8275 Disclosure Statement and Form 8275-R, Regulation Disclosure Statement differ from those described in Paragraph 205 only insofar as they identify different taxpayers, a different amount of federal income tax paid and a different amount of refund claimed.

309.    Mary and Dorene submitted their 2006 amended federal income tax return and refund claim to the IRS Andover Service Center on January 26, 2009.

310.    In a letter from the IRS Andover office dated June 10, 2009, the IRS acknowledged receiving Mary and Dorene's 1040X amended income tax return and refund claim.  However, the IRS informed Mary and Dorene that "we are unable to determine if your problem was resolved satisfactorily."  The June 10, 2009 letter directed Mary and Dorene to resubmit their information if the "inquiry has not been resolved."  Letter from IRS Andover, MA to Mary Bowe (June 10, 2009).

311.    On June 22, 2009, Mary and Dorene replied to the IRS Andover's June 10, 2009 letter, informing the IRS that it had not yet resolved or otherwise responded to their 2006 amended federal income tax return or refund claim.  Attached to their June 22, 2009 reply, Mary and Dorene resubmitted copies of all the documents originally submitted on January 26, 2009, as well as a copy of the postal receipt showing the original mailing date.  Letter from Mary and Dorene Bowe-Shulman to the IRS, Andover, MA (June 22, 2009).

312.    In the June 22, 2009 letter replying to the IRS inquiry, Mary and Dorene stated that "if we are not notified of the IRS decision in writing within 6 months from the original filing date of January 26, 2009, we understand that we are free to file a refund suit in U.S. District Court as set forth in Code Section 6352(a)(1)."  Letter from Mary and Dorene Bowe-Shulman to the IRS, Andover, MA (June 22, 2009).

313.    Solely because of the existence and operation of DOMA, 1 U.S.C. § 7, Mary and Dorene have suffered specific and concrete financial harms to themselves and to their household.  Specifically, in the 2006 tax year Mary and Dorene were forced to pay $3,332 more in federal income taxes than a similarly situated heterosexual married couple would have paid for that same tax year.  Additionally, for every year since their

marriage they have been forced to pay, through taxes assessed against Mary, federal income tax on the value of Dorene's spousal health insurance even though employer-sponsored health care benefits provided for an employee's legal spouse are not taxable items under the Internal Revenue Code.

314.     The additional money that Mary and Dorene had to pay in federal income taxes because of DOMA, 1 U.S.C. § 7, could have gone into household expenses or educational savings for their two daughters.

315.     Moreover, the specific and concrete financial harms to Mary and Dorene's household continue to grow with each additional year that DOMA, 1 U.S.C. § 7, bars the IRS from recognizing them as a married couple entitled to the Married Filing Jointly status, and with each additional year that Mary is forced to pay federal income tax on imputed income attributable to Dorene's health insurance coverage.


Plaintiffs Bette Jo Green and Jo Ann Whitehead

316.     Plaintiff Bette Jo Green ("Bette Jo") recently retired from a 35-year career as a Labor and Delivery Nurse at a large, Boston-area hospital.  She is 67 years old.

317.     Plaintiff Jo Ann Whitehead ("Jo Ann") is a Community Garden Educator with a non-profit group in the Boston area.  Jo Ann has worked in urban gardening for more than 10 years and previously worked in public school settings.  Jo Ann is 67 years old.

318.     Jo Ann and Bette Jo met in 1960 and were friends at Manchester College in Indiana.  Jo Ann and Bette Jo graduated from Manchester College in 1964 and were roommates during their senior year.

319.     After remaining in contact for more than 15 years, a time during which Bette Jo lived in Massachusetts and Jo Ann remained in Indiana, the two women visited each other on several occasions and then began a romantic relationship in 1981.

320.     For 28 years, Bette Jo and Jo Ann have been in a committed relationship and have lived together in Jamaica Plain, Massachusetts, where they are deeply involved in the community.

321.     Jo Ann and Bette Jo both volunteer in their community and are active in their Neighborhood Watch.  Bette Jo takes their elderly neighbors on shopping trips, and both Bette Jo and Jo Ann help at programs for local children and youth, including weekly summer barbecues.

322.     Jo Ann and Bette Jo are both cancer survivors.  Jo Ann survived a difficult fight with bone cancer, but she had to reduce her working hours because of ongoing fatigue.  Bette Jo suffered from both uterine and cervical cancer.  Both women have been cancer free for many years but remain conscious of the risk of recurrence.

323.     Jo Ann and Bette Jo have many supportive family members, primarily in the Midwest, where they make annual visits to spend time with their families.

324.     After 23 years as a committed couple, Bette Jo and Jo Ann married in the garden at their home in Jamaica Plain, Massachusetts on June 7, 2004, in strict and complete accordance with Massachusetts law.  Friends and neighbors attended their wedding.

325.     In February 2008, when she was 66 years old, Jo Ann applied for and began receiving Social Security retirement benefits based on her own Social Security

earnings record.  Jo Ann is currently 67 years old and continues to receive Social Security retirement benefits based on her own earnings record.

326.    In February 2008, at the age of 65 years and 10 months and in anticipation of her retirement from nursing, Bette Jo applied for and began receiving Social Security retirement benefits on her own earnings record.

327.    Social Security offers the option of receiving benefits based on the earnings record of a spouse.  This option is described by the Social Security Administration ("SSA") on its website, in relevant part, at

http://www.ssa.gov/pubs/10035.html:

### Spouse's benefits

A spouse who has not worked or who has low earnings can be entitled to as much as one-half of the retired worker's full benefit. If you are eligible for both your own retirement benefits and for benefits as a spouse, we always pay your own benefits first. If your benefits as a spouse are higher than your retirement benefits, you will get a combination of benefits equaling the higher spouse benefit.

If you have reached your full retirement age, and are eligible for a spouse's or ex-spouse's benefit and your own retirement benefit, you may choose to receive only spouse's benefits and continue accruing delayed retirement credits on your own Social Security record. You may then file for benefits at a later date and receive a higher monthly benefit based on the effect of delayed retirement credits.

328.    On March 26, 2008, Jo Ann appeared in person at the Boston regional office of the SSA and applied for the Social Security spousal benefit based on Bette Jo's earnings record, because Jo Ann recognized that she would receive a higher monthly benefit amount if she drew on the spousal benefit rather than solely on her own earnings record.

329.    If the SSA had permitted Jo Ann to receive spousal benefits based on Bette Jo's earnings record, Jo Ann could have delayed her retirement age for purposes of

Social Security.  A later Social Security retirement age could increase Jo Ann's own

retirement benefits.

330.     In a letter dated April 4, 2008, the SSA denied Jo Ann's claim for spousal

benefits.  Letter from Judy Bernstein, Field Officer Manager, SSA, Boston, MA, to Jo

Ann Whitehead (Apr. 4, 2008).  The letter stated that:  "Since the Defense of Marriage

Act prohibits SSA from finding that your [sic] and the insured were married for benefit

purposes, you are not eligible for Spouse's Benefits."  *Id.*

331.     Jo Ann filed a timely Request for Reconsideration on May 19, 2008.

Form SSA-561-U2 (9-2007) ef (9-2007) (May 19, 2008).  In her Request, she wrote:  "I

am appealing because I should receive the spousal retirement benefit.  I have been

married under Massachusetts law since June 7, 2004.  Since DOMA [1 U.S.C. § 7] blocks

recognition of my marital status/marriage and it treats me differently from other married

people in Massachusetts, I believe DOMA [1 U.S.C. § 7] is unconstitutional."  *Id.*

332.     The SSA did not respond to Jo Ann's Request for Reconsideration until

January 17, 2009, Letter from Phyllis M. Smith, Assistant Regional Commissioner, Great

Lakes Processing Center Operations, SSA, Chicago, IL, to Jo Ann Whitehead (Jan. 17,

2009), and then did so only after Jo Ann sought the assistance of one of her Senators.

Letter from Edward M. Kennedy, United States Senator, Boston, MA, to Jo Ann

Whitehead (Nov. 10, 2008).  Eight months elapsed between when Jo Ann filed her

Request for Reconsideration and when the SSA finally responded with a denial.

333.     In the SSA's written denial of Jo Ann's Request for Reconsideration dated

January 17, 2009, it stated that it looks to the laws of the applicant's state of residence in

determining marital status.  Letter from Phyllis M. Smith to Jo Ann Whitehead (Jan. 17,

2009).  It further noted that "[o]n May 17, 2004, Massachusetts became the first state to legalize same-sex marriages."  *Id.*

334.    However, the SSA's denial letter went on to cite DOMA, 1 U.S.C. § 7, for the proposition that marriage for federal purposes means only a legal union between one man and one woman as husband and wife and stated that therefore: "for all benefit purposes, SSA does not recognize such individual as the spouse of the [number holder.]" *Id.*

335.    On February 2, 2009, Jo Ann went to her local SSA office in Roxbury, Massachusetts and requested, in writing, the Expedited Appeals Process ("EAP").  Letter from Jo Ann Whitehead to SSA, Roxbury, MA (Feb. 2, 2009).

