# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| NANCY GILL & MARCELLE LETOURNEAU, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| OFFICE OF PERSONNEL MANAGEMENT, et al., | ) ) ) |
| Defendants. | ) ) |

Case No. 1:09-cv-10309 JLT

_____

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

TONY WEST
Assistant Attorney General

MICHAEL K. LOUCKS
Acting United States Attorney

ARTHUR R. GOLDBERG
Assistant Director

W. SCOTT SIMPSON
Senior Trial Counsel

Attorneys, Department of Justice
Civil Division, Room 7210
Post Office Box 883
Washington, D.C. 20044
Telephone:     (202) 514-3495
Facsimile:     (202) 616-8470
E-mail:         scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.     The Defense of Marriage Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    II.    The Federal Programs Involved Here . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          A.     Health Benefits Based on Federal Employment . . . . . . . . . . . . . . . . . . 6

               1.     Federal Employees Health Benefits Program ("FEHB") . . . . . . . . 6

               2.     Federal Employees Dental and Vision Insurance
                      Program ("FEDVIP") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

               3.     Flexible Spending Arrangement Program . . . . . . . . . . . . . . . . . . . 9

          B     Social Security Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

               1.     Retirement Benefits for Aged Wives and Husbands . . . . . . . . . . 10

               2.     Social Security Survivor Benefits . . . . . . . . . . . . . . . . . . . . . . . . 10

                    a.     Lump-Sum Death Benefit . . . . . . . . . . . . . . . . . . . . . . . . 10

                    b.     Widower's Insurance Benefit . . . . . . . . . . . . . . . . . . . . . 11

          C.     Filing Status Under the Internal Revenue Code . . . . . . . . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    I.     All of the Plaintiffs Have Failed to State a Claim on Which Relief
          Can Be Granted Because the Defense of Marriage Act Is Consistent with
          Prevailing Equal Protection Case Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          A.     There Is No Fundamental Right to Federal Benefits
                   Based on Marital Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

          B.     Under First Circuit Law, DOMA Does Not Rest on Any
                   Recognized Suspect Classification . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

C.      DOMA Satisfies Rational Basis Review . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

II.      OPM Is Bound by the Definition of "Member of Family" in the FEHB . . . . . . . 19

III.     Certain of the Plaintiffs Lack Standing to Pursue Some
         of Their Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

         A.      A Ruling Regarding DOMA Would Not Redress Plaintiff
                 Dean Hara's Inability to Enroll in the FEHB . . . . . . . . . . . . . . . . . . . . . 23

         B.      Plaintiffs Gill and Letourneau Lack Standing to Make
                 any Claim Regarding OPM's Flexible Spending
                 Arrangement Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

<u>INTRODUCTION</u>

This case involves the constitutionality of Section 3 of the Defense of Marriage Act ("DOMA") as applied to the plaintiffs, who are seven same-sex couples married in Massachusetts and three survivors of same-sex spouses, also married in Massachusetts. As the President has stated previously, this Administration does not support DOMA as a matter of policy, believes that it is discriminatory, and supports its repeal. Consistent with the rule of law, however, the Department of Justice has long followed the practice of defending federal statutes as long as reasonable arguments can be made in support of their constitutionality, even if the Department disagrees with a particular statute as a policy matter, as it does here.[1] The law of this Circuit requires that this Court find that DOMA is constitutionally permissible because Congress could reasonably have concluded that DOMA is rationally related to legitimate governmental interests.

Plaintiffs allege that they have been denied the benefits of certain federal statutes because of DOMA – specifically, enrollment in the Federal Employees Health Benefits Program ("FEHB") and other health programs for federal employees and their families, certain retirement and survivor benefits under the Social Security Act, and the filing of federal income tax returns in a "married filing jointly" status. Plaintiffs allege that DOMA and the resulting denials violate the equal protection principles embodied in the Due Process Clause. Plaintiffs also assert that the statutes governing the FEHB should be interpreted as permitting enrollment of same-spouse spouses notwithstanding DOMA.

---

[1] This longstanding and bipartisan tradition accords the respect appropriately due to a co-equal branch of government and ensures that subsequent administrations will faithfully defend laws with which they may disagree on policy grounds.

Congress passed DOMA in 1996, at a time when States and their citizens were just beginning to address the legal status of same-sex marriage. Since that time, six States have enacted statutes or issued court decisions that permit (or will soon permit) same-sex marriage, and forty States have promulgated statutes or constitutional amendments that define marriage as between a man and a woman. DOMA reflects Congress's response to this still-evolving debate among the States regarding same-sex marriage.

Consistent with our federal system, which allows each State to design its own policies, see New State Ice Co. v. Liebmann, 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting), DOMA does not address whether a same-sex couple may marry within the United States. Instead, it permits each State to decide that question for itself. Section 3 of DOMA, in turn, addresses the effect of new state understandings of marriage on federal programs that presently tie entitlement to certain benefits to marital status.

Congress has long conferred various financial and other benefits on the basis of marriage in light of the central role the institution has played in advancing a variety of societal interests. When States began to consider allowing gay and lesbian couples to marry, Congress effectively adopted the status quo. It codified, for purposes of federal benefits, a definition of marriage that all fifty States had adopted (i.e., the union of a man and a woman) and continued to accord financial and other benefits on the basis of that understanding.

Although it denies same-sex couples certain federal benefits, DOMA – like all federal statutes – is entitled to a presumption of constitutionality. DOMA does not preclude States from recognizing same-sex marriage. It does not rely on any classifications a federal court has recognized as suspect under existing precedent. Nor have federal courts found a fundamental right to the marriage-based federal benefits it restricts. Accordingly, DOMA need not be

reviewed with heightened scrutiny. Properly understood, the right at issue in this case is not the right to marry (plaintiffs have married in Massachusetts), but a right to receive certain federal benefits on the basis of marriage. No court has found such a right to federal benefits to be fundamental – and the federal courts that have considered the question in the context of DOMA itself have rejected such a claim. Likewise, the First Circuit has held that sexual orientation is not a suspect classification, and heightened scrutiny is not appropriate on that basis.

DOMA therefore must be analyzed under rational basis review. Under this deferential standard, a court may not act as superlegislature, sitting in judgment on the wisdom or fairness of a legislative policy. Instead, a legislative policy must be upheld so long as there is any reasonably conceivable set of facts that could provide a rational basis for it, including ones that Congress itself did not advance or consider. DOMA satisfies this standard.

