UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NANCY GILL & MARCELLE LETOURNEAU, )<br>MARTIN KOSKI & JAMES FITZGERALD, )<br>DEAN HARA, )<br>MARY RITCHIE & KATHLEEN BUSH, )<br>MELBA ABREU & BEATRICE HERNANDEZ, )<br>MARLIN NABORS & JONATHAN KNIGHT, )<br>MARY BOWE-SHULMAN & )<br>DORENE BOWE-SHULMAN, )<br>JO ANN WHITEHEAD & BETTE JO GREEN, )<br>RANDELL LEWIS-KENDELL, and )<br>HERBERT BURTIS, )<br>    )<br>    Plaintiffs, )<br>    )<br>v. )<br>    )<br>OFFICE OF PERSONNEL MANAGEMENT, )<br>UNITED STATES POSTAL SERVICE, )<br>JOHN E. POTTER, in his official capacity as )<br>the Postmaster General of the United States of )<br>America, )<br>MICHAEL J. ASTRUE, in his official capacity )<br>as the Commissioner of the Social Security )<br>Administration, )<br>ERIC H. HOLDER JR., in his official capacity )<br>as the United States Attorney General, and )<br>THE UNITED STATES OF AMERICA, )<br>    Defendants. )<br>    ) | CIVIL ACTION<br>NO. 1:09-cv-10309 |

SEPARATE STATEMENT OF NON-ADJUDICATIVE FACTS FOR PURPOSES OF
DETERMINING THE LEVEL OF SCRUTINY FOR
<u>PLAINTIFFS' EQUAL PROTECTION CLAIM</u>

Plaintiffs have separately submitted a Statement of Undisputed Material Facts in accordance with Local Rule 56.1.  That Statement sets forth the adjudicative facts material to the issues before the Court.  *See* Fed. R. Evid. 201, Advisory Committee Note ("Adjudicative facts are simply the facts of the particular case.")  In addition to these adjudicative facts, there are also legislative, or "constitutional," facts relevant to certain issues.  *See Id.* ("Legislative facts, on the other hand, are those which have relevance to legal reasoning and the law-making process, whether in the formulation of legal principle or ruling by a judge or court or in the enactment of a legislative body.").  Although legislative facts need not be introduced into evidence, and although plaintiffs need not demonstrate the absence of dispute concerning legislative facts, plaintiffs set forth legislative facts below to assist the Court.  *Massachusetts Medical Society v. Dukakis*, 637 F. Supp. 684, 692 (D. Mass. 1986) (courts, "in making non-adjudicative fact findings, are free to draw upon sources of knowledge beyond evidence that is admissible under the formal rules of evidence that apply to adjudicative fact finding"); *Bio-Medical Applications of Lewiston v. Bowen*, 677 F. Supp. 51, 53 (D. Mass. 1987) (Fed. R. Civ. P. 56 "does not apply to nonadjudicative facts, as to which, if genuinely disputed, courts in any event may proceed to resolve them outside the constraints that apply to genuinely disputed and material adjudicative facts.")

Part I sets forth background facts.  Part II sets forth facts relevant to whether any form of heightened scrutiny applies to plaintiffs' equal protection claim.  Part II A sets forth facts establishing that the Defense of Marriage Act, 1 U.S.C § 7 ("DOMA Section 3") disparately burdens the fundamental interest in maintaining existing family

relationships of the Plaintiffs.  Part II B sets forth constitutional facts pertinent to DOMA's classification of married couples based on sexual orientation.

## I.     Background Non-Adjudicative Facts.

| FACTS | EVIDENCE |
|---|---|
| 1. Massachusetts has one class of marriages; it does not distinguish between marriages between couples of different sexes and between couples of the same sex. | *Goodridge v. Department of Public Health*, 440 Mass. 309, 343 (2003) (relief granted was defining civil marriage to mean "the voluntary union of two persons as spouses, to the exclusion of all others").  *See also In re Opinion of the Justices to the Senate*, 440 Mass. 1201, 1204 (2004) (stating that *Goodridge* "refined the common-law definition of civil marriage"). |
| 2. DOMA is discriminatory, denying married couples of the same sex federal benefits that are provided to married couples of different sexes. | Defendants' Memorandum of Law at 1, 2. |
| 3. In 2004 the Congressional Budget Office concluded that federal recognition of marriages of same-sex couples, even if such marriages were authorized in every State, would *reduce* non-discretionary outlays. | Congressional Budget Office, "The Potential Budgetary Impact of Recognizing Same-Sex Marriages," January 21, 2004 (attached as Exhibit C to the Affidavit of Gary D. Buseck). |

## II.    Non-Adjudicative Facts Relevant to the Level of Scrutiny for Plaintiffs' Equal Protection Claim.

### A.    Facts Establishing that DOMA Disparately Burdens the Fundamental Interest in Maintaining Existing Family Relationships of the Plaintiffs.