336.    On March 18, 2009, Jo Ann received a letter from the SSA informing her that it had reviewed her claim for benefits a second time and concluded that "[t]he denial of benefits is based on our previous decision."  Letter from Phyllis M. Smith to Jo Ann Whitehead (Mar. 18, 2009).  The letter also cited DOMA, 1 U.S.C. § 7, for the proposition that marriage for federal purposes means only a legal union between one man and one woman as husband and wife and stated that therefore: "for all benefit purposes, SSA does not recognize such individual as the spouse of the [number holder.]" *Id.*  Jo Ann responded to this second denial by directing the SSA to her EAP request dated February 2, 2009.  Letter from Jo Ann Whitehead to SSA, Chicago, IL (May 5, 2009).

337.    On Saturday May 16, 2009, Jo Ann received three copies of the unsigned EAP Agreement, which was titled "Memorandum of Agreement Between Jo Ann Whitehead and the Social Security Administration."  The EAP Agreement states that,

pursuant to its terms, "the reconsideration determination SSA rendered is final for purposes of section 205(g) of the Social Security Act (42 U.S.C. 405)."

338.    On May 18, 2009, pursuant to the SSA's instructions, Jo Ann signed and returned to the SSA Boston office all three copies of the EAP Agreement.

339.    On June 8, 2009, Jo Ann received a fully-executed EAP Agreement from the SSA's Baltimore, Maryland headquarters.  Memorandum of Agreement between Jo Ann Whitehead and the Social Security Administration, signed by Jo Ellen Felice, Associate Commissioner, Office of Income Security Programs, Social Security Administration (May 27, 2009).  According to the EAP Agreement, the SSA's reconsideration (and denial) of Jo Ann's claim for benefits constitutes a final administrative determination.  *Id.*

340.    Jo Ann and Bette Jo have suffered specific and concrete financial harm as a result of the denial of spousal benefits.  In addition to the harm from the denial of the spousal benefit, Jo Ann and Bette Jo have an ongoing concern, reasonable in light of their health travails, about Jo Ann's lack of access to the Social Security survivor benefit in the event that Bette Jo predeceases her.

341.    As Bette Jo and Jo Ann plan and budget yearly expenses, there is the concern that if Bette Jo died before Jo Ann, Jo Ann would have no safety net and would not be able to meet the costs of living, including maintaining her home, as well as paying for food and non-insured medical care.  Without the survivor benefit, Jo Ann would likely live in enforced isolation from their family and friends in the Midwest, as the cost of traveling would be prohibitive.

Plaintiff Randell Lewis-Kendell

342.    Plaintiff Randell Lewis-Kendell ("Randy") is the surviving spouse of a 30-year committed relationship with Robert Lewis-Kendell ("Robert").

343.    Robert died in November 2007, at age 72, after a long battle with recurrent colon cancer.

344.    Randy and Robert began their relationship in 1977 while both were living in Connecticut.  Their relationship was rooted in deep love and close friendship.

345.    Their families and community welcomed Randy and Robert's relationship from early on.  Robert's now adult children have always treated Randy as their stepfather, and now their children consider Randy to be their "grandpa."

346.    Robert grew up in a Boston suburb and was eager to return to Massachusetts when the opportunity arose.  In 1985, Randy and Robert moved together to Massachusetts, and Robert began working in fundraising and development.  Randy worked in retail and became a manager at several stores.

347.    In 1993, Randy and Robert realized their mutual dream of relocating to a small town on Cape Cod when they purchased a gift shop in Harwich Port, Massachusetts.

348.    Randy and Robert quickly became an integral part of the local business community and also became active in their local church.

349.    Initially, Randy and Robert rented a house in West Dennis, Massachusetts, while they were building up their gift shop business.  They reinvested all the money they earned in the business and so, initially, they could not afford to purchase their own home in Harwich Port.

67

350.     In 2006, however, Robert and Randy purchased a small condominium together in Harwich Port.  Randy continues to live in that condominium.

351.     In 2002, Robert was diagnosed with colon cancer.  Initially, he was treated with surgery and monitoring but then, in 2004, there was a recurrence, and Robert's prognosis became far more serious.  In 2004, Robert began chemotherapy treatments.

352.     Randy took Robert to every medical appointment, including appointments in Boston.  Randy sat with Robert through every treatment and administered needed medications at home.  When necessary, Randy would close the gift shop to care for Robert.  As Robert's condition worsened, Randy stayed with him at all times and took care of him.

353.     Randy and Robert married on May 21, 2004, in Harwich Port, Massachusetts, in strict and complete accordance with Massachusetts law.  They married to solidify their lifelong commitment.  At the time of their marriage, they were both well aware of the serious nature of Robert's illness.

354.     After his long battle with colon cancer, Robert died on November 14, 2007, with Randy at his side.

355.     At the time of his death, Robert was receiving Social Security retirement benefits in the amount of $1,161 per month based on his lifelong earnings record.  This benefit was a critical source of support for the couple.

356.     Since Robert passed away, Randy has lived in difficult economic circumstances.  The challenging economy and reduced tourism have negatively affected sales at the gift shop.  He has fallen behind on some bills.

357.    Under 42 U.S.C. § 402(i) and 20 C.F.R. §§ 404.390-404.391 and § 404.347, a surviving spouse is entitled to a lump-sum death payment of $255 if the surviving spouse was "living in the same household with the deceased at the time of death," if the surviving spouse applies for the benefit "prior to the expiration of two years after the date of death …," and if the deceased spouse was "fully or currently insured" at the time of death.

358.    When Randy made Robert's funeral arrangements, the funeral director informed Randy about the $255 lump-sum death benefit and mentioned that it could help with funeral expenses.  He made an application on Randy's behalf, as the funeral home does for other clients.

359.    On December 21, 2007, Randy again applied for the lump-sum death benefit by appearing in person at the SSA office in Hyannis, Massachusetts and submitting a written application.  Form SSA-8-F4 (5-2003) EF (02-2006).

360.    The SSA denied Randy's claim by letter dated April 16, 2008.  Letter from G.A. Sorrow, District Manager, SSA, Worcester, MA, to Randell Lewis-Kendell (Apr. 16, 2008).

361.    This letter stated that: "Since the Defense of Marriage Act prohibits SSA from finding that you and the insured were married for benefit purposes, you are not eligible for the lump sum death payment."  *Id.,* at ¶ 2.

362.    Randy timely filed a Request for Reconsideration on May 30, 2008.  Form SSA-561-U2 (9-2007) ef (9-2007) (May 30, 2008).

363.    Randy's Request for Reconsideration stated, "I am appealing because I should receive the lump-sum death benefit.  I was married under Massachusetts law since

May 21, 2004.  My spouse, Robert Lewis-Kendell, died on November 14, 2007.  Since

DOMA [1 U.S.C. § 7] blocks recognition of my marital status/marriage and it treats me

differently from other married people in Massachusetts, I believe DOMA [1 U.S.C. § 7]

is unconstitutional." *Id.*

364.    Randy did not receive any response to his Request for Reconsideration for

several months.  On October 23, 2008, nearly five months after Randy had made his

Request for Reconsideration, he even visited the Hyannis office of the SSA to try to get a

response.  They told him that his request for the lump-sum benefit was in processing and

out of the control of the local office.

365.    Finally, in a letter dated November 19, 2008, the SSA denied Randy's

Request for Reconsideration.  Letter from Anne Jacobosky, Assistant Regional

Commissioner, Processing Center Operations, SSA, Northeast Program Service Center,

Jamaica, NY, to Randell Lewis-Kendell (Nov. 19, 2008).

366.    In its letter, the SSA wrote, "You are not entitled to benefits because We

[sic] cannot consider you to have been married to Robert A. Lewis-Kendell[.]" *Id.*, at 4.

367.    In an explanation of its decision, the SSA cited DOMA, 1 U.S.C. § 7, for

the statement that, under federal law, "a marriage is the legal union of a man and a

woman as husband and wife, and a spouse is a husband or wife of the opposite sex." *Id.*,

at 5.

368.    On December 31, 2008, Randy went to his local SSA office in Hyannis,

Massachusetts and requested, in writing, the EAP.  Letter from Randell Lewis-Kendell to

SSA, Hyannis, MA (Dec. 31, 2008).

369.    On May 14, 2009, Randy received from the SSA office in Hyannis three copies of an unsigned EAP Agreement which was titled "Memorandum of Agreement Between Randell Lewis-Kendell and the Social Security Administration."  The EAP Agreement states that, pursuant to its terms, "the reconsideration determination SSA rendered is final for purposes of section 205(g) of the Social Security Act (42 U.S.C. 405)."

370.    On May 16, 2009, pursuant to the SSA's instructions, Randy signed and returned to the SSA Hyannis office all three copies of the EAP Agreement.  With the signed EAP Agreements, Randy included a hand-written cover letter asking the SSA Hyannis office to inform him when they had sent the signed EAP Agreements to the SSA in Baltimore.  Letter from Randy Lewis-Kendell to Hyannis SSA office (May 16, 2009).