Congress is entitled under the Constitution to address issues of social reform on a piecemeal, or incremental, basis. Congress is therefore permitted to provide benefits only to those who have historically been permitted to marry, without extending the same benefits to those only recently permitted to do so. Its decision to maintain the federal status quo while preserving the ability of States to grant marriage rights to same-sex couples is rational. Congress may subsequently decide to extend federal benefits to same-sex marriages, and this Administration believes that Congress should do so. But its decision not to do so to this point is not irrational or unconstitutional.

Aside from the merits of plaintiffs' constitutional claims, their assertion regarding the interpretation of the FEHB statute is without merit, and some of plaintiffs' claims are barred by lack of standing. Enrollment in the FEHB is clearly limited, by statute, to members of an employee's family, and the explicit statutory definition of "member of family" includes the term

"spouse" defined by DOMA. As for standing, a ruling regarding DOMA's constitutionality would not redress plaintiff Dean Hara's inability to enroll in the FEHB because he fails to allege that he is receiving a survivor annuity under the Civil Service Retirement System as necessary to be eligible for FEHB enrollment, 5 U.S.C. § 8901(3)(B), (5), and only the United States Court of Appeals for the Federal Circuit has judicial jurisdiction to adjudicate his entitlement to a survivor annuity. Plaintiffs Nancy Gill and Marcelle Letourneau lack standing to challenge the Flexible Spending Arrangement program administered by the Office of Personnel Management because that program does not cover employees of the United States Postal Service such as Ms. Gill.

Accordingly, all of plaintiffs' claims in this action should be dismissed.

BACKGROUND

I.       THE DEFENSE OF MARRIAGE ACT

In 1996, Congress enacted, and President Clinton signed into law, the Defense of Marriage Act, Pub. L. No. 104-199, 110 Stat. 2419 (1996). Section 2 of DOMA provides that "[n]o State . . . shall be required to give effect to any public act, record, or judicial proceeding of any other State . . . respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other State." 28 U.S.C. § 1738C. Section 3 of DOMA defines the terms "marriage" and "spouse," for purposes of federal law, to include only the union of one man and one woman. Specifically, it provides that:

> In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word "marriage" means only a legal union between one man and one woman as husband and wife, and the word "spouse" refers only to a person of the opposite sex who is a husband or wife.

1 U.S.C. § 7.

The House Judiciary Committee explained in its report that DOMA was enacted following the decision in Baehr v. Lewin, 852 P.2d 44 (Haw. 1993), in which a plurality of the Hawaii Supreme Court concluded that the definition of marriage under Hawaii law (as the union of one man and one woman) might warrant heightened scrutiny under the State constitution. See H.R. Rep. No. 104-664, at 2, reprinted in 1996 U.S.C.C.A.N. 2905, 2906. In response, Congress sought both to "preserve[] each State's ability to decide" what should constitute a marriage under its own laws and to "lay[] down clear rules" regarding what constitutes a marriage for purposes of federal law. Id. In enacting Section 2 of DOMA, Congress relied on its "express grant of authority," under the second sentence of the Constitution's Full Faith and Credit Clause, "to prescribe the effect that public acts, records, and proceedings from one State shall have in sister States," id. at 25, reprinted in 1996 U.S.C.C.A.N. at 2930, and preserved the power of the States to decline to give effect to the laws of other States respecting same-sex marriage. In relation to Section 3 of DOMA, the Committee noted that the statute codifies, for purposes of federal law, the definition of marriage set forth in "the standard law dictionary." Id. at 29, reprinted in 1996 U.S.C.C.A.N. at 2935 (citing Black's Law Dictionary 972 (6th ed. 1990)).

II.   THE FEDERAL PROGRAMS INVOLVED HERE

Plaintiffs allege that they have sought benefits or other relief under a number of federal programs or statutes and have been denied such benefits or relief due to the Defense of Marriage Act. Specifically, several of the plaintiffs seek benefits under health benefits programs for federal employees and their family members and/or programs for workers' retirement and survivors' benefits. Other plaintiffs seek to file their federal income tax returns under a certain filing status. As relief, plaintiffs seek a declaration that DOMA is "unconstitutional as applied to the plaintiffs"; an injunction ordering the Commissioner of Social Security "to review the

applications for benefits of plaintiffs Jo Ann Whitehead, Randy Lewis-Kendell, Herb Burtis, and Dean Hara without regard to DOMA"; and an order awarding tax refunds from the Internal Revenue Service as a result of plaintiffs' change in filing status (First Amended and Supplemental Complaint (Doc. 18) at 108-09). Each of the programs involved here is described below, along with the governing statutes and regulations.

A.     Health Benefits Based on Federal Employment

Plaintiffs' allegations in this case encompass three federal health benefits programs – the Federal Employees Health Benefits Program, the Federal Employees Dental and Vision Insurance Program ("FEDVIP"), and the federal Flexible Spending Arrangement program. Plaintiff Nancy Gill, an employee of the United States Postal Service, seeks to add her spouse, Marcelle Letourneau, as a beneficiary under Ms. Gill's existing self-and-family enrollment in the FEHB; to add Ms. Letourneau to FEDVIP; and to use her flexible spending account for Ms. Letourneau's medical expenses. Plaintiff Martin Koski, a former employee of the Social Security Administration, seeks to change his "self only" enrollment in the FEHB to a self-and-family enrollment in order to include his spouse, James Fitzgerald. And plaintiff Dean Hara seeks enrollment in the FEHB as the survivor of his spouse, Representative Gerry Studds.

1.     Federal Employees Health Benefits Program ("FEHB")

The Federal Employees Health Benefits Program is a comprehensive program of health insurance for federal civilian employees, annuitants, former spouses of employees and annuitants, and their family members.[2] 5 U.S.C. § 8905. The program was created by the Federal Employees Health Benefits Act, which establishes eligibility for enrollment, types of plans and benefits, and qualifications for the private insurance carriers that provide coverage

---

[2] "Employee" is defined as including a Member of Congress. 5 U.S.C. § 8901(1)(B).

under the program.  Id. §§ 8901-8914.  The FEHB is administered by the defendant Office of

Personnel Management, which negotiates and enters into contracts with carriers and sets the

premiums for each plan.  Id. §§ 8902, 8903, 8906.  OPM is also authorized to "prescribe

regulations necessary to carry out" the program, including regulations prescribing "the time at

which and the manner and conditions under which an employee is eligible to enroll" and "the

beginning and ending dates of coverage of employees, annuitants, members of their families, and

former spouses."  Id. § 8913.  Premiums in the FEHB are paid by both the government and the

enrollees.  Id. § 8906.

   An enrollee in the FEHB chooses the carrier and plan in which to enroll, as well as

whether to enroll for individual ("self only") coverage or for "self and family" coverage.  Id.