Plaintiffs set forth facts for purposes of determining whether their claim of an Equal Protection violation should be subject to heightened scrutiny because DOMA disparately burdens the plaintiffs' existing family relationships.  These are:

| | FACTS | EVIDENCE |
|---|---|---|
| 4. | Plaintiffs have a right to be married and have married in Massachusetts. | Gill & Letourneau Aff. ¶ 1.<br>Koski & Fitzgerald Aff. ¶ 1.<br>Hara Aff. ¶¶ 9-10.<br>Ritchie & Bush Aff. ¶ 17.<br>Abreu & Hernandez Aff. ¶ 1.<br>Nabors & Knight Aff. ¶ 3.<br>Bowe-Shulman Aff. ¶ 1.<br>Whitehead & Green Aff. ¶ 2.<br>Lewis-Kendell Aff. ¶ 4.<br>Burtis Aff. ¶ 12.<br>Memorandum in Support of Motion to Dismiss at 1. |
| 5. | Marriage confers benefits on married couples. | Expert Affidavit of Gregory M. Herek ¶ 22; Memorandum in Support of Motion to Dismiss at 14 (stating, "DOMA deprives same-sex couples of certain benefits that are tied to marital status"). |
| 6. | The benefits conferred by marriage result, in part, from the tangible resources and protections the law affords to spouses. | Herek Expert Affidavit ¶¶ 22-23. |
| 7. | Marrying a person of a different sex is not a realistic option for gay men and lesbians. | Herek Expert Affidavit ¶¶ 26-27. |
| 8. | Denying federal legal recognition to married couples of the same sex stigmatizes them. | Herek Expert Affidavit ¶¶ 28-36. |
| 9. | Children with same-sex parents would benefit if their parents had equal access to state and federal protections and benefits afforded through marriage. | Expert Affidavit of Michael Lamb ¶¶ 40-41. |

| | | |
|---|---|---|
| 10. | Denying federal legal recognition of the marriages of couples of the same sex burdens them – it imposes extra financial costs, it can prevent a spouse from staying at home with children or retiring, and the unclear legal status is emotionally distressing. | Gill and Letourneau Aff. ¶¶ 27-28.<br>Koski and Fitzgerald Aff. ¶ 6.<br>Hara Aff. ¶ 16.<br>Ritchie and Bush Aff. ¶ 19.<br>Abreu and Hernandez Aff. ¶¶ 17-18.<br>Nabors and Knight Aff. ¶ 24.<br>Bowe-Shulman Aff. ¶¶ 14, 22.<br>Whitehead and Green Aff. ¶ 20.<br>Lewis-Kendell Aff. ¶ 22.<br>Burtis Aff. ¶ 20. |
| 11. | Plaintiff Letourneau has had to remain in the workforce after marriage rather than stay home for several years with the couple's children as she and Plaintiff Gill had planned so that she can have access to health insurance. | Gill and Letourneau Aff. ¶¶ 27-28. |
| 12. | Because Plaintiff Fitzgerald has been barred from enrollment in Plaintiff Koski's Federal Employees Health Benefits (FEHB) health plan, he has continued to work, notwithstanding his severe asthma, in order to maintain access to health insurance. | Koski and Fitzgerald Aff. ¶ 6. |
| 13. | Plaintiff Hara believes it was dishonest to file federal income tax returns as "Single" when he was, in fact, married and felt like the United States government was telling him that his marriage had no value. | Hara Aff. ¶ 16. |