371.    On or about June 12 or 13, 2009, Randy received a fully-executed EAP Agreement from the SSA's Baltimore, Maryland headquarters.  Memorandum of Agreement between Randell Lewis-Kendell and the Social Security Administration, signed by Jo Ellen Felice, Associate Commissioner, Office of Income Security Programs, Social Security Administration (June 4, 2009).  According to the EAP Agreement, the SSA's reconsideration (and denial) of Randy's claim for benefits constitutes a final administrative determination.  *Id.*

372.    Because Randy has been denied Social Security benefits that similarly situated individuals who have survived a spouse of a different sex routinely receive, Randy has suffered specific and concrete financial harm.  Randy applied for this $255 death benefit and was denied.  Additionally, Randy intends to apply for the Social Security widower/survivor benefit when he turns 60 and becomes age-eligible.  Randy

fears for his financial security in his later years if he does not receive the widower/survivor benefit.

Plaintiff Herbert Burtis

373.   Plaintiff Herbert Burtis ("Herb") met John Ferris ("John") in the late 1940s while both attended Michigan State University.  The two men were brought together by their mutual interest in classical music and had long careers as musicians.

374.   The couple moved to New York City after John was accepted into a graduate program there.  Herb transferred to Columbia University, where he worked part-time as the associate choirmaster while pursuing his own graduate studies.  John worked as the choirmaster and organist at a church in New Jersey.

375.   In 1958, John left New York to conduct the Harvard University choir, a position he held for 32 years, and to teach conducting at several schools.  When John took the job at Harvard, Herb assumed John's former position at the church in New Jersey.

376.   The two men continued their loving relationship despite the distance between them.  In 1961, Herb and John purchased a home in Sandisfield, Massachusetts, where they could be together when they did not have work responsibilities.

377.   In 1979, Herb left his church position in New Jersey and moved to Massachusetts so that he and John could begin living together full time.  During this time, Herb gave private music lessons to students locally and at studios he maintained in New York City and in New Jersey.

378.   In 1990, John retired from Harvard University and began to collect Social Security benefits.

379.    For many years thereafter, both men were deeply involved in teaching music.  During this time, Herb continued to provide private music lessons to students, including at his studios in New York City and New Jersey.

380.    Herb and John were married by a justice of the peace at their home in Sandisfield, Massachusetts, on May 23, 2004, in strict and complete accordance with Massachusetts law.  After 55 years together, they were already a family, but they hoped that marriage would increase their legal protections.

381.    At the time they married, John's longstanding struggle with Parkinson's disease had intensified, and his health declined markedly over the next few years due to Parkinson's and other medical problems.

382.    Herb was the principal care-provider for John.  He arranged for medical treatments and dealt with the many emergencies and other issues that arose as John's condition worsened.  They both preferred that John be at home, and Herb labored mightily to make that possible, although there were times when John needed to be hospitalized or to convalesce in a rehabilitation facility.

383.    John had a stroke at the home he shared with Herb on July 3, 2008.

384.    John died on August 1, 2008 at the Great Barrington Nursing and Rehabilitation Center in Great Barrington, Massachusetts.  At the time of his death, he and Herb had been in a relationship for 60 years and had been married for more than four.

385.    Under 42 U.S.C. § 402(i) and 20 C.F.R. §§ 404.390-404.391 and § 404.347, a surviving spouse is entitled to a lump-sum death payment of $255 if the surviving spouse was "living in the same household with the deceased at the time of death," if the surviving spouse applies for the benefit "prior to the expiration of two years

73

after the date of death …," and if the deceased spouse was "fully or currently insured" at the time of death. John was insured by the Social Security program when he died because he had contributed to the program while he worked.

386.    Under 42 U.S.C. § 402(f), widowers are entitled to insurance benefits equal to the primary insurance amount earned by their deceased spouses.

387.    On October 20, 2008, Herb went to the Pittsfield, Massachusetts office of the SSA to file an application for the lump-sum death benefit and the Social Security survivor's benefit based on John's earnings record. Herb went to the SSA because he recognized that he would receive a higher monthly benefit amount if he drew on the survivor benefit rather than solely on his own earnings record.

388.    A clerk of the SSA, Mrs. Rogers, refused to accept Herb's application. Mrs. Rogers informed Herb that the Social Security administration does not recognize marriages between people of the same sex.

389.    On November 6, 2008, Erik Hawley of the SSA contacted Herb to follow up on his request for Social Security benefits.

390.    Mr. Hawley informed Herb that Social Security would not process Herb's application, and that in any case it would be denied.

391.    By letter dated November 6, 2008, the SSA informed Herb that his claim was denied. The letter stated:

> An individual whose claim for benefits is based on a State recognized
> same-sex marriage or having the same status as spouse for State
> inheritance purposes cannot meet the statutory gender-based definition of
> husband, wife, widow, widower of the NH, including one who is divorced.
> Under the Defense of Marriage Act, the word "marriage" means only a
> legal union between one man and one woman as husband and wife, and
> the word "spouse" refers only to a person of the opposite sex who is a

husband or wife.  Therefore, for benefit purposes, SSA does not recognize
such individual as the spouse of the NH.

Letter from Jaime Nieves, District Manager, SSA, Pittsfield, MA, to Herbert
Burtis (Nov. 6, 2008).

392.    Herb timely filed a Request for Reconsideration by mail in December,

2008.  Form SSA-561-U2 (9-2007) ef (7-2008).  Herb's request stated:  "I am appealing

because I should receive the death benefit and widower's benefit.  I was married under

Massachusetts law since May 23, 2004.  My spouse, John Ferris, died on August 1, 2008.

Since DOMA [1 U.S.C. § 7] blocks recognition of my marital status/marriage, and it

treats me differently from other married people in Massachusetts, I believe DOMA [1

U.S.C. § 7] is unconstitutional."  *Id.*

393.    By letter dated January 20, 2009, the SSA informed Herb that its letter

"supplements our prior response of November 6, 2008" and advised him that he could

appeal if he believed that "this revised and reconsidered determination is not correct."

Letter from P.M. Smith, Assistant Regional Commissioner, Processing Center

Operations, SSA, Great Lakes Program Service Center, Chicago, IL, to Herbert Burtis

(Jan. 20, 2009).

394.    On February 9, 2009, Herb requested the EAP for his claim for the lump-

sum death benefit and survivor benefit in response to the SSA's January 20, 2009 letter.

Letter from Herbert Burtis to SSA, Pittsfield, MA (Feb. 9, 2009).

395.    On or about May 15, 2009,  Herb received from the SSA office in

Pittsfield three copies of an unsigned EAP Agreement which was titled "Memorandum of

Agreement Between Herbert Burtis and the Social Security Administration."  The EAP

Agreement states that, pursuant to its terms, "the reconsideration determination SSA

rendered is final for purposes of section 205(g) of the Social Security Act (42 U.S.C. 405)."

396.    On May 15, 2009, pursuant to the SSA's instructions, Herb signed and returned to the SSA Pittsfield office all three copies of the EAP Agreement.  Several days later, Herb received a phone call from a representative of the SSA Pittsfield office informing him that they had received the EAP Agreements signed by Herb and were forwarding them on to SSA headquarters in Baltimore.

397.    On or about June 29, 2009, Herb received a fully-executed EAP Agreement from the SSA's Baltimore, Maryland headquarters.  Memorandum of Agreement between Herbert Burtis and the Social Security Administration, signed by Jo Ellen Felice, Associate Commissioner, Office of Income Security Programs, Social Security Administration (May 27, 2009).  According to the EAP Agreement, the SSA's reconsideration (and denial) of Herb's claim for benefits constitutes a final administrative determination.  *Id.*

398.    Because the SSA does not recognize Herb's marriage, Herb has been denied the Social Security death benefit and the Social Security survivor's benefit and thus has suffered specific and concrete financial harm.

<u>COUNT I</u>
(Nancy Gill and Marcelle Letourneau
v.
Office of Personnel Management, United States Postal Service and John E. Potter)

399.    Plaintiffs Nancy Gill and Marcelle Letourneau repeat and reallege the allegations set forth in Paragraphs 12-13, 35-66, and 67-105 as if fully set forth herein.

400.    The FEHB program is a creature of federal statute, Chapter 89 of Title 5 of the United States Code.  See generally 5 U.S.C. §§ 8901 et seq.

401.    Federal employees who are eligible for FEHB are also eligible to participate in the Federal Flexible Spending Account Program, including HCFSA.

402.    In 2004, Congress expanded health insurance benefits for federal employees by adopting the "Federal Employee Dental and Vision Benefits Enhancement Act of 2004."  Public Law 108-496.

403.    The vision portion of the FEDVIP is a creature of federal statute, Chapter 89B of Title 5 of the United States Code.  See generally 5 U.S.C. §§ 8981-92.

404.    The FEHB Program, the Federal Flexible Spending Account Program, and the FEDVIP Program extend to United States Postal employees.  See 39 U.S.C. §1005(f).

405.    Pursuant to Congressional authority, 5 U.S.C. § 8913, OPM prescribes all regulations to carry out the FEHB program.

406.    The pertinent regulations promulgated by OPM are contained in Part 890 of Title 5 of the Code of Federal Regulations.

407.    Under existing FEHB statutory and regulatory provisions, the spouse of a covered employee who has elected "Self and Family" coverage is automatically enrolled for health insurance purposes under the FEHB Program.