§§ 8905, 8906.  Under OPM's regulations, "[a]n enrollment for self and family includes all

family members who are eligible to be covered by the enrollment."  5 C.F.R. § 890.302(a)(1).

An employee enrolled in the FEHB for "self only" coverage may change to "self and family"

coverage by submitting documentation to the employing office during an annual "open season"

or within 60 days after a change in family status, "including a change in marital status."  See 5

U.S.C. § 8905(f); 5 C.F.R. § 890.301(f), (g).

   An "annuitant" eligible for coverage under the FEHB is, generally speaking, either an

employee who retires on a federal annuity, or "a member of a family who receives an immediate

annuity as the survivor of an employee . . . or of a retired employee . . . ."  See 5 U.S.C.

§ 8901(3)(B).  Thus, to be covered under the FEHB, anyone who is not a current federal

employee or the family member of a current employee must be eligible for a federal annuity,

either as a former employee or as the survivor of an employee or former employee.  A "member

of family" – for purposes of eligibility for coverage as an annuitant as well as for coverage under

"self and family" enrollment – is defined as either "the spouse of an employee or annuitant [or] an unmarried dependent child under 22 years of age . . . ." Id. § 8901(5). When a federal employee or annuitant dies under "self and family" enrollment in FEHB, the enrollment is "transferred automatically to his or her eligible survivor annuitants." See 5 C.F.R. § 890.303(c).

2.     Federal Employees Dental and Vision Insurance Program ("FEDVIP")

The Federal Employees Dental and Vision Insurance Program provides enhanced dental and/or vision coverage for federal civilian employees, annuitants, and their family members to supplement health insurance coverage under the FEHB. 5 U.S.C. §§ 8951, 8952, 8981, 8982. The program was created by the Federal Employee Dental and Vision Benefits Enhancement Act of 2004, which establishes eligibility for enrollment and the types of benefits available. Id. §§ 8951, 8954, 8981, 8984. The FEDVIP is administered by OPM, which negotiates and enters into contracts with qualified companies and sets the premiums. Id. §§ 8952(a), 8953, 8982(a), 8983. OPM is also authorized to "prescribe regulations to carry out" the program. Id. §§ 8962(a), 8992(a). Persons enrolled in the FEDVIP pay 100% of the premiums. Id. §§ 8958(a), 8988(a).

An enrollee in FEDVIP chooses the plan in which to enroll, as well as whether to enroll for "self-only," "self plus one," or "self and family" coverage. Id. §§ 8956(a), 8986(a); see 5 C.F.R. § 894.201(b). Under OPM's regulations, an enrollment for "self and family" "covers the enrolled employee or annuitant and all eligible family members." Id. § 894.201(c). An employee enrolled in FEDVIP for "self only" coverage may change to "self and family" coverage during an annual "open season" or within 60 days after a "qualifying life event," including marriage or "acquiring an eligible child." Id. 894.509(a), (b). The concepts

"annuitant" and "member of family" have the same meaning in the FEDVIP as they do in the FEHB. See 5 U.S.C. §§ 8951(2), 8991(2).

### 3. Flexible Spending Arrangement Program

A flexible spending arrangement ("FSA") allows employees to set aside a portion their earnings for certain types of out-of-pocket health care expenses. The money withheld for FSAs is not subject to income taxes. 26 U.S.C. § 125. OPM established the federal Flexible Spending Arrangement program in 2003. See 71 Fed. Reg. 66,827, 66,827 (Nov. 17, 2006). That program does not apply, however, to "[c]ertain executive branch agencies with independent compensation authority" – among them the United States Postal Service – which had already "established their own flexible benefits plans." Id.; see 68 Fed. Reg. 56,525 (Oct. 1, 2003).[3]

### B. Social Security Benefits

The Social Security Act ("Act") provides for, among other things, Retirement Benefits and Survivors' Benefits for eligible persons. The Act is administered by the Social Security Administration, headed by the defendant Commissioner of Social Security. 42 U.S.C. §§ 901, 902. The Commissioner is empowered to "make rules and regulations and to establish procedures, not inconsistent with the [pertinent] provisions of [the Social Security Act], which are necessary or appropriate to carry out such provisions." Id. § 405(a); see id. § 902(a)(5).

A number of the plaintiffs in this action seek certain Social Security Benefits under the Act based on marriage to a same-sex spouse. Specifically, Jo Ann Whitehead seeks the Wife's Benefits on the earnings record of her spouse, Bette Jo Green. Three of the plaintiffs – Dean

---

[3] Plaintiffs' First Amended and Supplemental Complaint refers to the "Federal Flexible Spending Account Program" (Doc. 18 ¶ 401, emphasis added). Although OPM and the Internal Revenue Service have occasionally used that term, the correct term now used by both agencies is "Flexible Spending Arrangement." The undefined term "HCFSA" used by the plaintiffs means "health care flexible spending arrangement" (id. ¶¶ 401, 410-12).

Hara, Randell Lewis-Kendell, and Herbert Burtis – seek Lump-Sum Death Benefits based on their marriages to same-sex spouses who are now deceased. In addition, Herbert Burtis seeks Widower's Insurance Benefits.

### 1. Retirement Benefits for Aged Wives and Husbands

The availability and amount of Social Security Retirement ("Old-Age") Benefits depend on an individual's lifetime earnings in employment or self-employment. Id. §§ 402, 413(a), 414, 415. Besides seeking Social Security Retirement Benefits based on one's own earnings, an individual can seek such benefits based on the earnings of his wife or her husband – that is, a Husband's or Wife's Insurance Benefits – if the claimant "is not entitled to old-age . . . insurance benefits [on his or her own account], or is entitled to old-age . . . insurance benefits based on a primary insurance amount which is less than one-half of the primary insurance amount of [his or her husband or wife]." Id. § 402(b), (c).[4]

### 2. Social Security Survivor Benefits

The Act also provides certain benefits to the surviving spouse of a wage earner. Two types of Social Security Survivor Benefits are implicated here – Lump-Sum Death Benefits and the Widower's Insurance Benefit.

### a. Lump-Sum Death Benefit

The Lump-Sum Death Benefit is available to the surviving widow or widower of an individual who has an adequate level of earnings from employment or self-employment. Id.

---

[4] Paragraph 556 of the First Amended and Supplemental Complaint erroneously cites 42 U.S.C. § 402(f) in relation to plaintiffs Jo Ann Whitehead and Bette Jo Green. That subsection, however, provides for "Widower's Insurance Benefits," for which neither Ms. Whitehead nor Ms. Green can be eligible since their spouses are still living. See id. § 416(g) (defining "widower").