| | |
|---|---|
| 14. The family security of Plaintiffs Ritchie and Bush is undermined by DOMA, 1 U.S.C. § 7, because if Plaintiff Ritchie - a state Trooper - were killed in the line of duty, Plaintiff Bush would not have access to the same benefits that other spouses of law enforcement officers receive under the federal Public Safety Officer Benefit laws. | Ritchie and Bush Aff. ¶ 19. |
| 15. DOMA, 7 U.S.C. § 1, has caused Plaintiffs Abreu and Hernandez to incur extra expenses in addition to higher taxes.  When they purchased a home in 2009, they had to engage an estate planning attorney in addition to a real estate attorney to advise them how to take title given that they are not covered by spousal tax exemptions when the property is transferred at death. | Abreu and Hernandez Aff. ¶ 17. |
| 16. It is confusing and complicates everyday transactions that DOMA erases the plaintiffs' marriages for purposes of all federal laws. | Abreu and Hernandez Aff. ¶¶ 17-18. |
| 17. In Plaintiffs' experiences, DOMA signals to others that they may not respect the plaintiffs' marriages. | Abreu and Hernandez Aff. ¶ 18. |
| 18. Plaintiffs Nabors and Knight have to explain to people that, even though they are married, their marriage is not recognized by the federal government. | Nabors and Knight Aff. ¶ 24. |
| 19. Plaintiffs Bowe-Shulman have suffered emotional injury because of DOMA and feel like a "fractured family" because the federal government does not recognize their marriage. | Bowe-Shulman Aff. ¶¶ 14, 22. |

| | |
|---|---|
| 20. Even though Plaintiffs Whitehead and Green are legally married under Massachusetts law, the federal government denies the existence of their marriage for purposes of federal law and that forces them to explain their relationship, sometimes even to their own family members. | Whitehead and Green Aff. ¶ 20. |
| 21. Plaintiff Lewis-Kendell suffered emotional distress because the SSA denied his application for benefits based on his marriage to Robert Lewis-Kendell. | Lewis-Kendell Aff. ¶ 22. |
| 22. DOMA, 1 U.S.C. § 7, has made Plaintiff Burtis feel that his marriage is inferior to others. | Burtis Aff. ¶ 20. |

**B.    Constitutional Facts for Purposes of Determining the Level of Scrutiny for Plaintiffs' Equal Protection Claim Because DOMA Discriminates on the Basis of Sexual Orientation.**

Plaintiffs set forth facts for purposes of determining whether their claim of an Equal Protection violation should be subject to heightened scrutiny because DOMA takes the unitary class of couples married in Massachusetts and divides it in two: those who are "married" under federal law, and those whose marriages do not exist for any federal purposes.

**(1)    Gay Men and Lesbians Have Experienced a History of Discrimination.**

| FACTS | EVIDENCE |
|---|---|
| 23. Gay men, lesbians and bisexual people have suffered a history of discrimination in the United States. | Expert Affidavit of George Chauncey ¶¶ 4-7, 76; *see generally id.* ¶¶ 4-79. |

| | |
|---|---|
| 24. Gays and lesbians have been subjected to violence and verbal harassment, banned by executive order from federal employment or even employment by government contractors, purged from state employment, denied jobs in the private sector, labeled mentally ill, and prosecuted for engaging in intimate conduct with loved ones. | Chauncey Expert Affidavit ¶¶ 4-6, 14, 24, 38-41; *see generally id.* ¶¶ 4-79. |
| 25. Gay men and lesbians have made some gains in rights in the past several decades while at the same time experiencing use of the initiative and referendum process to repeal legal protections and also suffering the enactment of anti-gay measures such as the federal Defense of Marriage Act, state statutes and constitutional amendments denying gay men and lesbians the right to marry and other legal protections, and "Don't Ask, Don't Tell" for military service. | Chauncey Expert Affidavit ¶¶ 7-9, 57-75, 77-78. |
| 26. The civil rights enjoyed by gay and lesbian Americans vary substantially from region to region and are still subject to the vicissitudes of public opinion. | Chauncey Expert Affidavit ¶ 79. |

### (2) Sexual Orientation is Unrelated to the Ability to Contribute to Society.

| | |
|---|---|
| 27. Sexual orientation refers to an enduring pattern of or disposition to experience sexual, affectional, or romantic desires for and attractions to men, women or both sexes. Although sexual orientation ranges along a continuum from exclusively heterosexual to exclusively homosexual, it is usually discussed in three categories: *heterosexual* (having attraction primarily or exclusively to members of the other sex), *homosexual* (having attraction primarily or exclusively to members of one's own sex), and *bisexual* (having a significant degree of attraction to both men and women). | Herek Expert Affidavit ¶ 8. |
| 28. Sexual orientation, including being gay or lesbian or bisexual, bears no inherent relation to a person's ability to perform, contribute to, or participate in society. | Herek Expert Affidavit ¶¶ 7, 13-16. |
| 29. Homosexuality is a normal expression of human sexuality. | Herek Expert Affidavit ¶¶ 7, 13. |
| 30. Like heterosexuals, the vast majority of gay men and lesbians function well in society and in their interpersonal relationships. | Herek Expert Affidavit ¶¶ 7, 13. |
| 31. Gay men and lesbians have the capacity to and do form healthy and mutually satisfying intimate relationships with another person of the same sex and raise healthy and well-adjusted children. | Herek Expert Affidavit ¶¶ 7, 13. |