408.    Under existing FEHB statutory and regulatory provisions, Nancy would be able to provide for health insurance coverage to her spouse Marcelle under the "Self and Family" plan but for OPM's application of DOMA, 1 U.S.C. § 7, which denies health insurance coverage to a Postal Service employee's spouse if that spouse is of the same sex.

77

409.   Under existing FEHB statutory and regulatory provisions, Marcelle would receive health insurance coverage under Nancy's "Self and Family" plan but for OPM's application of DOMA, 1 U.S.C. § 7, which denies health insurance coverage to a Postal Service employee's spouse if that spouse is of the same sex.

410.   In addition to spousal coverage under the FEHB program, a Postal Service employee's spouse can be covered under the employee's HCFSA.

411.   Nancy would be able to extend her HCFSA coverage to include Marcelle but for OPM's application of DOMA, 1 U.S.C. § 7, which precludes HCFSA coverage to a Postal Service employee's spouse if that spouse is of the same sex.

412.   Marcelle would be covered by Nancy's HCFSA but for OPM's application of DOMA, 1 U.S.C. § 7, which precludes HCFSA coverage to a Postal Service employee's spouse if that spouse is of the same sex.

413.   Pursuant to Congressional authority, 5 U.S.C. § 8992(a), OPM prescribes regulations to carry out FEDVIP.

414.   The pertinent regulations promulgated by OPM are contained in Part 894 of Title 5 of the Code of Federal Regulations.

415.   Under FEDVIP statutory and regulatory provisions, a covered employee who has elected "Self and Family" enrollment for FEDVIP makes coverage available for all eligible family members.  "Member of family" is defined in Chapter 89B, 5 U.S.C. § 8991(2), as having the same meaning as that term has for FEHB under Chapter 89, 5 U.S.C. § 8901(5), i.e., including the covered employee's spouse.

416.   Under existing FEDVIP statutory and regulatory provisions, Nancy would be able to enroll Marcelle in the vision coverage under the FEDVIP but for OPM's

78

application of DOMA, 1 U.S.C. § 7, which precludes spousal vision insurance coverage to a Postal Service employee's spouse if that spouse is the same sex as the employee.

417.    Under existing FEDVIP statutory and regulatory provisions, Marcelle would be enrolled in Nancy's enhanced vision coverage under the FEDVIP but for OPM's application of DOMA, 1 U.S.C. § 7, which precludes spousal vision insurance coverage to a Postal Service employee's spouse if that spouse is of the same sex as the employee.

418.    The disparity of treatment with regard to federal employment-related benefits available to Nancy and Marcelle is not mandated by DOMA, 1 U.S.C. § 7, but rather reflects an improper and overly narrow construction of the permissible bounds of OPM's authority to extend coverage to family members.

419.    All federal statutory provisions as to employment-related benefits that turn on "member of family," "family" or "family members," including but not limited to 5 U.S.C. §§ 8901 and 8981, set general guidelines and minimum requirements of coverage availability but do not establish absolute ceilings or outer boundaries of coverage.

420.    To the extent that the disparity of treatment with regard to federal employment-related benefits available to Nancy and Marcelle is, in fact, mandated by DOMA, 1 U.S.C. § 7, that disparity of treatment creates a classification that treats similarly situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

421.    An actual controversy exists between and among the parties.

COUNT II
(Martin Koski and James Fitzgerald
v.
Office of Personnel Management)

422.    Plaintiffs Martin Koski and James Fitzgerald repeat and reallege the allegations set forth in Paragraphs 14-15, 35-66, and 106-136 as if fully set forth herein.

423.    The FEHB program is a creature of federal statute, Chapter 89 of Title 5 of the United States Code.  See generally 5 U.S.C. §§ 8901 et seq.

424.    Pursuant to Congressional authority, 5 U.S.C. § 8913, the OPM prescribes all regulations to carry out Chapter 89 of Title 5 of the United States Code.

425.    The pertinent regulations promulgated by OPM are contained in Part 890 of Title 5 of the Code of Federal Regulations.

426.    The FEHB Program extends to qualified annuitants of the Social Security Administration, including Martin.  See 5 U.S.C. §§ 8901, 8905.

427.    Under existing FEHB statutory and regulatory provisions, a qualified annuitant may elect "Self and Family" coverage and enroll his spouse for health insurance benefits under the FEHB program.

428.    Under existing FEHB statutory and regulatory provisions, Martin would be able to enroll Jim in a "Self and Family" plan but for OPM's application of DOMA, 1 U.S.C. § 7, which denies spousal health insurance coverage to a retired federal employee's spouse if that spouse is of the same sex.

429.    Under existing FEHB statutory and regulatory provisions, Jim would be enrolled in Martin's "Self and Family" plan but for OPM's application of DOMA, 1

U.S.C. § 7, which denies spousal health insurance coverage to a retired federal employee's spouse if that spouse is of the same sex.

430.    The disparity of treatment with regard to federal employment-related benefits available to Martin and Jim is not mandated by DOMA, 1 U.S.C. § 7, but rather reflects an improper and overly narrow construction of the permissible bounds of OPM's authority to extend coverage to family members.

431.    All federal statutory provisions as to employment-related benefits that turn on "member of family," "family" or "family members," including but not limited to 5 U.S.C. §§ 8901 and 8981, set general guidelines and minimum requirements of coverage availability but do not establish absolute ceilings or outer boundaries of coverage.

432.    To the extent that the disparity of treatment with regard to federal employment-related benefits available to Martin and Jim is, in fact, mandated by DOMA, 1 U.S.C. § 7, that disparity of treatment creates a classification that treats similarly situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

433.    An actual controversy exists between and among the parties.

COUNT III
(Dean Hara
v.
Office of Personnel Management
and Michael J. Astrue)

434.    Plaintiff Dean Hara repeats and realleges the allegations set forth in Paragraph 16, 35-66, and 137-184 as if fully set forth herein.

435.     The Social Security Act is codified in Chapter 7 of Title 42 of the United States Code.  See generally 42 U.S.C. §§ 301 et seq.

436.     Pursuant to Congressional authority, 42 U.S.C. § 902, defendant Michael J. Astrue enforces federal law relative to eligibility of benefits through his supervision of the SSA.

437.     The pertinent regulations promulgated by the SSA are contained in Parts 400 to 499 of Title 20 of the Code of Federal Regulations.

438.     Under 42 U.S.C. § 402(i), the widower of a deceased person shall receive a lump-sum benefit of $255 after the death of his spouse.

439.     Under existing Social Security statutory and regulatory provisions, Dean would be entitled to the $255 death benefit as the legal surviving spouse of Gerry Studds but for DOMA, 1 U.S.C. § 7, which denies the benefit to an otherwise qualifying surviving spouse if that spouse is the same sex.

440.     DOMA, 1 U.S.C. § 7, as applied by the SSA, creates a classification with respect to Social Security benefits that treats similarly situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

441.     Dean's constitutional claims are ripe for review by this Court.

442.     Dean's application for the lump-sum benefit raises no disputed issues of fact.

443.     DOMA, 1 U.S.C. § 7, alone bars Dean from receiving the lump-sum benefit.

444.    It would be futile for Dean to pursue any further administrative process, because the SSA's position that DOMA, 1 U.S.C. § 7, bars him from receiving the lump-sum death benefit is the sole basis for its denial of his claim and raises a constitutional issue that is beyond the SSA's purview.

445.    The FEHB program is a creature of federal statute, Chapter 89 of Title 5 of the United States Code.  See generally 5 U.S.C. § 8901 et seq.

446.    Pursuant to Congressional authority, 5 U.S.C. § 8913, the OPM prescribes all regulations to carry out Chapter 89 of Title 5 of the United States Code.

447.    The pertinent regulations promulgated by OPM are contained in Part 890 of Title 5 of the Code of Federal Regulations.

448.    Under FEHB statutory and regulatory provisions, the surviving spouse of a retired federal employee/annuitant is eligible to enroll in a federal health insurance program if, at the time of the annuitant's death, the annuitant had elected "Self and Family" health insurance coverage and if the surviving spouse is also eligible for a spousal survivor annuity.

449.    Under pertinent FEHB statutory and regulatory provisions and in light of the MSPB's final decision in Dean Hara v. Office of Personnel Management (CSF3067396), Docket No. PH-0831-08-0099-I-2, Gerry Studds intended to provide to Dean, or, in the alternative, is deemed to have in fact elected for Dean, a spousal survivor annuity.

450.    Under pertinent FEHB statutory and regulatory provisions and in light of the MSPB's final decision in Dean Hara v. Office of Personnel Management (CSF3067396), Docket No. PH-0831-08-0099-I-2, Gerry Studds intended to provide to

Dean, or, in the alternative, is deemed to have in fact elected for Dean, his inclusion under federal health insurance coverage.

451.    OPM is estopped under the MSPB's final decision in <u>Dean Hara v. Office of Personnel Management (CSF3067396)</u>, Docket No. PH-0831-08-0099-I-2, from enforcing any asserted requirement of election by Congressman Studds vis-à-vis "Self and Family" coverage.