§§ 402(I), 413(a), 414(a), (b).  The amount of the benefit is $255 or an amount based on the individual's earnings, whichever is smaller.  Id. §§ 402(I), 415(a).

b.      Widower's Insurance Benefit

Similarly, the Widower's Insurance Benefit is available to the surviving husband of an individual who has an adequate level of earnings from employment or self-employment.  Id. §§ 402(f), 413(a), 414(a), (b).[5]  The claimant, among other requirements, must not have "married" since the death of the individual (with some exceptions), must have attained the age set forth in the statute, and must be either "not entitled to old-age insurance benefits [on his own account], or . . . entitled to old-age insurance benefits each of which is less than the primary insurance amount . . . of such deceased individual . . . ."  Id. § 402(f)(1); see id. § 402(f)(3).

C.      Filing Status Under the Internal Revenue Code

The income tax imposed on an individual under the Internal Revenue Code depends partly on the taxpayer's "filing status."  A "married individual . . . who makes a single [tax] return jointly with his spouse" is generally subject to a lower tax than an "unmarried individual" or a "head of household."  26 U.S.C. § 1(a), (b), (c); see id. § 6013(a) ("A husband and wife may make a single return jointly of income taxes . . . even though one of the spouses has neither gross income nor deductions [subject to certain exceptions].").  "[I]f an individual has filed a separate return for a taxable year for which a joint return could have been made by him and his spouse," the couple may file a joint return within three years after the filing of the original returns.  Id.

---

[5] The Social Security Act also provides for a Widow's Insurance Benefit, see 42 U.S.C. § 402(e), but only the Widower's Insurance Benefit is cited here because the only plaintiff who seeks such benefits herein is a male (Herbert Burtis).  Paragraph 577 of the First Amended and Supplemental Complaint cites 42 U.S.C. § 402(g) in relation to Mr. Burtis's claim, but that subsection is irrelevant because it provides for "Mother's and Father's Insurance Benefits," and Mr. Burtis applied for benefits as a surviving spouse.

§ 6013(b)(1), (2).  If an amended return shows a lower tax due than the original return, the tax-payer may also file an administrative request for a refund to receive a refund of the difference.  Id. § 6511(a); see 26 C.F.R. § 301.6402-2(a)(1).

ARGUMENT

I.    ALL OF THE PLAINTIFFS HAVE FAILED TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED BECAUSE THE DEFENSE OF MARRIAGE ACT IS CONSISTENT WITH PREVAILING EQUAL PROTECTION CASE LAW

Plaintiffs allege that DOMA violates their right to equal protection under the Fifth Amendment.  In recent years, six States have guaranteed gay and lesbian couples the right to marry.  See HB 436, An Act Relative to Civil Marriage & Civil Unions, 2009 N.H. Laws ch. 59; LD 1020, An Act To End Discrimination in Civil Marriage & Affirm Religious Freedom, 2009 Me. Legis. Serv. ch. 82 (West); S. 115, An Act to Protect Religious Freedom & Recognize Equality in Civil Marriage, 2009 Vt. Acts & Resolves no. 3; Varnum v. Brien, 763 N.W.2d 862 (Iowa 2009); Kerrigan v. Comm'r of Pub. Health, 957 A.2d 407 (Conn. 2008); Goodridge v. Dep't of Pub. Health, 798 N.E.2d 941 (Mass. 2003).  In addition, one state – New York – and the District of Columbia recognize same-sex marriages performed under the laws of other jurisdictions, although neither presently issues marriage licenses to same-sex couples.  See D.C. Code § 46-405.01; Martinez v. County of Monroe, 50 A.D.3d 189 (N.Y. App. Div. 2008).  Forty other States have codified, either by statute or by constitutional amendment, a definition of marriage as the union of a man and a woman.  See Varnum, 763 N.W.2d at 878 n.5.

DOMA reflects what Congress believed was an appropriate response to this ongoing debate in the States.  It codifies, for purposes of federal statutes, regulations, and rulings, the understanding of marriage as "a legal union between one man and one woman as husband and wife," see 1 U.S.C. § 7, and it preserves to each State the ability to retain that definition as its

policy if the State so chooses, or to alter it, as it sees fit, see 28 U.S.C. § 1738C.  In enacting

DOMA, therefore, Congress (1) recognized the right of any State to allow gays and lesbians to

marry while, at the same time, it permitted other States to adhere to their existing understandings

of the institution, and (2) preserved the status quo in relation to the federal definition of

marriage, while the States continued to examine and debate the subject.

Under rational basis review, Congress is entitled to respond to new social mores one step

at a time and to adjust national policy incrementally.  DOMA reflects just such a response.  It

maintains the status quo on the national level and permits autonomy on the state level.  Plaintiffs

cannot overcome the "presumption of constitutionality" that DOMA, like all federal statutes,

enjoys.  See, e.g., Califano v. Gautier Torres, 435 U.S. 1, 5 (1978).  Congress could view

DOMA as rationally related to legitimate governmental interests.  The statute does not make a

distinction based on what the federal courts have held to constitute a "suspect class," see Toledo

v. Sánchez, 454 F.3d 24, 33 (1st Cir. 2006), nor have federal courts found a fundamental right to

the marriage-based federal benefits that DOMA restricts.  Those federal courts that have

specifically addressed the constitutionality of one or both sections of DOMA have upheld them

against constitutional challenges.[6]  This Court must do likewise here.

---

[6] See, e.g., Smelt v. County of Orange, 374 F. Supp. 2d 861 (C.D. Cal. 2005) (Section 3), vacated on other grounds, 447 F.3d 673 (9th Cir. 2006); Wilson v. Ake, 354 F. Supp. 2d 1298 (M.D. Fla. 2005) (Section 2 and Section 3); In re Kandu, 315 B.R. 123 (Bankr. W. D. Wash. 2004) (Section 3), appeal dismissed Kandu v. United States Trustee, Case No. 3:04-cv-05544-FDB (W.D. Wash.); see also Bishop v. Oklahoma, 447 F. Supp. 2d 1239 (N.D. Okla. 2006) (rejecting certain constitutional challenges but deferring others pending further development). But cf. In re Levenson, 560 F.3d 1145, 1149 (9th Cir. Jud. Council 2009) (Reinhardt, J.) (suggesting, in his capacity as designee of the Chair of the Ninth Circuit's Standing Committee on Federal Public Defenders, that DOMA should be subject to heightened scrutiny, and finding that its denial of federal benefits to the same-sex spouse of federal employee had "no rational basis" and therefore "contravene[d] the Fifth Amendment").