| | |
|---|---|
| 32. Children raised by same-sex parents are as likely to be well-adjusted (psychologically, emotionally and socially) as children raised by heterosexual parents, including "biological" parents. | Lamb Expert Affidavit ¶¶ 11, 27-39; Defendants' Memorandum of Law at 19 n. 10 (stating, "Since the enactment of DOMA, many leading medical, psychological, and social welfare organizations have issued policies opposing restrictions on lesbian and gay parenting upon concluding, based on numerous studies, that children raised by gay and lesbian parents are as likely to be well-adjusted as children raised by heterosexual parents." (citations omitted)). |
| 33. Over the last 50 years, more than 1000 studies have examined the factors that predict healthy adjustment in children and adolescents.  As a result of this significant body of research, psychologists have reached consensus on the factors that predict healthy development and adjustment. These are:<br><br>a)  the quality of children's or adolescents' relationships with their parents or parent figures;<br><br>b)  the quality of the relationship between the parents and other significant adults; conflict between them is associated with maladjustment while harmonious relationships between the adults support healthy adjustment; and<br><br>c)  the availability of adequate economic and social resources, with poverty and social isolation being associated with maladjustment, and adequate resources supporting healthy adjustment. | Lamb Expert Affidavit ¶¶ 14-15. |
| 34. There is a scientific consensus that the same factors affect the adjustment of children, whatever the sexual orientation of their parents. | Lamb Expert Affidavit ¶¶ 11-12, 13-26. |

| | |
|---|---|
| 35. Numerous studies of youths raised by same-sex parents conducted over the past 25 years by respected researchers and published in peer-reviewed academic journals conclude that children and adolescents raised by same-sex parents are as successful psychologically, emotionally, and socially as children and adolescents raised by heterosexual parents, including 'biological' parents. | Lamb Expert Affidavit ¶¶ 11, 27-39. |
| 36. There is no empirical support for the notion that the presence of both male and female role models in the home promotes children's adjustment or well-being. | Lamb Expert Affidavit ¶¶ 22-29. |
| 37. Empirical research demonstrates that the absence of male or female parent in the home does not impair a child's development. | Lamb Expert Affidavit ¶¶ 22-29. |
| 38. The absence of a male or female parent in the home does not impair a child's development because men and women both have the capacity to be good parents, it is not harmful to children when parents (male or female) do not assume traditional gender roles with respect to parenting styles, and society is replete with male and female role models. | Lamb Expert Affidavit ¶¶ 22-26 |

**(3)    Gays and Lesbians Are a Minority and Face Significant Obstacles to Achieving Protection from Discrimination Through the Political Process.**

| | |
|---|---|
| 39. Gay men and lesbians are a minority in the United States. | Herek Expert Affidavit ¶¶ 7, 16, 34-35. |

| | |
|---|---|
| 40. Political power is the demonstrated ability to extract favorable (or prevent unfavorable) policy outcomes from the political system. | Segura Expert Affidavit ¶¶ 12; *see generally id.* at ¶¶ 10-16. |
| 41. Gay men and lesbians are politically powerless, as evidenced by their inability to bring a prompt end to discrimination through the political system. | Segura Expert Affidavit ¶¶ 9, 17; *see generally id.* at ¶¶ 17-62. |
| 42. To date, there has been no national-level legislation prohibiting discrimination against gay men and lesbians in employment, education, public accommodations or housing after decades of effort. | Segura Expert Affidavit ¶ 18. |
| 43. While protection from violence through the extension of existing hate crimes legislation passed just last month, the process by which it was adopted – as part of a Defense Appropriations Bill – evidences the lack of political power of gay men and lesbians. | Segura Expert Affidavit ¶ 21. |
| 44. Congress has adopted laws that burden gay men and lesbians, including the Defense of Marriage Act and "Don't Ask, Don't Tell" for military service. | Segura Expert Affidavit ¶¶ 19-20. |
| 45. Nationwide, gay men and lesbians face outspoken denunciation by elected officials that may be made to gain electoral support and would be unthinkable if directed toward most other social groups. | Segura Expert Affidavit ¶¶ 57-59; Chauncey Expert Affidavit ¶¶ 72, 78. |
| 46. While gay men and lesbians have made occasional and typically geographically confined gains, those gains have demonstrated vulnerability to reversal or repeal, especially by initiative or referenda. | Segura Expert Affidavit ¶¶ 17, 22-30; *see generally id.* at ¶¶ 17-62. |