452.    Under pertinent FEHB statutory and regulatory provisions, Dean would be able to receive health insurance coverage but for OPM's application of DOMA, 1 U.S.C. § 7, which denies health insurance coverage to a federal employee's surviving spouse if that surviving spouse is of the same sex.

453.    The disparity of treatment with regard to FEHB health insurance available to Dean is not mandated by DOMA, 1 U.S.C. § 7, but rather reflects an improper and overly narrow construction of the permissible bounds of OPM's authority to extend benefits to family members.

454.    All federal statutory provisions as to FEHB health insurance that turn on "member of family" or "spouse," including but not limited to 5 U.SC. §§ 8901, set general guidelines and minimum requirements of coverage availability but do not establish absolute ceilings or outer boundaries of coverage.

455.    To the extent that a disparity of treatment with regard to the FEHB program is mandated by DOMA, 1 U.S.C. § 7, it creates a classification that treats similarly situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

456.     Dean has made presentment of his claim for enrollment in the FEHB program.

457.     Dean's application for FEHB health insurance raises no disputed issues of fact.

458.     DOMA, 1 U.S.C. § 7, alone bars Dean from receiving FEHB health insurance.

459.     It would be futile for him to pursue further administrative remedies given OPM's practice and policy of barring members of marriages between two individuals of the same sex from receiving FEHB benefits on the basis of DOMA, 1 U.S.C. § 7, including plaintiffs Nancy Gill and Martin Koski.

460.     Review of this practice and policy raises a constitutional issue beyond the purview of OPM.

461.     An actual controversy exists between and among the parties.

<u>COUNT IV</u>
(Mary Ritchie and Kathleen Bush
v.
United States of America)

462.     Plaintiffs Mary Ritchie and Kathleen Bush repeat and reallege the allegations set forth in Paragraphs 17-18, 35-66, and 185- 222 as if fully set forth herein.

463.     This is an action for the recovery of federal income tax erroneously or illegally assessed and collected.  This Court has jurisdiction under 28 U.S.C. § 1346 (a)(1).  This action also arises under 26 U.S.C. § 7422.  The defendant is the United States of America.

464.     Mary and Kathy seek recovery of federal income tax for the taxable year ending December 31, 2004.

465.     On or before April 15, 2005, Mary timely filed with the IRS Service Center at Andover, Massachusetts a federal income tax return for the year 2004 using the Head of Household filing status.  Mary timely paid federal income tax of $5,531 on account of this federal income tax return.

466.     The IRS stated in a 1958 Revenue Ruling that for federal tax law purposes an individual is married if she or he is married under local law.  Rev. Rul. 58-66, 1958-1 C.B. 60.

467.     On April 14, 2008, consistent with the 1958 Revenue Ruling, Mary and Kathy filed an IRS Form 1040X claim with the IRS Service Center at Andover, Massachusetts, for a refund of federal income tax overpaid in the amount of $1,054, based on the fact that they were married under Massachusetts law.  They stated that, because of DOMA, 1 U.S.C. § 7, Mary had been forced to file as Head of Household, rather than Mary and Kathy being permitted to file one federal income tax return as Married Filing Jointly, and stated that DOMA, 1 U.S.C. § 7, was unconstitutional.

468.     The IRS disallowed the claim by letter dated July 17, 2008.  The disallowance was solely because of DOMA, 1 U.S.C. § 7.

469.     An individual who is married to a person of a different sex is not forced to file his or her federal income tax returns as anything other than Married.  Indeed, he or she is required to file using his or her legal marital status.  Legally married same-sex couples are forced to use an incorrect marital status.  As a result of this disparity of

treatment, Mary and Kathy paid $1,054 more in federal income tax in 2004 than a similarly situated different-sex married couple would have paid.

470.    Because DOMA, 1 U.S.C. § 7, as applied by the IRS, requires this disparity of treatment with regard to the federal income tax filing of Mary and Kathy, it creates a classification that treats similarly situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

COUNT V
(Mary Ritchie and Kathleen Bush
v.
United States of America)

471.    Plaintiffs Mary Ritchie and Kathleen Bush, repeat and reallege the allegations set forth in Paragraphs 17-18, 35-66, and 185-222 as if fully set forth herein.

472.    This is an action for the recovery of federal income tax erroneously or illegally assessed and collected.  This Court has jurisdiction by reason of 28 U.S.C. § 1346(a)(1).  This action also arises under 26 U.S.C. § 7422.  The defendant is the United States of America.

473.    Mary and Kathy seek recovery of federal income tax for the taxable year ending December 31, 2005.

474.    On or before April 15, 2006, Mary timely filed with the IRS Center at Andover, Massachusetts a federal income tax return for the year 2005 using the Head of Household filing status.  Mary timely paid federal income tax of $7,554 on account of this federal income tax return.

475.    The IRS stated in a 1958 Revenue Ruling that for federal tax law purposes an individual is married if she or he is married under local law.  Rev. Rul. 58-66, 1958-1 C.B. 60.

476.    On April 14, 2008, consistent with the 1958 Revenue Ruling, Mary and Kathy filed an IRS Form 1040X claim with the IRS Service Center at Andover, Massachusetts, for a refund of federal income tax overpaid in the amount of $2,703, based on the fact that they were married under Massachusetts law.  They stated that, because of DOMA, 1 U.S.C. § 7, Mary had been forced to file as Head of Household, rather than Mary and Kathy being able to file on one federal income tax return as Married Filing Jointly, and stated that DOMA, 1 U.S.C. § 7, was unconstitutional.

477.    The IRS disallowed the claim by letter dated July 18, 2008.  The disallowance was solely because of DOMA, 1 U.S.C. § 7.

478.    An individual married to a person of a different sex is not forced to file his or her federal income tax returns as anything other than Married.  Indeed, he or she is required to file using his or her legal marital status.  Legally married same-sex couples are forced to use an incorrect marital status, which results in a different federal income tax assessment than if they had used their correct married status.  As a result of this disparity of treatment, Mary Ritchie and Kathleen Bush paid $2,703 more in federal income tax in 2005 than a similarly situated different-sex married couple would have paid.

479.    Because DOMA, 1 U.S.C. § 7, as applied by the IRS, requires this disparity of treatment with regard to the federal income tax filing of Mary and Kathy, it creates a classification that treats similarly situated individuals differently without

justification in excess of Congressional authority in violation of the right of equal

protection secured by the Fifth Amendment of the Constitution of the United States.

<u>COUNT VI</u>
(Mary Ritchie and Kathleen Bush
v.
United States of America)

480.    Plaintiffs Mary Ritchie and Kathleen Bush repeat and reallege the

allegations set forth in Paragraphs 17-18, 35-66, and 185-222 as if fully set forth herein.

481.    This is an action for the recovery of federal income tax erroneously or

illegally assessed and collected.  This Court has jurisdiction by reason of 28 U.S.C.

§ 1346(a)(1).  This action also arises under 26 U.S.C. § 7422.  The defendant is the

United States of America.

482.    Mary and Kathy seek recovery of federal income tax for the taxable year

ending December 31, 2006.

483.    On or before April 15, 2007, Mary timely filed with the IRS Service

Center at Andover, Massachusetts a federal income tax return for the year 2006 using the

Head of Household filing status.  Mary timely paid federal income tax of $13,626 on

account of this federal income tax return.

484.    The IRS stated in a 1958 Revenue Ruling that for federal tax law purposes

an individual is married if she or he is married under local law.  Rev. Rul. 58-66, 1958-1

C.B. 60.

485.    On April 14, 2008, consistent with the 1958 Revenue Ruling, Mary and

Kathy filed an IRS Form 1040X claim with the IRS Service Center at Andover,

Massachusetts, for a refund of federal income tax overpaid in the amount of $4,390,

based on the fact that they were married under Massachusetts law.  They stated that, because of DOMA, 1 U.S.C. § 7, Mary had been forced to file as Head of Household, rather than Mary and Kathy Bush being able to file on one federal income tax return as Married Filing Jointly, and stated that DOMA, 1 U.S.C. § 7, was unconstitutional.

486.    The IRS disallowed the claim by letter dated July 18, 2008.  The disallowance was solely because of DOMA, 1 U.S.C. § 7.

487.    An individual who is married to a person of a different sex is not forced to file his or her federal income tax returns as anything other than Married.  Indeed, he or she is required to file using his or her legal marital status.  Legally married same-sex couples are forced to use an incorrect marital status, which results in a different federal income tax assessment than if they had used their correct married status.  As a result of this disparity of treatment, Mary Ritchie and Kathleen Bush paid $4,390 more in federal income tax in 2006 than a similarly situated different-sex married couple would have paid.

488.    Because DOMA, 1 U.S.C. § 7, as applied by the IRS, requires this disparity of treatment with regard to the federal income tax filing of Mary and Kathy, it creates a classification that treats similarly situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

COUNT VII
(Mary Ritchie and Kathleen Bush
v.
United States of America)

489.    Plaintiffs Mary Ritchie and Kathleen Bush repeat and reallege the allegations set forth in Paragraphs 17-18, 35-66, and 185-222 as if fully set forth herein.