A.    There Is No Fundamental Right to Federal Benefits
              Based on Marital Status

Equal protection claims are typically subject to "rational basis" review, under which the

challenged statute will be upheld as long as it bears "a rational relationship to some legitimate

government interest."  See Campos v. INS, 961 F.2d 309, 316 (1st Cir. 1992).  Only if the statute

"burdens a suspect class or impinges upon a fundamental right" will it be subjected to a higher

standard of review.  See Toledo, 454 F.3d at 33.  DOMA deprives same-sex couples of certain

federal benefits that are tied to marital status.  There is no fundamental right, however, to

marriage-based federal benefits.

A fundamental constitutional right protected by the Due Process Clause is one that is

"objectively, deeply rooted in this Nation's history and tradition" and "implicit in the concept of

ordered liberty."  Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997).  The Supreme Court

has mandated extreme caution in elevating individual liberty interests, no matter how genuinely

and profoundly important they may be to the parties asserting them, to the status of fundamental

constitutional rights.  As the Court has explained:

> By extending constitutional protection to an asserted right or liberty interest, we,
> to a great extent, place the matter outside the arena of public debate and
> legislative action. We must therefore exercise the utmost care whenever we are
> asked to break new ground in this field, lest the liberty protected by the Due
> Process Clause be subtly transformed into the policy preferences of the Members
> of this Court.

Id. at 720 (citations and internal quotation marks omitted); see Williams v. Attorney Gen. of

Ala., 378 F.3d 1232, 1250 (11th Cir. 2004) (observing that conferring constitutional status on an

asserted right prevents future revision through democratic process).  Accordingly, only a "small

number" of substantive rights qualify under the Fifth Amendment as "fundamental."  United

States v. Deters, 143 F.3d 577, 582 (10th Cir. 1998).

A court must reach a "careful description" of the alleged right before determining whether it is fundamental. Glucksberg, 521 U.S. at 721. Most importantly, the asserted right must be defined with specificity, rather than in general terms. Only upon reaching this specific, "careful description" can a court proceed to determine whether the asserted right is fundamental.[7]

The asserted right on which plaintiffs' claims rest in this case is not a right to marry. DOMA does not prohibit gay and lesbian couples from marrying, nor does it prohibit the States from acknowledging same-sex marriages. Instead, plaintiffs' claims rest on an asserted right to receive federal benefits on the basis of their mutual status. There is, however, no fundamental right to marriage-based federal benefits. See, e.g., DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 196 (1989) (Due Process Clause "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual"); Lyng v. Automobile Workers, 485 U.S. 360, 368 (1987) (holding that a decision "not to subsidize the exercise of a fundamental right does not infringe the right"). Accordingly, the fact that DOMA denies marriage-based federal benefits to same-sex couples does not subject it to heightened scrutiny.

_____

[7] For example, in Washington v. Glucksberg, the right was not – properly characterized – a "right to die," but rather a "right to commit suicide." 521 U.S. at 722-23. Similarly, in Reno v. Flores, in which juvenile aliens challenged their detention by the government, the Supreme Court rejected an invitation to characterize the asserted right as "freedom from physical restraint," and instead characterized it as "the alleged right of a child who has no available parent, close relative, or legal guardian, and for whom the government is responsible, to be placed in the custody of a willing-and-able private custodian rather than of a government-operated or government-selected child-care institution." 507 U.S. 292, 302 (1993).

B.     Under First Circuit Law, DOMA Does Not Rest on Any
                 Recognized Suspect Classification

Plaintiffs assert that DOMA and its application to their various requests for federal

benefits demonstrate an "intent to discriminate against gay people" and constitute "federal

discrimination against gay and lesbian individuals married to someone of the same sex" (Doc. 18

¶¶ 1, 65). The First Circuit has concluded, however, that sexual orientation does not constitute a

suspect classification under the Fifth Amendment, and that holding is binding on this Court.

See Cook v. Gates, 528 F.3d 42, 62 (1st Cir. 2008) (rejecting challenge to "Don't Ask, Don't

Tell" policy regarding members of armed services); see also Cook v. Rumsfeld, 429 F. Supp. 2d

385, 397 (D. Mass. 2006) (noting that Supreme Court had avoided holding that gays and lesbians

constitute a suspect class in "cases where it might have agreed to such a holding"), aff'd, 528

F.3d 42, 62 (1st Cir. 2008); In re Kandu, 315 B.R. 123, 144 (Bankr. W. D. Wash. 2004) ("[T]he

Supreme Court did not hold [in Lawrence v. Texas, 539 U.S. 558, 578 (2003)] that same-sex

couples constitute a suspect or semi-suspect class under an equal protection analysis."), appeal

dismissed Kandu v. United States Trustee, Case No. 3:04-cv-05544-FDB (W.D. Wash.).

C.     DOMA Satisfies Rational Basis Review

In light of the foregoing analysis, DOMA is necessarily subject only to rational basis

review. See, e.g., Glucksberg, 521 U.S. at 728. The Supreme Court has described the elements

of rational basis review in Heller v. Doe:

> [R]ational-basis review . . . is not a license for courts to judge the wisdom,
> fairness, or logic of legislative choices. [A] classification neither involving
> fundamental rights nor proceeding along suspect lines is accorded a strong
> presumption of validity. Such a classification cannot [be found unconstitutional]
> if there is a rational relationship between the [challenged government action] and
> some legitimate governmental purpose. . . . [A] classification must be upheld . . .
> if there is any reasonably conceivable state of facts that could provide a rational
> basis for the classification.

> [The government], moreover, has <u>no</u> obligation <u>to produce evidence</u> to sustain the rationality of a statutory classification. A legislative choice is not subject to courtroom factfinding and may be <u>based on rational speculation</u> unsupported by evidence or empirical data. <u>[T]he burden is on the one attacking</u> the legislative arrangement to <u>negative every conceivable basis</u> which might support it, whether or not the basis has a foundation in the record. Finally, courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an <u>imperfect fit between means and ends</u>.

509 U.S. 312, 319-20 (1993) (emphases added) (citations and internal quotation marks omitted). As several federal circuits have held, a court applying rational basis review "may even hypothesize the motivations of the . . . legislature to find a legitimate objective promoted by the provision under attack." <u>Shaw v. Oregon Public Employees' Retirement Bd.</u>, 887 F.2d 947, 948-49 (9th Cir. 1989) (internal quotation marks omitted); <u>accord, e.g.</u>, <u>Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield</u>, 907 F.2d 239, 246 (1st Cir. 1990) ("question is only whether a rational relationship exists between the [law] and a <u>conceivable</u> legitimate governmental objective") (emphasis in original); <u>Lamers Dairy Inc. v. USDA</u>, 379 F.3d 466, 473 (7th Cir. 2004); <u>United States v. Pollard</u>, 326 F.3d 397, 408 (3d Cir. 2003); <u>Haves v. City of Miami</u>, 52 F.3d 918, 922 (11th Cir. 1995). This test imposes a "very difficult burden" on the plaintiffs, <u>United States v. Phelps</u>, 17 F.3d 1334, 1345 (10th Cir. 1994); rational basis analysis is "a paradigm of judicial restraint." <u>FCC v. Beach Communications, Inc.</u>, 508 U.S. 307, 314 (1993); <u>see</u> <u>Cook</u>, 429 F. Supp. 2d at 397 ("The Supreme Court has repeatedly emphasized the deferential nature of rational-basis review.").