| | |
|---|---|
| 47. Other groups that have obtained the protection of heightened scrutiny from the United States Supreme Court possessed greater political power at the time those decisions were handed down than gays and lesbians do today. | Segura Expert Affidavit ¶¶ 63; see generally id. at ¶¶ 63-67. |

### (4)   Sexual Orientation is a Defining Characteristic of a Person's Identity.

| | |
|---|---|
| 48. Sexual orientation is commonly discussed as a characteristic of the individual, like biological sex, gender identity, race, or age.  It also is defined in relational terms because one's sexual orientation defines the universe of persons with whom one is likely to find the satisfying and fulfilling relationships that, for many individuals, comprise an essential component of personal identity. | Herek Expert Affidavit ¶¶ 11-12. |
| 49. The factors that cause an individual to become heterosexual, homosexual, or bisexual are not currently well understood.  Most social and behavioral scientists regard sexual orientation as being shaped by a complex interaction of biological, psychological, and social forces. | Herek Expert Affidavit ¶ 17. |
| 50. A vast majority of lesbian and gay adults report that they do not experience their sexual orientation as a choice. | Herek Expert Affidavit ¶¶ 17-19. |
| 51. Heterosexuals do not experience their own heterosexuality as a choice. | *See* Herek Expert Affidavit ¶ 19. |
| 52. Sexual orientation is highly resistant to change. | Herek Expert Affidavit ¶ 20. |

| | |
|---|---|
| 53. Interventions to attempt to change one's sexual orientation can be harmful to the psychological well-being of those who attempt them and the major mental health professional organizations do not encourage individuals to try to change their sexual orientation from homosexual to heterosexual. | Herek Expert Affidavit ¶ 20. |

Respectfully submitted,

/s/  Gary D. Buseck
Gary D. Buseck

GAY & LESBIAN ADVOCATES &
DEFENDERS
Gary D. Buseck, BBO #067540
gbuseck@glad.org
Mary L. Bonauto, BBO #549967
mbonauto@glad.org
Nima R. Eshghi, BBO #633716
neshghi@glad.org
Janson Wu, BBO #609949
jwu@glad.org
Samuel P. Bickett (BBO# pending)
sbickett@glad.org
30 Winter Street, Suite 800
Boston, MA 02108
Telephone (617) 426-1350
Facsimile (617) 426-3594
*Attorneys for Plaintiffs*

JENNER & BLOCK LLP
Paul M. Smith (pro hac vice)
psmith@jenner.com
Luke C. Platzer (of counsel)
lplatzer@jenner.com
Daniel I. Weiner (of counsel)
dweiner@jenner.com
Anna M. Baldwin (of counsel)
abaldwin@jenner.com
1099 New York Ave, NW, Suite 900
Washington, DC 20001
Telephone (202) 639-6060
Facsimile (202) 661-4948
*Attorneys for Plaintiffs*

FOLEY HOAG LLP
Claire Laporte, BBO #554979
claporte@foleyhoag.com
Vickie L. Henry, BBO #632367
vhenry@foleyhoag.com
Matthew Miller, BBO #655544
mmiller@foleyhoag.com
Amy Senier, BBO #672912
asenier@foleyhoag.com
Seaport World Trade Center West
155 Seaport Blvd.
Boston, MA 02210
Telephone (617) 832-1000
Facsimile (617) 832-7000
*Attorneys for Plaintiffs*

SULLIVAN & WORCESTER LLP
David J. Nagle, BBO #638385
dnagle@sandw.com
Richard L. Jones, BBO #631273
rjones@sandw.com
One Post Office Square
Boston, MA 02109
Telephone (617) 338-2800
Facsimile (617) 338-2880
*Attorneys for Plaintiffs Mary Ritchie, Kathleen Bush, Melba Abreu, Beatrice Hernandez, Marlin Nabors, Jonathan Knight, Mary Bowe-Shulman, and Dorene Bowe-Shulman*

DATED: November 17, 2009

<u>Certificate of Service</u>

  I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 17, 2009.

            /s/  Gary D. Buseck
            Gary D. Buseck