490.    This is an action for the recovery of federal income tax erroneously or illegally assessed and collected.  This Court has jurisdiction by reason of 28 U.S.C. § 1346(a)(1).  This action also arises under 26 U.S.C. § 7422.  The defendant is the United States of America.

491.    Mary and Kathy seek recovery of federal income tax for the taxable year ending December 31, 2007.

492.    On or before April 15, 2008, Mary timely filed with the IRS Service Center at Andover, Massachusetts a federal income tax return for the year 2007 using the Head of Household filing status.  Mary timely paid federal income tax of $20,358 on account of this federal income tax return.

493.    The IRS stated in a 1958 Revenue Ruling that for federal tax law purposes an individual is married if she or he is married under local law.  Rev. Rul. 58-66, 1958-1 C.B. 60.

494.    On February 25, 2009, consistent with the 1958 Revenue Ruling, Mary and Kathy filed an IRS Form 1040X claim with the IRS Service Center at Andover, Massachusetts, for a refund of federal income tax overpaid in the amount of $6,371, based on the fact that they were married under Massachusetts law.  They stated that, because of DOMA, 1 U.S.C. § 7, Mary had been forced to file as Head of Household,

rather than Mary and Kathy being able to file on one federal income tax return as Married Filing Jointly, and stated that DOMA, 1 U.S.C. § 7, was unconstitutional.

495.    The IRS disallowed the claim by letter dated May 8, 2009.  The disallowance was solely because of DOMA, 1 U.S.C. § 7.

496.    An individual who is married to a person of a different sex is not forced to file his or her federal income tax returns as anything other than Married.  Indeed, he or she is required to file using his or her legal marital status.  Legally married same-sex couples are forced to use an incorrect marital status, which results in a different federal income tax assessment than if they had used their correct married status.  As a result of this disparity of treatment, Mary Ritchie and Kathleen Bush paid $6,371 more in federal income tax in 2007 than a similarly situated different-sex married couple would have paid.

497.    Because DOMA, 1 U.S.C. § 7, as applied by the IRS, requires this disparity of treatment with regard to the federal income tax filing of Mary and Kathy, it creates a classification that treats similarly situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

COUNT VIII
(Melba Abreu and Beatrice Hernandez
v.
United States of America)

498.    Plaintiffs Melba Abreu and Beatrice Hernandez, repeat and reallege the allegations set forth in Paragraphs 19-20, 35-66, and 223-259 as if fully set forth herein.

499.     This is an action for the recovery of federal income tax erroneously or

illegally assessed and collected.  This Court has jurisdiction by reason of 28 U.S.C.

§ 1346(a)(1).  This action also arises under 26 U.S.C. § 7422.  The defendant is the

United States of America.

500.     Melba and Beatrice seek recovery of federal income tax for the taxable

year ending December 31, 2004.

501.     On or before April 15, 2005, Melba timely filed with the IRS Service

Center in Andover, Massachusetts a federal income tax return for the year 2004 using the

Single filing status.  Melba timely paid federal income taxes of $16,306 on account of

this federal income tax return.

502.     The IRS stated in a 1958 Revenue Ruling that for federal tax law purposes

an individual is married if she or he is married under local law.  Rev. Rul. 58-66, 1958-1

C.B. 60.

503.     On April 14, 2008, consistent with the 1958 Revenue Ruling, Melba and

Beatrice filed an IRS Form 1040X claim with the IRS Service Center at Andover,

Massachusetts, for refund of federal income tax overpaid in the amount of $4,687, based

on the fact that they were married under Massachusetts law.  They stated that, because of

DOMA, 1 U.S.C. § 7, Melba had been forced to file as Single, rather than Melba and

Beatrice being able to file on one federal income tax return as Married Filing Jointly.

504.     The IRS disallowed the claim by letter dated June 20, 2008.  The

disallowance was solely because of DOMA, 1 U.S.C. § 7.

505.     An individual who is married to a person of a different sex is not forced to

file his or her federal income tax returns as anything other than Married.  Indeed, he or

93

she is required to file using his or her legal marital status.  Legally married same-sex

couples are forced to use an incorrect marital status, which results in a different federal

income tax assessment than if they had used their correct married status.  As a result of

this disparity of treatment, Melba Abreu and Beatrice Hernandez paid $4,687 more in

federal income tax in 2004 than a similarly situated different-sex married couple would

have paid.

506.    Because DOMA, 1 U.S.C. § 7, as applied by the IRS, requires this

disparity of treatment with regard to the federal income tax filing of Melba and Beatrice,

it creates a classification that treats similarly situated individuals differently without

justification in excess of Congressional authority in violation of the right of equal

protection secured by the Fifth Amendment of the Constitution of the United States.


<u>COUNT IX</u>
(Melba Abreu and Beatrice Hernandez
v.
United States of America)

507.    Melba Abreu and Beatrice Hernandez, repeat and reallege the allegations

set forth in Paragraphs 19-20, 35-66, and 223-259 as if fully set forth herein.

508.    This is an action for the recovery of federal income tax erroneously or

illegally assessed and collected.  This Court has jurisdiction by reason of 28 U.S.C.

§ 1346(a)(1).  This action also arises under 26 U.S.C. § 7422.  The defendant is the

United States of America.

509.    Melba and Beatrice seek recovery of federal income tax for the taxable

year ending December 31, 2005.

510. On or before April 15, 2006, Melba timely filed with the IRS Service Center in Andover, Massachusetts a federal income tax return for the year 2005 using the Single filing status. Melba timely paid federal income tax of $12,621 on account of this federal income tax return.

511. The IRS stated in a 1958 Revenue Ruling that for federal tax law purposes an individual is married if she or he is married under local law. Rev. Rul. 58-66, 1958-1 C.B. 60.

512. On April 14, 2008, consistent with the 1958 Revenue Ruling, Melba and Beatrice filed an IRS Form 1040X claim with the IRS Service Center at Andover, Massachusetts, for refund of federal income tax overpaid in the amount of $3,785 based on the fact that they were married under Massachusetts law. They stated that, because of DOMA, 1 U.S.C. § 7, Melba had been forced to file as Single, rather than Melba and Beatrice being able to file on one federal income tax return as Married Filing Jointly.

513. The IRS disallowed the claim by letter dated June 20, 2008. The disallowance was solely because of DOMA, 1 U.S.C. § 7.

514. An individual who is married to a person of a different sex is not forced to file his or her federal income tax returns as anything other than Married. Indeed, he or she is required to file using his or her legal marital status. Legally married same-sex couples are forced to use an incorrect marital status, which results in a different federal income tax assessment than if they had used their correct married status. As a result of this disparity of treatment, Melba and Beatrice paid $3,785 more in federal income tax in 2005 than a similarly situated different-sex married couple would have paid.

515.    Because DOMA, 1 U.S.C. § 7, as applied by the IRS, requires this disparity of treatment with regard to the federal income tax filing of Melba and Beatrice, it creates a classification that treats similarly situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

COUNT X

(Melba Abreu and Beatrice Hernandez
v.
United States of America)

516.    Plaintiffs Melba Abreu and Beatrice Hernandez, repeat and reallege the allegations set forth in Paragraphs 19-20, 35-66, and 223-259 as if fully set forth herein.

517.    This is an action for the recovery of federal income tax erroneously or illegally assessed and collected.  This Court has jurisdiction by reason of 28 U.S.C. § 1346(a)(1).  This action also arises under 26 U.S.C. § 7422.  The defendant is the United States of America.

518.    Melba and Beatrice seek recovery of federal income tax for the taxable year ending December 31, 2006.

519.    On or before April 15, 2007, Melba timely filed with the IRS Service Center in Andover, Massachusetts a federal income tax return for the year 2006 using the Single filing status.  Melba timely paid federal income tax of $24,467 on account of this federal income tax return.

520.    The IRS stated in a 1958 Revenue Ruling that for federal tax law purposes an individual is married if she or he is married under local law.  Rev. Rul. 58-66, 1958-1 C.B. 60.

521.    On April 14, 2008, consistent with the 1958 Revenue Ruling, Melba and

Beatrice filed an IRS Form 1040X claim with the IRS Service Center at Andover,

Massachusetts, for refund of federal income tax overpaid in the amount of $5,546 based

on the fact that they were married under Massachusetts law.  They stated that, because of

DOMA, 1 U.S.C. § 7, Melba had been forced to file as Single, rather than Melba and

Beatrice being able to file on one federal income tax return as Married Filing Jointly.

522.    The IRS disallowed the claim by letter dated June 20, 2008.  The

disallowance was solely because of DOMA, 1 U.S.C. § 7.

523.    An individual married to a person of a different sex is not forced to file his

or her federal income tax returns as anything other than Married.  Indeed, he or she is

required to file using his or her legal marital status.  Legally married same-sex couples

are forced to use an incorrect marital status, which results in a different federal income

tax assessment than if they had used their correct married status.  As a result of this

disparity of treatment, Melba and Beatrice paid $5,546 more in federal income tax in

2006 than a similarly situated different-sex married couple would have paid.