DOMA withstands review under this deferential standard. DOMA was enacted in 1996, as the debate regarding marriage equality was just beginning in the States. At that time, no State had actually permitted gay and lesbian couples to marry. In the intervening years, six States have enacted statutes or issued court decisions that permit (or will soon permit) same-sex

17

marriage.[8]  On the other hand, 29 States have promulgated constitutional amendments that limit marriage to opposite-sex couples, and 11 more States have enacted statutes to the same effect.

As the state legislative and constitutional activity in the years since DOMA was enacted demonstrates, same-sex marriage is a contentious social issue.  Given the evolving nature of this issue, Congress was constitutionally entitled to maintain the status quo pending further evolution in the states.  Otherwise, "marriage" and "spouse" for the purposes of federal law would depend on the outcome of this debate in each State, with the meanings of those terms under federal law potentially changing with any change in the status of the debate in a given State.  Federal rights would vary dramatically from State to State.  Congress could reasonably have concluded that there is a legitimate government interest in maintaining the status quo and preserving nationwide consistency in the distribution of marriage-based federal benefits.[9]

Rational basis review recognizes that the legislature is entitled to respond to new social phenomena one step at a time and to adjust national policy incrementally.  See Medeiros v. Vincent, 431 F.3d 25, 31-32 (1st Cir. 2005) ("[A] statute or regulation is not lacking in a rational basis simply because it addresses a broader problem in small or incremental stages.  It is only necessary that there be some rational relation between the method chosen and the intended result.") (citation omitted); accord Butler v. Apfel, 144 F.3d 622, 625 (9th Cir.1998) ("[R]eform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.").  As the Supreme Court has observed, legislatures may "refin[e]

_____

[8]  Those States are New Hampshire, Maine, Vermont, Iowa, Connecticut, and Massachusetts.

[9] As noted above, for purposes of rational basis review, it is irrelevant whether this was Congress's "true" reason for enacting DOMA.  See Smithfield Concerned Citizens for Fair Zoning, 907 F.2d at 246.

their preferred approach as circumstances change and as they develop a more-nuanced

understanding of how best to proceed." Massachusetts v. EPA, 549 U.S. 497, 524 (2007); see

SEC v. Chenery Corp., 332 U.S. 194, 202 (1947) ("Some principles must await their own

development, while others must be adjusted to meet particular, unforeseeable situations.").

DOMA reflects just such a response. It maintains the status quo on the national level and

permits autonomy and legal evolution on the state level.[10]

II.     OPM IS BOUND BY THE DEFINITION OF "MEMBER OF FAMILY" IN THE FEHB

        In addition to their constitutional claims, plaintiffs make a statutory claim regarding the

language of the Federal Employees Health Benefits Act. Plaintiffs Gill and Koski seek enroll-

ment in the FEHB for their same-sex spouses, and plaintiff Hara seeks enrollment as the survivor

---

[10] In this case, the government does not rely on certain purported interests set forth in the legislative history of DOMA, including the purported interests in "responsible procreation and child-rearing" – that is, the assertions that (1) the government's interest in "responsible procreation" justifies limiting marriage to a union between one man and one woman, and (2) that the government has an interest in promoting the raising of children by both of their biological parents. See H.R. Rep. No. 104-664, at 12-13, reprinted in 1996 U.S.C.C.A.N. at 2916-17. Since the enactment of DOMA, many leading medical, psychological, and social welfare organizations have issued policies opposing restrictions on lesbian and gay parenting upon concluding, based on numerous studies, that children raised by gay and lesbian parents are as likely to be well-adjusted as children raised by heterosexual parents. See American Academy of Pediatrics, http://aappolicy.aappublications.org/cgi/content/full/pediatrics;109/2/339 (February 2002 policy statement); American Psychological Association, http://www.apa.org/pi/lgbc/policy/parents.html (July 2004 policy statement); American Academy of Child and Adolescent Psychiatry, http://www.aacap.org/cs/root/policy_statements/gay_lesbian_transgender_and_bisexual_parents_policy_statement (June 1999 policy statement); American Medical Association, http://www.ama-assn.org/ama/pub/about-ama/our-people/member-groups-sections/glbt-advisory-committee/ama-policy-regarding-sexual-orientation.shtml (AMA Policy Regarding Sexual Orientation); Child Welfare League of America, http://www.cwla.org/programs/culture/glbtqposition.htm (Position Statement on Parenting of Children by Lesbian, Gay, and Bisexual Adults). Furthermore, in Lawrence v. Texas, 539 U.S. 558, 605 (2003), Justice Scalia acknowledged in his dissent that encouraging procreation would not be a rational basis for limiting marriage to opposite-sex couples under the reasoning of the Lawrence majority opinion – which, of course, is the prevailing law – because "the sterile and the elderly are allowed to marry." Thus, the government does not believe that DOMA can be justified by interests in "responsible procreation" or "child-rearing."

of a same-sex spouse. As explained above, "[a]n enrollment [in the FEHB] for self and family includes all <u>family members</u> who are eligible to be covered by the enrollment." 5 C.F.R. § 890.302(a)(1) (emphasis added). A "member of family" is defined as either "the <u>spouse</u> of an employee or annuitant [or] an unmarried dependent child under 22 years of age . . . ." 5 U.S.C. § 8901(5) (emphasis added). The FEDVIP, in which Ms. Gill seeks enrollment for her spouse, incorporates the same language. Since DOMA limits the term "spouse" for purposes of federal law to "a person of the opposite sex who is a husband or wife," 1 U.S.C. § 7, Mr. Hara and the same-sex spouses of Ms. Gill and Mr. Koski are ineligible for enrollment in the FEHB (and the FEDVIP) for this reason.