524.    Because DOMA, 1 U.S.C. § 7, as applied by the IRS, requires this

disparity of treatment with regard to the federal income tax filing of Melba and Beatrice,

it creates a classification that treats similarly situated individuals differently without

justification in excess of Congressional authority in violation of the right of equal

protection secured by the Fifth Amendment of the Constitution of the United States.

COUNT XI
(Marlin Nabors and Jonathan Knight
v.
United States of America)

525.     Plaintiffs Marlin Nabors and Jonathan Knight, repeat and reallege the allegations set forth in Paragraphs 21-22, 35-66, and 260-289 as if fully set forth herein.

526.     This is an action for the recovery of federal income tax erroneously or illegally assessed and collected.  This Court has jurisdiction by reason of 28 U.S.C. § 1346(a)(1).  This action also arises under 26 U.S.C. § 7422.  The defendant is the United States of America.

527.     Marlin and Jonathan seek recovery of federal income tax for the taxable year ending December 31, 2006.

528.     On or before April 15, 2007, Marlin and Jonathan timely filed with the IRS Service Center in Andover, Massachusetts separate federal income tax returns for the year 2006, each using the Single filing status.  Marlin and Jonathan timely paid federal income taxes of $8,255 in the aggregate on account of these federal income tax returns.

529.     The IRS stated in a 1958 Revenue Ruling that for federal tax law purposes an individual is married if she or he is married under local law.  Rev. Rul. 58-66, 1958-1 C.B. 60.

530.     On February 25, 2009, consistent with the 1958 Revenue Ruling, Marlin and Jonathan filed an IRS Form 1040X with the IRS Service Center at Andover, Massachusetts, claiming a refund of federal income tax overpaid in 2006 in the amount of $1,286, based on the fact that they were married under Massachusetts law.  Marlin and Jonathan stated that, because of DOMA, 1 U.S.C. § 7, they had been forced to file

98

separately as Single, rather than being able to file on one federal income tax return as Married Filing Jointly.

531.    Marlin and Jonathan believe that the refund check for $1,286 plus interest that they received from the IRS was issued in violation of DOMA, 1 U.S.C. § 7, and have not cashed it.  The IRS, through counsel, has stated to counsel for the plaintiffs that the refund check was issued in error.

532.    An individual who is married to a person of a different sex is not forced to file his or her federal income tax returns as anything other than Married.  Indeed, he or she is required to file using his or her legal marital status.  Legally married same-sex couples are forced to use an incorrect marital status, which results in a different federal income tax assessment than if they had used their correct married status.  As a result of this disparity of treatment, Marlin Nabors and Jonathan Knight paid $1,286 more in federal income tax in 2006 than a similarly situated different-sex married couple would have paid.

533.    Because DOMA, 1 U.S.C. § 7, as applied by the IRS, requires this disparity of treatment with regard to the 2006 federal income tax filing of Marlin and Jonathan, it creates a classification that treats similarly situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

COUNT XII
(Marlin Nabors and Jonathan Knight
v.
United States of America)

534.   Plaintiffs Marlin Nabors and Jonathan Knight repeat and reallege the allegations set forth in Paragraphs 21-22, 35-66, and 260-289 as if fully set forth herein.

535.   This is an action for the recovery of federal income tax erroneously or illegally assessed and collected.  This Court has jurisdiction by reason of 28 U.S.C. § 1346(a)(1).  This action also arises under 26 U.S.C. § 7422.  The defendant is the United States of America.

536.   Marlin and Jonathan seek recovery of federal income tax for the taxable year ending December 31, 2007.

537.   On or before April 15, 2008, Marlin and Jonathan timely filed with the IRS Service Center in Andover, Massachusetts separate federal income tax returns for the year 2007, each using the Single filing status.  Marlin and Jonathan timely paid federal income taxes of $10,089 in the aggregate on account of these federal income tax returns.

538.   The IRS stated in a 1958 Revenue Ruling that for federal tax law purposes an individual is married if she or he is married under local law.  Rev. Rul. 58-66, 1958-1 C.B. 60.

539.   On February 25, 2009, consistent with the 1958 Revenue Ruling, Marlin and Jonathan filed an IRS Form 1040X with the IRS Service Center at Andover, Massachusetts, claiming a refund of federal income tax overpaid for 2007 in the amount of $1,234, based on the fact that they were married under Massachusetts law.  Marlin and Jonathan stated that, because of DOMA, 1 U.S.C. § 7, they had been forced to file

separately as Single, rather than being able to file on one federal income tax return as Married Filing Jointly.

540.     Marlin and Jonathan believe that the refund check for $1,234 plus interest that they received from the IRS was issued in violation of DOMA, 1 U.S.C. § 7, and have not cashed it.  The IRS, through counsel, has stated to counsel for the plaintiffs that the refund check was issued in error.

541.     An individual who is married to a person of a different sex is not forced to file his or her federal income tax returns as anything other than Married.  Indeed, he or she is required to file using his or her legal marital status.  Legally married same-sex couples are forced to use an incorrect marital status, which results in a different federal income tax assessment than if they had used their correct married status.  As a result of this disparity of treatment, Marlin Nabors and Jonathan Knight paid $1,234 more in federal income tax in 2007 than a similarly situated different-sex married couple would have paid.

542.     Because DOMA, 1 U.S.C. § 7, as applied by the IRS, requires this disparity of treatment with regard to the 2007 federal income tax filing of Marlin and Jonathan, it creates a classification that treats similarly situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

COUNT XIII
(Mary Bowe-Shulman and Dorene Bowe-Shulman
v.
United States of America)

543.     Plaintiffs Mary Bowe-Shulman and Dorene Bowe-Shulman repeat and

reallege the allegations set forth in Paragraphs 23-24, 35-66, and 290-315 as if fully set

forth herein.

544.     This is an action for the recovery of federal income tax erroneously or

illegally assessed and collected.  This Court has jurisdiction by reason of 28 U.S.C.

§ 1346(a)(1).  This action also arises under 26 U.S.C. § 7422.  The defendant is the

United States of America.

545.     Mary and Dorene seek recovery of federal income tax for the taxable year

ending December 31, 2006.

546.     On or before April 15, 2007, Mary and Dorene each timely filed with the

IRS Service Center in Andover, Massachusetts separate federal income tax returns for the

year 2006.  Mary filed her federal income tax return using the Head of Household filing

status while Dorene used the Single filing status.  Mary and Dorene timely paid federal

income taxes of $13,879 in the aggregate on account of these federal income tax returns.

547.     The IRS stated in a 1958 Revenue Ruling that for federal tax law purposes

an individual is married if she or he is married under local law.  Rev. Rul. 58-66, 1958-1

C.B. 60.

548.     On January 26, 2009, consistent with the 1958 Revenue Ruling, Mary and

Dorene filed an IRS Form 1040X with the IRS Service Center at Andover,

Massachusetts, claiming a refund of federal income tax overpaid in the amount of $3,332,

based on the fact that they were married under Massachusetts law.  They stated that,

because of DOMA, 1 U.S.C. § 7, Mary had been forced to file as Head of Household, and

Dorene as Single, rather than Mary and Dorene being able to file on one federal income

tax return as Married Filing Jointly.  They further stated that, because of DOMA, 1

U.S.C. § 7, Mary was forced to pay federal income taxes on the value of the health

insurance coverage provided by her employer to Dorene and that this imputed income

contributed to their overpayment of federal income taxes.

549.    The IRS did not issue a decision on Mary and Dorene's claim within the

statutory six-month period.  They are thus permitted to file their 2006 refund claim in this

Court.

550.    An individual who is married to a person of a different sex is not forced to

file his or her federal income tax returns as anything other than Married.  Indeed, he or

she is required to file using his or her legal marital status.  Legally married same-sex

couples are forced to use an incorrect marital status, which results in a different federal

income tax assessment than if they had used their correct married status.  As a result of

this disparity of treatment, Mary Bowe-Shulman and Dorene Bowe-Shulman paid $3,332

more in federal income tax in 2006 than a similarly situated different-sex married couple

would have paid.  In addition, Mary and Dorene are forced to pay federal income taxes

on the value of health insurance coverage provided by Mary's employer to Dorene, which

they would not pay if there were a similarly situated different-sex couple.

551.    Because DOMA, 1 U.S.C. § 7, as applied by the IRS, requires this

disparity of treatment with regard to the 2006 federal income tax filing of Mary and

Dorene, it creates a classification that treats similarly situated individuals differently

without justification in excess of Congressional authority in violation of the right of equal

protection secured by the Fifth Amendment of the Constitution of the United States.


<u>COUNT XIV</u>
(Jo Ann Whitehead and Bette Jo Green
v.
Michael J. Astrue)

552.    Plaintiffs Bette Jo Green and Jo Ann Whitehead repeat and reallege the

allegations set forth in Paragraphs 25-26, 35-66, and 316-341 as if fully set forth herein.

553.    The Social Security Act is codified in Chapter 7 of Title 42 of the United

States Code.  <u>See generally</u> 42 U.S.C. §§ 301 et seq.

554.    Pursuant to 42 U.S.C. § 902, defendant Michael J. Astrue enforces federal

law concerning eligibility for Social Security benefits through his supervision of the SSA.