Notwithstanding this statutory language, plaintiffs assert that OPM has authority to extend FEHB benefits to same-sex spouses – that OPM's understanding to the contrary "reflects an improper and overly narrow construction of the permissible bounds of OPM's authority to extend coverage to family members" (Doc. 18 ¶¶ 418, 430, 453). In plaintiffs' view, the terms "family members" and "member of family" in the above statutes "set general guidelines and minimum requirements of coverage availability but do not establish absolute ceilings or outer boundaries of coverage" (<u>id.</u> ¶¶ 419, 431, 454). Plaintiffs Gill and Letourneau also appear to make this argument in relation to the FEDVIP (<u>id.</u> ¶¶ 417-19). As relief, plaintiffs seek a declaration "that the FEHB Program . . . and the FEDVIP Program permit coverage of same-sex spouses under their authorizing statutes and regulations" (<u>id.</u> at 108).[11]

Plaintiffs' argument is incorrect. Congress's specific definition of "member of family" must be understood as encompassing the universe of persons who are eligible under that rubric.

---

[11] This request for relief also purports to encompass the Flexible Spending Arrangement program – the program administered by OPM (Doc. 18 at 108 & ¶ 401). As explained above, however, the OPM program does not apply to Ms. Gill as an employee of the Postal Service.

Where Congress "explicitly enumerates," the enumeration is usually construed as exclusive; this concept is so well established as to be represented by a maxim of statutory construction, "expressio unius est exclusio alterius" (expression of one thing is the exclusion of the other). See TRW Inc. v. Andrews, 534 U.S. 19, 28-29 (2001). Further bolstering this textual reading, Congress amended the FEHB Act in 1984 to provide specific coverage for the "former spouse" of an employee or annuitant whose marriage to the employee or annuitant has been dissolved by divorce or annulment. See 5 U.S.C. §§ 8901(10), 8905(c); see also Pub. Law No. 98-615, § 3, 98 Stat. 3195, 3202 (1984); H.R. Report No. 98-1054 at 12, reprinted in 1984 U.S.C.C.A.N. 5540, 5543 (observing that amendment was necessary because "[a]fter divorce, the former spouse no longer has access to health insurance coverage provided under the Federal employees health benefits program").

III.     CERTAIN OF THE PLAINTIFFS LACK STANDING TO
         PURSUE SOME OF THEIR CLAIMS

        Aside from the lack of merit in their claims, certain of the plaintiffs lack standing to pursue some of their claims. The power of federal courts extends only to "Cases" and "Controversies," see U.S. Const. art. III, § 2, and a litigant's standing to sue is "an essential and unchanging part of the case-or-controversy requirement." See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). To satisfy this requirement, a plaintiff must demonstrate, as the "irreducible constitutional minimum" of standing to sue, an "injury in fact," a "fairly traceable" causal connection between the injury and defendant's conduct, and redressability. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102-03 (1998); see also Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004) ("The plaintiff must show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress."). The injury needed for constitutional standing must be "concrete," "objective," and "palpable,"

not merely "abstract" or "conjectural."  See Whitmore v. Arkansas, 495 U.S. 149, 155 (1990); Bigelow v. Virginia, 421 U.S. 809, 816-17 (1975).

The redressability element is not satisfied unless plaintiff shows "a likelihood that the requested relief will redress the alleged injury."  Steel Co., 523 U.S. at 103; accord Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 38 (1976) (relief must be "likely" to redress injury).  Standing will not be found, therefore, if it is "speculative whether the desired exercise of the court's remedial powers . . . would result" in the relief sought by plaintiffs.  Id. at 43.  The standing inquiry, moreover, must be "especially rigorous when," as here, "reaching the merits of the dispute would force [a court] to decide whether an action taken by [another] branch[ ] of the federal Government was unconstitutional."  Raines v. Byrd, 521 U.S. 811, 819-20 (1997).  If the plaintiff lacks standing, the court lacks subject matter jurisdiction.  See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) ("standing 'is perhaps the most important of [the jurisdictional] doctrines'") (quoting Allen v. Wright, 468 U.S. 737, 750 (1984)).

Under these principles, certain of the plaintiffs in this case lack standing to pursue some of their claims because they fail one or more of the elements of standing – that is, concrete injury, causation, and/or redressability.  Specifically, plaintiff Dean Hara lacks standing to challenge the application of DOMA to enrollment in the FEHB because he fails to fulfill certain statutory requirements of the FEHB, such that a ruling against DOMA would not redress his inability to enroll in the program.  And plaintiffs Nancy Gill and Marcelle Letourneau lack standing to make any claim regarding the Flexible Spending Arrangement program administered by the Office of Management and Budget because that program does not apply to an employee of the United States Postal Service like Ms. Gill.

A.     A Ruling Regarding DOMA Would Not Redress Plaintiff
       Dean Hara's Inability to Enroll in the FEHB

Plaintiff Dean Hara complains that he has been unable to enroll in the Federal Employees

Health Benefits Program, alleging that "[u]nder pertinent FEHB statutory and regulatory

provisions, [he] would be able to receive health insurance coverage but for OPM's application of

DOMA" (Doc. 18 ¶ 452).  A prerequisite to receiving the FEHB benefits he seeks, however, is

that he be an "annuitant" under federal retirement laws.  Mr. Hara does not and could not ask this

Court to rule regarding his eligibility for an annuity because, as explained below, judicial review

of such claims is within the exclusive jurisdiction of the United States Court of Appeals for the

Federal Circuit.  In fact, Mr. Hara currently is pursuing his eligibility for an annuity before that

court.  Unless and until the Federal Circuit issues a ruling in his appeal holding that he is a

qualified annuitant, a ruling by this Court regarding DOMA would not redress Mr. Hara's

inability to enroll in the FEHB.

An "annuitant" eligible for enrollment in the FEHB is, generally speaking, either an

employee who retires on a federal annuity, or "a member of a family who receives an immediate

annuity as the survivor of an employee . . . or of a retired employee."  5 U.S.C. § 8901(3)(B).

Contingent upon meeting the applicable requirements regarding age and length of service, a

former federal employee or Member of Congress may qualify for an annuity under the Civil

Service Retirement System ("CSRS"), and, under certain circumstances, the surviving "spouse"

of a federal annuitant may receive a survivor annuity after the death of the employee or Member.

Id. §§ 8333, 8341;[12] see id. § 8331(2) (defining "Member" of Congress).[13]  If the employee and

_____

[12] Federal retirement is governed by two different sets of statutes – either the CSRS or the
Federal Employees' Retirement System – depending on when the employee began federal
service and other factors.  See 5 U.S.C. § 8402(b).  Plaintiffs allege that Congressman Studds
"was a participant in the Civil Service Retirement System" (Doc. 18 ¶ 156).  Accordingly, the

surviving spouse married <u>after</u> the employee's retirement from federal service, one requirement

for a survivor annuity is that the employee must have elected a reduced annuity for himself or

herself, "in a signed writing received [by OPM] within 2 years after such employee or Member

marries." <u>Id.</u> § 8339(k)(2)(A). That is, in order to provide a survivor annuity for a spouse

acquired after retirement, the former employee must elect to reduce his or her own annuity. <u>Id.</u>

§ 8339(k); <u>see</u> 5 C.F.R. § 831.631(b).