555.    The pertinent regulations promulgated by the SSA are contained in Parts

400 to 499 of Title 20 of the Code of Federal Regulations.

556.    Under existing Social Security statutory and regulatory provisions, <u>see</u> 42

U.S.C. § 402(f), individuals who qualify for old-age insurance benefits are eligible to

extend those benefits to their spouses.  Pursuant to the Social Security Act, a spouse who

applies for Social Security benefits at full retirement age and has a benefit lower than

50% of that of his or her spouse receives an amount equal to 50% of his or her spouse's

full retirement benefit.

557.    As a person legally married under Massachusetts law, Bette Jo would be

able to share the benefit of her earnings record with her spouse Jo Ann but for DOMA, 1

U.S.C. § 7, which denies old-age insurance benefits to a covered individual's spouse if

that spouse is of the same sex.

558.    As a person legally married under Massachusetts law, Jo Ann would be entitled to old-age insurance benefits from her spouse Bette Jo but for DOMA, 1 U.S.C. § 7, which denies old-age insurance benefits to a covered individual's spouse if that spouse is the same sex.

559.    DOMA, 1 U.S.C. § 7, creates a classification with respect to Social Security benefits that treats similarly situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

560.    An actual controversy exists between and among the parties.

COUNT XV
(Randell Lewis-Kendell
v.
Michael J. Astrue)

561.    Plaintiff Randell Lewis-Kendell repeats and realleges the allegations set forth in Paragraphs 27, 35-66, and 342-372 as if fully set forth herein.

562.    The Social Security Act is codified in Chapter 7 of Title 42 of the United States Code.  See generally 42 U.S.C. §§ 301 et seq.

563.    Pursuant to Congressional authority, 42 U.S.C. § 902, defendant Michael J. Astrue enforces federal law relative to eligibility of benefits through his supervision of the SSA.

564.    The pertinent regulations promulgated by the SSA are contained in Parts 400 to 499 of Title 20 of the Code of Federal Regulations.

565.    Under existing federal law, 42 U.S.C. § 402(i), the widower of a deceased person shall receive a lump-sum benefit of $255 after the death of his spouse.

566.     As a person legally married under Massachusetts law, Randy would receive the lump-sum death benefit authorized under the Social Security Act but for DOMA, 1 U.S.C. § 7, which denies the lump-sum death benefit to an individual who is married to someone of the same sex.

567.     DOMA, 1 U.S.C. § 7, creates a classification with respect to Social Security benefits that treats similarly situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

568.     An actual controversy exists between and among the parties.

COUNT XVI
(Herbert Burtis
v.
Michael J. Astrue)

569.     Plaintiff Herbert Burtis repeats and realleges the allegations set forth in Paragraphs 28, 35-66, and 373-398 as if fully set forth herein.

570.     The Social Security Act is codified in Chapter 7 of Title 42 of the United States Code.  See generally 42 U.S.C. §§ 301 et seq.

571.     Pursuant to Congressional authority, 42 U.S.C. § 902, defendant Michael J. Astrue enforces federal law relative to eligibility of benefits through his supervision of the SSA.

572.     The pertinent regulations promulgated by the SSA are contained in Parts 400 to 499 of Title 20 of the Code of Federal Regulations.

573.     Under federal law, 42 U.S.C. § 402(i), the widower of a deceased person shall receive a lump-sum of $255 after the death of his spouse.

574.   Herb's claim for the lump-sum death benefit was denied because of DOMA, 1 U.S.C. § 7, and because the SSA is required under DOMA, 1 U.S.C. § 7, to interpret the Social Security Act to deny benefits to persons married to spouses of the same sex.

575.   As a legally married person under Massachusetts law, Herb would receive the lump-sum death benefit authorized under the Social Security Act, but for the SSA's position that federal law—as applied by the SSA—precludes the grant of the lump-sum death benefit to an individual who is married to someone of the same sex.

576.   DOMA, 1 U.S.C. § 7, creates a classification with respect to Social Security benefits that treats similarly situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

577.   Under federal law, 42 U.S.C. § 402(g), the widower of a deceased insured shall receive insurance benefits up to the primary insurance amount earned by his insured deceased spouse.

578.   Herb's claim for the survivor benefit was denied because of DOMA, 1 U.S.C. § 7, and because the SSA is required under DOMA, 1 U.S.C. § 7, to interpret the Social Security Act to deny benefits to persons married to spouses of the same sex.

579.   As a person legally married under Massachusetts law, Herb would be entitled to the survivor benefit from his deceased spouse John but for DOMA, 1 U.S.C. § 7, which denies survivor benefits to a covered individual's spouse if that spouse is of the same sex.

580.     DOMA, 1 U.S.C. § 7, as applied by the SSA, creates a classification with respect to Social Security benefits that treats similarly situated individuals differently without justification in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

581.     An actual controversy exists between and among the parties.


PRAYERS FOR RELIEF

WHEREFORE, the plaintiffs pray that this Court:

1.     Declare that the FEHB Program, the HCSFA, and the FEDVIP Program permit coverage of same-sex spouses under their authorizing statutes and regulations.

2.     Declare DOMA, 1 U.S.C. § 7, unconstitutional as applied to the plaintiffs.

3.     Enjoin the defendants from continuing to discriminate against the plaintiffs by treating them differently from similarly situated individuals who are married to persons of the opposite sex.

4.     Issue an injunction ordering defendant Michael J. Astrue to review the applications for benefits of plaintiffs Jo Ann Whitehead, Randy Lewis-Kendell, Herb Burtis, and Dean Hara without regard to DOMA, 1 U.S.C. § 7.

5.     Award plaintiffs Mary Ritchie and Kathleen Bush judgment in the amount of $14,518, plus interest and costs as allowed by law, and such other relief as this Court may deem just, including the award of reasonable litigation costs incurred in this proceeding under 26 U.S.C. § 7430.

6.     Award plaintiffs Melba Abreu and Beatrice Hernandez judgment in the amount of $14,018, plus interest and costs as allowed by law, and such other relief as this

Court may deem just, including the award of reasonable litigation costs incurred in this proceeding under 26 U.S.C. § 7430.

       7.      Award plaintiffs Marlin Nabors and Jonathan Knight judgment in the amount of $2,520, plus interest and costs as allowed by law, and such other relief as this Court may deem just, including the award of reasonable litigation costs incurred in this proceeding under 26 U.S.C. § 7430.

       8.      Award Mary Bowe-Shulman and Dorene Bowe-Shulman judgment in the amount of $3,332, plus interest and costs as allowed by law, and such other relief as this Court may deem just, including the award of reasonable litigation costs incurred in this proceeding under 26 U.S.C. § 7430.

       9.      Award attorney's fees and costs to plaintiffs pursuant to 28 U.S.C. § 2412 or any other applicable statutory provision.

      10.     Grant such other relief as is just and appropriate.

> NANCY GILL & MARCELLE LETOURNEAU
> MARTIN KOSKI & JAMES FITZGERALD
> DEAN HARA
> MARY RITCHIE & KATHLEEN BUSH
> MELBA ABREU & BEATRICE HERNANDEZ
> MARLIN NABORS & JONATHAN KNIGHT
> MARY BOWE-SHULMAN &
> DORENE BOWE-SHULMAN
> JO ANN WHITEHEAD & BETTE JO GREEN
> RANDELL LEWIS-KENDELL, AND
> HERBERT BURTIS
>
> By their attorneys,
>
> GAY & LESBIAN ADVOCATES &
>    DEFENDERS
>
> /s/ Gary D. Buseck
> Gary D. Buseck, BBO # 067540
> gbuseck@glad.org

Mary L. Bonauto, BBO # 549967
mbonauto@glad.org
Nima R. Eshghi, BBO # 633716
neshghi@glad.org
Janson Wu, BBO # 600949
jwu@glad.org
30 Winter Street, Suite 800
Boston, MA  02108
(617) 426-1350

FOLEY HOAG LLP

/s/  Claire Laporte
Claire Laporte, BBO # 554979
claporte@foleyhoag.com
Vickie L. Henry, BBO # 632367
vhenry@foleyhoag.com
Matthew Miller, BBO # 655544
mmiller@foleyhoag.com
Amy Senier, BBO # 672912
asenier@floeyhoag.com
Stacy Anderson, BBO # 674697
sanderson@foleyhoag.com
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA  02210-2600
(617) 832-1000

JENNER & BLOCK

/s/  Paul M. Smith
Paul M. Smith, (pro hac vice in process)
psmith@jenner.com
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
(202) 639-6060

AS TO PLAINTIFFS
MARY RITCHIE & KATHLEEN BUSH,
MELBA ABREU & BEATRICE HERNANDEZ,
MARLIN NABORS & JONATHAN KNIGHT
MARY BOWE-SHULMAN &
DORENE BOWE-SHULMAN

SULLIVAN & WORCESTER LLP

/s/  David J. Nagle
David J. Nagle, BBO # 638385
dnagle@sandw.com
Richard L. Jones, BBO # 631273
rjones@sandw.com
One Post Office Square
Boston, MA  02109
(617) 338-2800

DATED:  July 31, 2009

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 31, 2009.

/s/  Gary D. Buseck
Gary D. Buseck

111