All annuity claims and elections under the CSRS are submitted to the Office of Personnel

Management ("OPM"). 5 U.S.C. § 8347(b); 5 C.F.R. § 831.104(a). If OPM denies the claim or

rejects the election, a claimant or retiree may seek reconsideration "within 30 calendar days from

the date of the original decision." <u>Id.</u> § 831.109(d), (e). OPM's decision on reconsideration may

be appealed to the Merit Systems Protection Board ("MSPB") within 30 days. 5 U.S.C.

§ 8347(d)(1); 5 C.F.R. §§ 831.110, 1201.22(b)(1). Judicial review of a decision by the MSPB

lies exclusively in the United States Court of Appeals for the Federal Circuit, and must be sought

within 60 days after receipt of the MSPB decision. 5 U.S.C. § 7703(b)(1); 28 U.S.C.

§ 1295(a)(9). The Supreme Court has held that this review process for annuity decisions is

exclusive. <u>See</u> <u>Lindahl v. OPM</u>, 470 U.S. 768, 775, 791-99 (1985) (holding that review of

federal disability retirement claims lies exclusively in Federal Circuit); <u>see also</u> <u>Fornaro v.</u>

<u>James</u>, 416 F.3d 63, 66 (D.C. Cir. 2005) ("The [Civil Service Retirement Act] specifies the

benefits to which federal employees and their survivors are entitled, and provides a reticulated

statutory sections cited in this discussion are those of the CSRS.

[13] For linguistic simplicity, this discussion will use "employee" to mean both Executive
Branch employees and Members of Congress.

remedial regime for beneficiaries to secure review – including judicial review – of benefits

determinations.").

Consistent with this remedial scheme, only the Federal Circuit has jurisdiction to

determine whether the survivor of a federal employee qualifies as a federal annuitant.  In fact,

Mr. Hara's claim of entitlement to a survivor annuity is currently pending before the United

States Court of Appeals for the Federal Circuit on plaintiff's appeal from a decision by the

Merits Systems Protection Board, but "[t]he appellate process in the Federal Circuit . . . has been

stayed pending disposition of this action" (Doc. 18 ¶¶ 171-79).[14]  Until that court determines that

Mr. Hara is an "annuitant," he cannot be eligible for enrollment in the FEHB.  See 5 U.S.C.

§ 7703(b)(1); 28 U.S.C. § 1295(a)(9).

B.      Plaintiffs Gill and Letourneau Lack Standing to Make any Claim
        Regarding OPM's Flexible Spending Arrangement Program

Plaintiff Nancy Gill complains of her inability to use her flexible spending account for

the medical expenses of her spouse, plaintiff Marcelle Letourneau (Doc. 18 ¶¶ 6, 104).  As noted

above, the Office of Personnel Management administers a Flexible Spending Arrangement

program for federal employees generally.  See 71 Fed. Reg. 66,827 (Nov. 17, 2006).  Although

the First Amended and Supplemental Complaint is not entirely clear in this regard, plaintiffs Gill

and Letourneau apparently seek relief regarding this program.  They allege, for example, that

"[f]ederal employees who are eligible for FEHB are also eligible to participate in the Federal

Flexible Spending Account Program, including HCFSA" (Doc. 18 ¶ 401).  "[T]he Federal

Flexible Spending Account [or Arrangement] Program" is the program administered by OPM.

_____

[14] At Mr. Hara's request and with OPM's consent, the Federal Circuit stayed proceedings
in that appeal pending resolution of this action (Doc. 18 ¶¶ 171-79).  See 5 U.S.C. § 7703(b)(1);
28 U.S.C. § 1295(a)(9).  Mr. Hara, in turn, amended his complaint in this case to withdraw his
claim before this Court that he had unconstitutionally been denied a survivor annuity.

Given that Ms. Gill is an employee of the United States Postal Service, however, Ms. Gill and Ms. Letourneau lack standing to challenge the OPM program. OPM's Flexible Spending Arrangement program does not apply to "[c]ertain executive branch agencies with independent compensation authority" – among them the United States Postal Service – which had already "established their own flexible benefits plans" when OPM instituted the general federal program. See 71 Fed. Reg. at 66,827; see also 68 Fed. Reg. 56,525, 56,526 (Oct. 1, 2003) (referring to Postal Service program).[15] The official "Plan Document" posted on OPM's website defines a covered "employee" by reference to statutory provisions that expressly exclude "an employee of the United States Postal Service." See FedFlex Plan Document, § 2.12(a)(1), http://www.opm. gov/insure/flexible/reference/fedflex.pdf (last visited Sept. 18, 2009); see also 5 U.S.C. §§ 8901(1)(A), 2105(e). Accordingly, Ms. Gill and Ms. Letourneau cannot show any concrete injury "fairly traceable" to any application or interpretation of the OPM Flexible Spending Arrangement program, and no order regarding that program could redress any injury on their part.[16] See Steel Co., 523 U.S. at 102-03.

CONCLUSION

For the foregoing reasons, this action should be dismissed with prejudice.

Dated this 18th day of September, 2009.

_____

[15] In relation to the Flexible Spending Arrangement program, plaintiffs misinterpret 39 U.S.C. §1005(f). The language of that provision does not establish that OPM's program "extend[s] to United States Postal employees" (Doc. 18 ¶ 404). That subsection refers to certain programs established by statute, which do not encompass the administrative Flexible Spending Arrangement program established by OPM under its general statutory authority.

[16] To the extent plaintiffs may have intended to direct their Flexible Spending Arrangement claim toward the Postal Service's program, they have failed to plead such claim adequately, and it should be dismissed on that basis.

Respectfully submitted,

TONY WEST
Assistant Attorney General

MICHAEL K. LOUCKS
Acting United States Attorney

ARTHUR R. GOLDBERG
Assistant Director

/s/ W. Scott Simpson
_____

W. SCOTT SIMPSON
Senior Trial Counsel

Attorneys, Department of Justice
Civil Division, Room 7210
Post Office Box 883
Washington, D.C. 20044
Telephone:     (202) 514-3495
Facsimile:     (202) 616-8470
E-mail:        scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS


Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants, on September 18, 2009.


/s/ W. Scott Simpson
_____

W. SCOTT SIMPSON