# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NANCY GILL & MARCELLE LETOURNEAU, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| OFFICE OF PERSONNEL MANAGEMENT, et al., | ) |
| | ) |
| Defendants. | ) |

Case No. 1:09-cv-10309 JLT

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

TONY WEST
Assistant Attorney General

CARMEN M. ORTIZ
United States Attorney

ARTHUR R. GOLDBERG
Assistant Director

W. SCOTT SIMPSON
Senior Trial Counsel

Attorneys, Department of Justice
Civil Division, Room 7210
Post Office Box 883
Washington, D.C. 20044
Telephone:    (202) 514-3495
Facsimile:    (202) 616-8470
E-mail:       scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.     All of the Plaintiffs Have Failed to State a Claim on Which Relief
Can Be Granted Because, under the Law of this Circuit, DOMA Is
Consistent with the Equal Protection Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.    DOMA Is Subject to Rational Basis Review Under
Controlling First Circuit Precedent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

1.    This Court Is Bound by First Circuit Precedent
Holding that Sexual Orientation Is Not a Suspect
Classification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

2.    DOMA Does Not Impinge on Any "Fundamental "Right" . . . . . . 6

a.    There Is No Fundamental Right to Federal Benefits
Based on Marital Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

b.    DOMA Is Not Subject to Heightened Review
Because of Any Burden on "the Fundamental
Interest in Maintaining Existing Family
Relationships" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

c.    DOMA Is Not Subject to Heightened Review
Because of Any "Intrusion into Family Law" . . . . . . . . . . 9

B.    DOMA Satisfies Rational Basis Review . . . . . . . . . . . . . . . . . . . . . . . . . 11

C.    The Rationales and Motives Recited by Congress
and by Individual Congressman in 1996 Do Not
Render the Statute Unconstitutional . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

II.    OPM Is Bound by the Definition of "Member of Family" in the FEHB . . . . . . . 18

III.    Plaintiff Dean Hara Lacks Standing to Pursue
His Claim for FEHB Enrollment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## INTRODUCTION

As stated in our opening brief, this Administration believes the Defense of Marriage Act ("DOMA") is discriminatory and should be repealed.   Binding precedent in this Circuit, however, forecloses this Court from finding that DOMA involves a "suspect classification," and the statute does not impinge upon any right that the courts have held to be "fundamental."  The plaintiffs' constitutional challenge to DOMA must therefore be rejected because – despite this Administration's disagreement with DOMA as a matter of policy – the statute satisfies rational basis review.

Aside from plaintiffs' constitutional claims, the Federal Employees Health Benefits Act ("FEHBA") does not permit the Office of Personnel Management to enroll same-sex spouses; language in a statute's legislative history cannot override its unambiguous text.  Finally, plaintiff Dean Hara lacks standing to pursue his claim for FEHB enrollment in this Court, because only the Federal Circuit has jurisdiction to declare that he satisfies the requirement to be a federal annuitant.  OPM did not "abandon" this argument administratively (Doc. 28 at 44).

For the same reasons stated herein and in defendants' memorandum in support of their motion to dismiss (Doc. 21), plaintiffs are not "entitled to judgment as a matter of law" on their motion for summary judgment.[1]  See Fed. R. Civ. P. 56(c)(2).  The same binding precedent that forecloses finding that DOMA involves a "suspect classification" also forecloses considering the testimony proffered by the plaintiffs on that very question.  This Court should – and, in light of First Circuit precedent, must – decline plaintiffs' invitation to break new ground in the law of equal protection and suspect classifications.

---

[1] Defendants' earlier memorandum (Doc. 21) is incorporated herein in opposition to plaintiffs' motion for summary judgment.

Accordingly, plaintiffs' motion for summary judgment (Doc. 25) should be denied, and all of plaintiffs' claims in this action should be dismissed.

<u>ARGUMENT</u>

I.   ALL OF THE PLAINTIFFS HAVE FAILED TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED BECAUSE, UNDER THE LAW OF THIS CIRCUIT, DOMA IS CONSISTENT WITH THE EQUAL PROTECTION CLAUSE

A.   DOMA Is Subject to Rational Basis Review Under Controlling First Circuit Precedent

A statute challenged under the Fifth Amendment is subject only to rational basis review unless it "burdens a suspect class or impinges upon a fundamental right." See Toledo v. Sánchez, 454 F.3d 24, 33 (1st Cir. 2006). As shown in defendants' opening memorandum, First Circuit precedent mandates that this case does not involve a suspect classification, and no right involved here has been classified as "fundamental." Nothing in plaintiffs' memorandum rebuts either proposition.

1.   This Court Is Bound by First Circuit Precedent Holding that Sexual Orientation Is Not a Suspect Classification

Plaintiffs concede, as they must, that the United States Court of Appeals for the First Circuit "recently applied rational basis scrutiny to the law excluding gay and lesbian persons from military service, and noted in its opinion that 'homosexuals are not a suspect class'" (Doc. 28 at 23). See Cook v. Gates, 528 F.3d 42, 62 (1st Cir. 2008). Plaintiffs do not, and could not, contend that this statement was dicta. Instead, they argue that the First Circuit's holding in Cook is not binding here because, they assert: (1) Cook arose out of a "challenge to the military's policy" regarding service by gay and lesbian persons and does not apply outside that context; (2) the court in Cook did not analyze the factors historically used in identifying a suspect classification; and (3) the court did not consider whether classifications based on sexual

orientation might warrant "intermediate" scrutiny (Doc. 28 at 23).  Notwithstanding these arguments, this Court is bound by the holding in <u>Cook</u> that classifications based on sexual orientation are subject to rational basis review.

First, in relation to plaintiffs' argument that the holding in <u>Cook</u> is limited to the military context, the plaintiffs in <u>Cook</u> argued for heightened scrutiny on the basis that "sexual orienta-tion is a suspect classification."  <u>Cook v. Rumsfeld</u>, 429 F. Supp. 2d 385, 396 (D. Mass. 2006).  The district court expressly rejected that contention, noting that plaintiffs had cited no authority for heightened scrutiny regarding sexual orientation and that "no controlling case" had held that gay or lesbian persons constituted a "suspect class."  <u>Id.</u> at 396-97.

On appeal, plaintiffs focused on the Supreme Court's decisions in <u>Romer v. Evans</u>, 517 U.S. 620 (1996), and <u>Lawrence v. Texas</u>, 539 U.S. 558 (2003), arguing that they "mandate a more demanding standard" than rational basis review.  <u>Cook</u>, 528 F.3d at 61.  The Court of Appeals considered those decisions and rejected plaintiffs' arguments, concluding that "the district court was correct to analyze the plaintiffs' equal protection claim under the rational basis standard," thereby establishing the binding standard of review in the First Circuit.  <u>Id.</u>  In so holding, the court cited decisions in which several of its "sister circuits" had applied rational basis review to classifications based on sexual orientation.  <u>Id.</u>  Thus, the court expressly concluded that "the district court was correct to reject the plaintiffs' equal protection claim because [sexual orientation is] not a suspect class."  <u>Id.</u> at 62.

Nothing in the appellate or district court decisions in <u>Cook</u> suggests that their holdings regarding the level of scrutiny for an equal protection challenge based on sexual orientation apply only in the military context.  Neither court stated that its holding on that subject was

limited to the military context, or even referred to that context as bolstering its decision.[2]

Moreover, the decisions of the Sixth, Eighth, and Eleventh Circuits cited by the Court of Appeals

in <u>Cook</u> did not arise out of a challenge to military policy.  Specifically, the Sixth Circuit in

<u>Scarbrough v. Morgan County Board of Education</u>, 470 F.3d 250, 261 (6th Cir. 2006), addressed

claims related to the non-selection of an individual as a county's director of schools because of

his association with a gay and lesbian church; the Eighth Circuit in <u>Citizens for Equal Protection</u>

<u>v. Bruning</u>, 455 F.3d 859, 866-67 (8th Cir. 2006), addressed challenges to a state constitutional

amendment limiting marriage to a man and a woman; and the Eleventh Circuit in <u>Lofton v.</u>

<u>Secretary of Department of Children & Family Services</u>, 358 F.3d 804, 818 (11th Cir. 2004),

addressed claims regarding a state law prohibiting adoption of children by gays and lesbians – all

of them applying rational basis review.[3]  Although the military context may be relevant to the

strength of the government's proffered <u>interests</u> after determining the level of scrutiny, it has no

bearing on the threshold question of whether a given classification is constitutionally "suspect."

    Plaintiffs' next contention is that the Court of Appeals in <u>Cook</u> did not analyze the

factors historically used to identify a suspect classification, but held only that the Supreme

Court's decisions in <u>Romer</u> and <u>Lawrence</u> do not require heightened scrutiny (Doc. 28 at 23).

---

[2] The Court of Appeals referred to the military context in analyzing plaintiffs' <u>due process</u> claim, <u>see</u> 528 F.3d at 57, but not in analyzing the equal protection claim, where the court held that sexual orientation is not a suspect classification.  <u>See</u> <u>id.</u> at 60-62.

[3] Defendants cite the Eleventh Circuit's decision in <u>Lofton</u> for the fact that it applied rational basis review, not for the particular governmental interests relied on by the court.  Indeed, as noted in defendants' opening memorandum in this case, the government here has disavowed the purported interest, relied upon in <u>Lofton</u>, 358 F.3d at 818, of promoting "dual-gender parenting."  <u>See</u> Doc. 21 at 19 n.10 (explaining that, since the enactment of DOMA, many leading medical, psychological, and social welfare organizations have issued policies opposing restrictions on lesbian and gay parenting upon concluding, based on numerous studies, that children raised by gay and lesbian parents are as likely to be well-adjusted as children raised by heterosexual parents).

The court's discussion of the level of scrutiny began with <u>Romer</u> and <u>Lawrence</u> because those decisions were the focus of plaintiffs' arguments, and the court concluded that they had not "changed the standard of review applicable to a legislative classification based on sexual orientation" – that is, that they had not changed the standard from rational basis under First Circuit precedent.  528 F.3d at 61.  Thus, the court apparently saw no need to analyze the factors that historically govern the identification of a suspect classification:  the applicable standard in this Circuit was rational basis before <u>Romer</u> and <u>Lawrence</u>, and the court concluded that it remained rational basis after those decisions.[4]  Accordingly, the Court of Appeals expressly held that sexual orientation is "not a suspect class" and that "the district court was correct to analyze the plaintiffs' equal protection claim under the rational basis standard."  <u>Id.</u> at 61-62.

Plaintiffs' third and final contention regarding <u>Cook</u> is that the court did not "discuss, or appear to consider, whether classifications based on sexual orientation should be treated as 'quasi-suspect' or evaluated under 'intermediate' scrutiny" (Doc. 28 at 23).  This is irrelevant, however, because the court squarely held that rational basis applies, and whether the court considered other options makes no difference as to the binding nature of that holding on lower courts.  Further, the <u>district</u> court in <u>Cook</u> did, in fact, state its belief that the Supreme Court in <u>Romer</u> and <u>Lawrence</u> did not "engage in the type of 'heightened' scrutiny short of the 'strict' scrutiny which it has applied in cases involving the equal protection review of gender-based

---

[4] Indeed, both the Court of Appeals and this Court typically consider (and reject) arguments for suspect classifications without analyzing the historical factors; in rejecting such claims, the courts most often simply allude to the fact that no precedent exists for accepting the classification.  <u>See</u> <u>Beauchamp v. Murphy</u>, 37 F.3d 700, 707 (1st Cir. 1994); <u>Rodriguez v. Secretary of Health, Educ. & Welfare</u>, 644 F.2d 918, 920-21 (1st Cir. 1981); <u>Restucci v. Clarke</u>, ___ F. Supp. 2d ___, 2009 WL 3818599, at *5 (D. Mass. 2009); <u>Roche v. Town of Wareham</u>, 24 F. Supp. 2d 146, 153 (D. Mass. 1998); <u>Piacentini v. Levangie</u>, 998 F. Supp. 86, 91 (D. Mass. 1998); <u>see also</u> <u>Margaret S. v. School Comm. of Town of Greenfield</u>, 59 F. Supp. 2d 237, 244 (D. Mass. 1999).

classifications." 429 F. Supp. 2d at 397 n.16.  The Court of Appeals in <u>Cook</u> then affirmed the

district court's decision.  <u>See</u> 528 F.3d at 65.

 In addition to foreclosing any finding that sexual orientation is a suspect classification

under First Circuit precedent, the foregoing also mandates denial of plaintiffs' motion for sum-

mary judgment, which asks this Court to engage in the very analysis that the Court of Appeals

found unnecessary in <u>Cook</u>.  After arguing that <u>Cook</u> does not control here, plaintiffs assert that

classifications based on sexual orientation should be considered constitutionally suspect under

the "factors that govern such an analysis" (Doc. 28 at 23-24).  Plaintiffs submit four declarations

addressing those factors, which they characterize as (1) whether "gays and lesbians have experi-

enced a history of discrimination," (2) whether "sexual orientation is unrelated to the ability to

contribute to society," (3) whether "gays and lesbians . . . face significant obstacles to achieving

protection from discrimination through the political process," and (5) whether "sexual orienta-

tion is a defining characteristic of a person's identity" (Doc. 28 at 24-26).  The Court of Appeals,

however, already mandated the outcome of any analysis of these factors and foreclosed any

further consideration of them by this Court, when it held that sexual orientation is not a suspect

classification in this Circuit.  Its holding to that effect precludes this Court from engaging in the

factual analysis on which plaintiffs' motion for summary judgment is based.

   2. <u>DOMA Does Not Impinge on Any "Fundamental Right"</u>

 Where a statute does not, like DOMA, "burden[ ] a suspect class," it will be analyzed

under rational basis review unless it "impinges upon a fundamental right."  <u>See</u> <u>Toledo</u>, 454 F.3d

at 33.  Since DOMA forecloses providing certain federal benefits based on marital status, one

potential "right" involved here is the receipt of such benefits.  Plaintiffs appear to concede,

however, that there is no "fundamental right" to the federal benefits they seek.  Rather, plaintiffs

argue that DOMA should be subjected to heightened scrutiny on the grounds that it burdens "the fundamental interest in maintaining existing family relationships" and "intrudes" into "family law, an area traditionally reserves to the States" (Doc. 28 at 12, 19).  Neither of these arguments justifies a departure from rational basis review.

a.       There Is No Fundamental Right to Federal Benefits<br>Based on Marital Status

The plaintiffs here seek benefits based on marital status under various federal statutes  – specifically, enrollment in the Federal Employees Health Benefits Program ("FEHB") and other health programs for federal employees and their families, certain retirement and survivor benefits under the Social Security Act, and the filing of federal income tax returns in a "married filing jointly" status.  The courts have made clear, however, that there is no fundamental right to federal benefits; thus, there is necessarily no fundamental right to marriage-based benefits.  See, e.g., DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 196 (1989) (Due Process Clause "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual"); Lyng v. Auto. Workers, 485 U.S. 360, 368 (1987) (holding that a decision "not to subsidize the exercise of a fundamental right does not infringe the right").  Plaintiffs do not respond to this assertion in defendants' motion to dismiss, apparently conceding the point.  See Fagan v. Bingham, Civ. A. No. 94-11399-GAO, 1995 WL 791916, at *4 (D. Mass. Nov. 29, 1995) ("[Plaintiff's] response to the defendants' motion to dismiss neither mentions Bivens nor attempts to refute the defendants' several contentions on this point, suggesting that [plaintiff] has conceded the inapplicability of Bivens."); accord DIRECTV, Inc. v. FCC, 110 F.3d 816, 829 (D.C. Cir. 1997) ("[Plaintiff] did not respond to [defendant's] argument against their standing, which we therefore take as conceded.").

   b.  DOMA Is Not Subject to Heightened Review Because
       of Any Burden on "the Fundamental Interest in
       <u>Maintaining Existing Family Relationships"</u>

   Plaintiffs assert that "DOMA should . . . face heightened scrutiny [because] it burdens

Plaintiffs' constitutionally protected interest in the integrity of their families" (Doc. 28 at 19).

More specifically, plaintiffs assert that DOMA "depriv[es] them . . . of the unique public

validation, social recognition, respect, support and private and personal value that come with

marriage" (Doc. 28 at 21).  They also observe that DOMA has "caus[ed] confusion among third

parties and encourage[ed] private disrespect for Plaintiffs' relationships" (Doc. 28 at 22).

   Although there is a fundamental constitutional right to the "integrity of the family unit,"

<u>see</u> <u>Stanley v. Illinois</u>, 405 U.S. 645, 651 (1972), that right does not encompass the types of

interests the plaintiffs have identified here.  The right to family integrity encompasses such rights

as the "right of the family to remain together," <u>Morris v. Dearborne</u>, 181 F.3d 657, 667 (5th Cir.

1999), a right to "the care, custody, and control of [one's] children," <u>Carter v. Lindgren</u>, 502

F.3d 26, 30 (1st Cir. 2007), and a "right of familial privacy," <u>Parker v. Hurley</u>, 514 F.3d 87, 102

(1st Cir. 2008).  DOMA does not affect whether a same-sex couple married under state law may

"remain together," enjoy "familial privacy," or raise children as permitted by state law.

Ultimately, what plaintiffs posit here is a right to require the federal government to consider

them married for purposes of distributing federal benefits when the State considers them as such

– a right to federal "validation" of their Massachusetts marriages (Doc. 28 at 21).  But there is no

such fundamental constitutional right.

   Even if DOMA could be said to have some indirect effect on the right to familial

integrity, the courts have made clear that an indirect effect on a fundamental right – including the

right to familial integrity – does not call for heightened scrutiny.  For example, in <u>Philadelphia</u>

8

Police & Fire Ass'n for Handicapped Children, Inc. v. Philadelphia, the Third Circuit rejected

plaintiffs' argument "that heightened scrutiny [was] appropriate because their fundamental rights

to family integrity [had] been burdened" by certain governmental action.  874 F.2d 156, 165 (3d

Cir. 1989).  The court stated that "not every burden on a fundamental right will give rise to

heightened scrutiny.  If a burden is sufficiently indirect, scrutiny will not be heightened."  Id. at

166.  The action challenged there did not directly affect family integrity, the court held, because

it did not "itself require members of the class to leave their family homes," even though the court

acknowledged that "it may make it more likely that they will do so."  Id.; accord In re San Juan

Dupont Plaza Hotel Fire Litig., 687 F. Supp. 716, 733 (D.P.R. 1988)  ("[A] statute having merely

indirect effect on [a] fundamental right will not be subjected to strict scrutiny"); Brown v.

Heckler, 589 F. Supp. 985, 991 (E.D. Pa. 1984) ("The Supreme Court has consistently held that

only direct infringements upon fundamental rights trigger strict scrutiny.").

> c.      DOMA Is Not Subject to Heightened Review Because
>         of Any "Intrusion into Family Law"

Plaintiffs' final argument for heightened review is fundamentally different from the

others – and fundamentally removed from existing constitutional jurisprudence.  Plaintiffs

contend that DOMA must be subjected to heightened scrutiny because it allegedly infringes on

"the core State power to govern domestic relations" (Doc. 28 at 12).  This argument is unavailing

for two reasons:  DOMA does not, in fact, invade the "power" normally exercised by the States

in this area (Doc. 28 at 19), and, even if it did, plaintiffs cite no precedent for requiring

heightened scrutiny in such circumstances.

As plaintiffs argue, the law of domestic relations has traditionally been reserved largely

to the States (Doc. 28 at 12).  States traditionally decide, for example, questions regarding who

may marry, the dissolution of marriage, division of marital property, child custody, and the

payment and amount of alimony or child support.  See Ankenbrandt v. Richards, 504 U.S. 689,

703 (1992); In re Kirby, 403 B.R. 169, 172 (Bkrtcy. D. Mass. 2009).  A federal enactment does

not, however, improperly encroach on an area of state concern "if Congress properly acts

pursuant to one of its enumerated powers."  See United States v. Meade, 175 F.3d 215, 224 (1st

Cir. 1999) (rejecting challenge to federal law prohibiting possession of firearm by person subject

to anti-harassment order or convicted of a crime of domestic violence); see also United States v.

Lewko, 269 F.3d 64, 66-70 (1st Cir. 2001) (rejecting assertion that Child Support Recovery Act

unconstitutionally "encroach[ed] on an area reserved to the states – namely, family law and

domestic relations").

Section 3 of DOMA does not in any way displace state law with respect to questions of

who may marry, or concerning divorce, custody, and other matters of family law.  Instead, it

addresses areas of quintessential federal concern – that is, the expenditure of federal funds and

the meaning of federal statutes.  Article I of the Constitution empowers Congress to expend

funds "for the . . . general Welfare of the United States."  See U.S. Const. art. I, § 8.  Under this

power, "Congress possesses great leeway to determine which statutory aims advance the general

welfare.  The Supreme Court has made it clear that '[w]hen money is spent to promote the

general welfare, the concept of welfare . . . is shaped by Congress.'"  Mayweathers v. Newland,

314 F.3d 1062, 1066 (9th Cir. 2002) (quoting Helvering v. Davis, 301 U.S. 619, 645 (1937)); see

South Dakota v. Dole, 483 U.S. 203, 207 (1987) (referring to "breadth" of spending power).  As

Section 3 is within Congress's "enumerated powers" under the Spending Clause, it cannot be

said to encroach unconstitutionally on the authority of the States.  See Meade, 175 F.3d 215,

224.

In any event, and perhaps more importantly, plaintiffs cite no authority for the proposition that an alleged departure from the traditional federal-state arrangement regarding domestic relations would require subjecting DOMA to "close scrutiny" under the Constitution (Doc. 28 at 19).  The defendants are aware of no precedent for applying "heightened review" to any assertion that a federal law encroaches upon the States' regulation of domestic relations.  Indeed, the First Circuit and other courts have rejected many such assertions without invoking any kind of strict or heightened scrutiny.  See Lewko, 269 F.3d at 66-70; Meade, 175 F.3d at 224-25; accord United States v. Klinzing, 315 F.3d 803, 806-08 (7th Cir. 2003); United States v. Jones, 231 F.3d 508, 515 (9th Cir. 2000).  No "heightened" level of review is employed even when a court strikes down a federal law that touches upon traditional state functions; the relevant question, instead, is simply whether the statute is within Congress's constitutional powers.  See United States v. Morrison, 529 U.S. 598, 615-19 (2000) (invalidating civil remedy provision of Violence Against Women Act).  In short, the concept of a "level of scrutiny" applies to challenges under the Fifth Amendment, but not to allegations that a statute exceeds Congress's authority or invades the traditional ambit of the States.

B.     DOMA Satisfies Rational Basis Review

Because the applicable standard under binding First Circuit precedent is rational basis review, the next question is "whether a rational relationship exists between [DOMA] and a conceivable legitimate governmental objective."  Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield, 907 F.2d 239, 246 (1st Cir. 1990) (emphasis in original).  In this regard, plaintiffs do not dispute several relevant legal developments regarding same-sex marriage.  When DOMA was enacted in 1996, the States were beginning to consider whether to recognize same-sex marriage as a matter of state law.  Since that time, the status of such marriages in the

various States has been varied and shifting.  In 1996, no State recognized same-sex marriage; currently, it is recognized by statute or court decision in five States,[5] and prohibited by statute or constitutional amendment in forty States.[6]  Further changes will undoubtedly occur in the future.

As plaintiffs argue, the operation and effect of many federal statutes turn on whether individuals are married (Doc. 28 at 3).  Before the enactment of DOMA, the marital status of individuals under federal law – and thus the operation and effect of those statutes – generally depended on marital status under state law.  In absence of congressional action, therefore, the effect of the terms "marriage" and "spouse" under federal statutes would have changed with each change in the status of same-sex marriage in each State, and the application of those federal statutes would have varied from State to State.

Congress could have anticipated these fluid circumstances, and could reasonably have concluded that there is a legitimate governmental interest in maintaining the status quo and preserving nationwide consistency in the distribution of marriage-based federal benefits.  DOMA satisfies these interests by defining "marriage" and "spouse" as those words were defined by all fifty States in 1996.  Congress may subsequently decide to extend federal benefits to same-sex marriages, as the Administration believes it should.  Indeed, bills currently pending in the House

---

[5]  Those States are New Hampshire, Vermont, Iowa, Connecticut, and Massachusetts. A bill to permit same-sex marriage in the District of Columbia was recently passed by the City Council and signed by the Mayor, and can become law after a congressional review period of 30 legislative days.  New York and the District of Columbia recognize same-sex marriages performed in other States.

[6] Two States that earlier recognized or were set to recognize same-sex marriage, California and Maine, have recently changed their laws to prohibit such recognition.  Same-sex marriage was recognized in California from June 2008, pursuant to court decision, until enactment of a constitutional amendment by voter referendum in November 2008.  Maine enacted a statute to recognize same-sex marriage in May 2009, but implementation of the statute was deferred pending a referendum effort, which ultimately resulted in the statute's veto in November 2009.

and Senate would provide various types of federal benefits for the same-sex domestic partners of current federal employees. See S. 1102, 111th Cong. (2009); H.R. 2517, 111th Cong. (2009). The Constitution permits Congress to respond to new social phenomena one step at a time and to adjust national policy incrementally. See FCC v. Beach Communications, Inc., 508 U.S. 307, 316 (1993); Medeiros v. Vincent, 431 F.3d 25, 31-32 (1st Cir. 2005). Congress's 1996 decision to maintain the status quo in 1996 was not irrational or unconstitutional.

Plaintiffs make essentially six arguments in response to these interests. Each of those arguments is stated below, followed by defendants' rejoinder.

**1. The "existence of policy differences among States . . . has never been a basis for establishing 'national' marriage rules in the past . . ."; thus, defendants cannot rely on an argument that "federal rights would vary dramatically from state to state" in absence of DOMA (Doc. 28 at 30, 33).**

Plaintiffs argue that "State laws governing who can marry have always varied greatly" and that there is no "historical precedent for federal legislation to 'correct' disparities in State marriage laws" (Doc. 28 at 34) – thus belying, plaintiffs assert, defendants' interest in preserving consistency regarding marital status for purposes of federal law. Plaintiffs note, for example, that State laws have differed regarding the marriage of cousins, the validity of common law marriage, and "restrictions based on health and mental capacity" (Doc. 28 at 14-15).

This asserted inconsistency between Congress's failure in the past to address disparities in state marriage laws and its decision to do so by enacting DOMA has no bearing on the constitutional question at issue in this case – whether the governmental interests supporting DOMA were legitimate for purposes of equal protection analysis. Indeed, the decisions of prior Congresses are irrelevant for purposes of this Court's review; all that matters in this case is

whether, in 1996, Congress conceivably could have had a legitimate interest in maintaining the then-existing understanding of who may be eligible for marriage-based federal benefits, thus preserving nationwide consistency in the distribution of those benefits.

Moreover, even if the decisions of prior Congresses with respect to other marriage-related issues were somehow relevant to the 1996 Congress's decision to enact DOMA, none of those issues would have had the same impact on the distribution of marriage-based federal benefits – and none had become a topic of great debate in numerous States with such fluidity – as whether two men or two women may marry.  Given the significance of this change, its pervasive effect on the application of federal law, and the uncertain and changing status of same-sex marriage in the States, Congress could reasonably have concluded that preserving the status quo at the federal level was reasonable.

**2.   DOMA changed rather than maintained the status quo, in that it departed from the "tradition" of accepting state determinations of marital status (Doc. 28 at 29).**

This argument focuses on the wrong "status quo."  When DOMA was enacted in 1996, only opposite-sex marriage was permitted in all fifty States.  That is the "status quo" that Congress could reasonably have sought to maintain in enacting DOMA.  Congress had to choose between two interests:  continuing in all respects the "tradition" of accepting any marriage valid under state law, or continuing to define marriage, at the federal level, as only opposite-sex marriage.  That Congress chose the second over the first does not make the choice unconstitutionally irrational.

**3.   Maintaining the status quo is only "a description of what [DOMA] does" rather than a government interest.  Plaintiffs question, that is, whether maintaining the status quo "is itself a government interest" under the Due Process Clause (Doc. 28 at 29).**

In arguing that maintaining the status quo is "at best a description of what the law does" (Doc. 28 at 29), plaintiffs seem to acknowledge that DOMA bears a "rational relationship" to the interest asserted by the government – in other words, that there is a close "fit between means and ends." See Heller v. Doe, 509 U.S. 312, 319-20 (1993). One of the "ends" to be served here is preserving the status quo at the federal level while waiting to see how a national debate is to be resolved, and DOMA is the "means" to that end. Courts have indicated that preservation of a status quo can be a legitimate governmental interest under the rational basis test. For example, in National Parks Conservation Ass'n v. Norton, the Eleventh Circuit rejected an equal protection challenge to the National Park Service's management of a certain location, agreeing with the agency's contention that "[t]he temporary preservation of the status quo to preserve options in a long-term planning process . . . is a legitimate government interest." 324 F.3d 1229, 1245 (11th Cir. 2003). Similarly, in Teigen v. Renfrow, the Tenth Circuit held that the Constitution did not forbid a state agency from freezing promotions for employees whose appeals in prior personnel actions remained pending. 511 F.3d 1072 (10th Cir. 2007). The court acknowledged that "maintain[ing] the status quo during the pendency of the administrative proceedings" would be a "rational justification[ ] for not wishing to promote . . . employees who are its adversaries in administrative proceedings." Id. at 1084; cf. Waste Mgmt., Inc. v. EPA, 669 F. Supp. 536, 541-43 (D.D.C. 1987) (holding that agency's action "to maintain the status quo while a rulemaking is pending" does not violate the APA). Further, as noted above, another "end" to be served by DOMA is preserving nationwide consistency in the distribution of marriage-based benefits, and the statute also has a close fit with that goal so as to satisfy rational basis scrutiny.

**4. DOMA does not preserve nationwide consistency in the distribution of marriage-based federal benefits, but rather "eliminates" consistency by changing the "rule" that state law determines marital status (Doc. 28 at 33).**

This argument confuses "consistency" with "historical practice."  From a federal perspective, DOMA preserves nationwide consistency:  notwithstanding the rapidly changing legal status of same-sex marriage among the States, DOMA established that "marriage" and "spouse" would refer only to opposite-sex marriage for purposes of federal law.  Plaintiffs are not correct – again, from a federal perspective – that "federal rights would be the same from State to State" in the absence of DOMA (Doc. 28 at 33); rather, such rights would depend on the differing and changing status of same-sex marriage in each State.  Congress could reasonably have concluded that federal agencies should not have to deal immediately with a changing patchwork of state approaches to same-sex marriage.

**5. "[T]here is nothing 'incremental' about permanently denying married same-sex couples every marital right and benefit . . ." (Doc. 28 at 30).**

At the outset of the national debate regarding same-sex marriage, Congress could reasonably have concluded that preserving the federal status quo was the best first step.  But a legislative enactment need not be "permanent":  As noted already, Congress is currently considering (and the Administration is supporting) bills that would provide various types of federal benefits for the same-sex domestic partners of current federal employees.  See S. 1102, 111th Cong. (2009); H.R. 2517, 111th Cong. (2009).  It was reasonable for Congress not to have included an explicit "sunset" provision in DOMA, contrary to plaintiffs' argument (Doc. 28 at 31), because Congress could not have foreseen the outcome of the debate regarding same-sex marriage in the various States, nor its timing.  For the same reason, it was reasonable for

Congress not to have provided explicitly, in 1996, "for revision [of its enactment] based on changing policies in the States" (Doc. 28 at 31).

**6.   The principle that a legislature can address developments incrementally has no application here because "Defendants never identify a 'problem' to be ameliorated or a purpose being furthered" (Doc. 28 at 32).**

The development requiring Congress's attention was that the States were on the verge of considering significant changes regarding access to marriage, which could have had significant and unpredictable effects on federal agencies and programs while the question of same-sex marriage remained unsettled in the States.

C.     The Rationales and Motives Recited by Congress and by Individual
       Congressman in 1996 Do Not Render the Statute Unconstitutional

Plaintiffs devote much of their memorandum – approximately nine pages – to refuting certain justifications invoked by Congress in enacting DOMA, and to describing statements made by individual Congressmen in connection with its enactment (Doc. 28 at 9-11, 34-41).  The defendants, however, have expressly disavowed any reliance on the purported interests set forth in DOMA's legislative history (Doc. 21 at 19 n.10).  The interests advanced by the government support the statute without recourse to these other purported rationales.  See, e.g., Smithfield Concerned Citizens for Fair Zoning, 907 F.2d at 245-46.

Plaintiffs' references to the comments of individual legislators are equally beside the point, as the government does not rely on – and in fact has expressly disavowed – the interests asserted in those comments.  In any event, the extraneous comments of individual legislators are irrelevant, because "[i]t is well settled that if legislation serves a legitimate purpose on its face, it may not be challenged by questioning the motives of the legislators."  Muñoz Vargas v. Romero Barceló, 532 F.2d 765, 766 (1st Cir. 1976).

17

II.   <u>OPM IS BOUND BY THE DEFINITION OF "MEMBER OF FAMILY" IN THE FEHB</u>

In the alternative to some of their constitutional claims, plaintiffs contend that the Federal Employees Health Benefits Act ("FEHBA") must be construed to permit the Office of Personnel Management ("OPM") to extend FEHB coverage to same-sex spouses (Doc. 28 at 41-43). Plaintiffs do not dispute, however, that the governing statutory and regulatory language, on its face, forecloses providing coverage to same-sex spouses.  Pursuant to OPM's regulations, "[a]n enrollment [in the FEHB] for self and family includes all family members who are eligible to be covered by the enrollment."  5 C.F.R. § 890.302(a)(1).  By statute, the term "'member of family' <u>means</u> the spouse of an employee or annuitant [or] an unmarried dependent child under 22 years of age . . . ."  5 U.S.C. § 8901(5) (emphasis added).  And DOMA defines "spouse" as "a person of the opposite sex who is a husband or wife."  1 U.S.C. § 7.

Plaintiffs assert, nevertheless, that the statute should be read as permitting OPM to provide coverage beyond the two groups enumerated in 5 U.S.C. § 8901(5), because of certain language in the legislative history and the overall purposes of the FEHBA (Doc. 28 at 41-43). Plaintiffs ignore the fact, however, that legislative history is rarely relevant in interpreting a congressional enactment unless the statutory language is ambiguous.  <u>See</u> <u>Tennessee Valley Auth. v. Hill</u>, 437 U.S. 153, 184 n.29 (1978) ("When confronted with a statute which is plain and unambiguous on its face, we ordinarily do not look to legislative history as a guide to its meaning.");  <u>United States v. Godin</u>, 534 F.3d 51, 56 (1st Cir. 2008) ("If the meaning of the text is unambiguous our task ends there as well.  If the statute is ambiguous, we look beyond the text to the legislative history in order to determine congressional intent.") (citation omitted).  In other words "<u>legislative history does not trump unambiguous statutory text</u>."  <u>In re Larson</u>, 513 F.3d 325, 329 (1st Cir. 2008) (emphasis added).

As noted above, the FEHBA says that "'member of family' means the spouse of an employee or annuitant [or] an unmarried dependent child under 22 years of age . . . ." 5 U.S.C. § 8901(5) (emphasis added). The verb "means" does not leave room for other categories; it is the linguistic equivalent of a mathematical "equals" sign. See Colautti v. Franklin, 439 U.S. 379, 392 n.10 (1979) ("As a rule, a definition which declares what a term 'means' . . . excludes any meaning that is not stated.") (internal quotation marks omitted); United States v. Roberson, 459 F.3d 39, 53 (1st Cir. 2006) ("Where, as here, Congress defines what a particular term 'means,' that definition controls to the exclusion of any meaning that is not explicitly stated in the definition . . . ."). The fact that this language appears in a section devoted to "Definitions" further indicates that the categories listed are exclusive, not merely examples. See 5 U.S.C. § 8901. Thus, the statutory language is plain: only a "spouse" and an "unmarried dependent child under 22 years of age" can qualify as a family member.

Contrary to plaintiffs' argument, defendants have not conceded that the statutory language is ambiguous, and their invocation of the canon "expressio unius est exclusio alterius" cannot be understood as such a "concession" (Doc. 28 at 42). The courts have many times invoked this canon in relation to language that they had explicitly found to be unambiguous. See, e.g., Pritzker v. Yari, 42 F.3d 53, 68 (1st Cir. 1994) ("As the maxim teaches, 'expressio unius est exclusio alterius.' So it is here. Consequently, [defendant's] argument must fail, as it asks us to engraft an exception beyond those enumerated [in the statute], and does so in the face of unambiguous statutory text."); United States v. Newman, 982 F.2d 665, 673 (1st Cir. 1992) ("[T]he district court's application of [a provision of the Sentencing Guidelines] accords with the apparent intent of the Sentencing Commission as evidenced not only by the plain and unambiguous guideline language but by other intrinsic considerations as well. . . . Under the principle of

19

expressio unius est exclusio alterius, the enumeration of specific exclusions from the operation

of a statute is an indication that the statute should apply to all cases not specifically excluded.")

(internal quotation marks omitted).[7]  In this case, the subject statutory language <u>unambiguously</u>

limits "family members" to "spouses" and "unmarried dependent child[ren] under 22 years of

age," and the principle "expressio unius est exclusio alterius" is simply further support for that

meaning.[8]

III.     PLAINTIFF DEAN HARA LACKS STANDING TO PURSUE
         HIS CLAIM FOR FEHB ENROLLMENT

        In relation to plaintiff Dean Hara's standing to pursue his claim for enrollment in the

Federal Employees Health Benefits Program, plaintiffs do not dispute that one must be an

"annuitant" (or an employee, family member, or former spouse) to be eligible for enrollment in

the FEHB, 5 U.S.C. § 8905(b); that annuity claims must be submitted to OPM, <u>id.</u> § 8347(b);

5 C.F.R. § 831.104(a); that judicial review of a decision by OPM lies in the United States Court

of Appeals for the Federal Circuit (after appeal to the Merit Systems Protection Board,

"MSPB"), 5 U.S.C. § 7703(b)(1); 28 U.S.C. § 1295(a)(9); and that this judicial review is

exclusive, <u>see, e.g.</u>, <u>Lindahl v. OPM</u>, 470 U.S. 768, 775, 791-99 (1985).  Plaintiffs also do not

dispute that plaintiff Dean Hara now has a petition pending before the Federal Circuit,

---

        [7] The decision cited by plaintiffs on this subject does not explain or cite any authority for its statement that "[r]eliance on a canon of construction to support [an] inference [from a statute] belies the availability of a plain text argument."  <u>See</u> <u>United States v. Councilman</u>, 418 F.3d 67, 73 (1st Cir. 2005).  Perhaps the court meant that when reliance on a canon of construction is <u>necessary</u>, the meaning of the statute is therefore not plain.  <u>See</u> <u>St. Louis Southwestern Rwy. Co. v. Pierce</u>, 68 F.3d 276, 278 (8th Cir. 1995) ("In our view, the language of the statute is plain and unambiguous . . . . We find it unnecessary to employ maxims of construction (ejusdem generis, expressio unius est exclusio alterius) as Appellants urge.").

        [8] The principle of "constitutional avoidance" (Doc. 28 at 43) has little or no application here, where others of plaintiffs' claims require the Court to address the constitutionality of DOMA regardless of their statutory claim regarding the language of the FEHBA.

challenging OPM's decision on his claim for a federal annuity (Doc. 18 ¶¶ 171-79).  Plaintiff

Hara cannot, therefore, have standing in this Court to challenge OPM's decision not to enroll

him in the FEHB because – given the pendency of the "annuitant" issue – a decision regarding

the constitutionality of DOMA would not redress Mr. Hara's inability to secure FEHB

enrollment.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103-04 (1998).

Plaintiffs make three responses to this argument.  First, they argue that OPM's decision

on reconsideration did not invoke the "annuitant" issue as one of the reasons for the agency's

decision to reject FEHB enrollment, and thus that OPM "abandoned" that ground (Doc. 28 at

44-46).  Plaintiffs admit, however, that OPM's initial decision did separately refer to Mr. Hara's

failure to be a "survivor annuitant" (Doc. 28 at 45), and a review of the reconsideration decision

indicates that it did not expressly withdraw that basis for decision (Doc. 31, Ex. B).[9]  Moreover,

the reconsideration decision quoted the "law that applies" as follows:

> An annuitant's enrollment terminates, subject to the temporary extension of
> coverage for conversion, at midnight of the last day of the pay period in which he
> dies, unless he leaves a member of the family entitled to continue enrollment as a
> survivor annuitant . . . .

5 C.F.R. § 890.304(b)(4) (emphasis added).  Thus, the reconsideration decision did, in fact, refer

to this requirement, which OPM did not "abandon" in relation to Mr. Hara.

Second, plaintiffs argue that OPM did not file a cross-petition for judicial review of the

MSBP decision (which affirmed the OPM decision but disagreed with some of its reasoning),

and thus that OPM cannot raise the "annuitant" issue before the Federal Circuit (Doc. 28 at 46

---

[9] Reliance on materials outside the pleadings in relation to defendants' standing argument
does not convert the motion to dismiss into a motion for summary judgment, given that standing
goes to the Court's jurisdiction.  See Fed. R. Civ. P. 12(d); see also FW/PBS, Inc. v. City of
Dallas, 493 U.S. 215, 231 (1990) ("standing 'is perhaps the most important of [the jurisdictional]
doctrines'") (quoting Allen v. Wright, 468 U.S. 737, 750 (1984)).

n.22).  That is incorrect as a matter of law.  Even where OPM does not file a cross-petition for judicial review of an MSPB decision, the agency can argue one of its underlying positions before the Federal Circuit as an alternative ground for affirmance of the MSPB decision.  <u>Cf</u>. <u>Horner v. Acosta</u>, 803 F.2d 687, 691 n.6 (Fed. Cir. 1986) ("In order to sustain the Board's decision, respondents, without appealing, can urge a position they took before the Board even though it was rejected.").

Third and finally, plaintiffs argue that the lack of a Federal Circuit decision on Mr. Hara's status as an annuitant does not preclude his standing to seek FEHB coverage in this Court because he allegedly fulfills the requirements to be an annuitant (Doc. 28 at 46-47).  This argument ignores the fact, however, that Mr. Hara cannot qualify for FEHB coverage until he has ultimately been <u>declared</u> a federal annuitant, and only the Federal Circuit has jurisdiction to reach that conclusion at this point.  This is not, as plaintiffs urge, merely a matter of deciding <u>issues</u>, but a matter of jurisdiction to determine <u>status</u> (Doc. 28 at 47).

<u>CONCLUSION</u>

Accordingly, plaintiffs' motion for summary judgment should be denied and this action should be dismissed with prejudice.

Dated this 29th day of January, 2010.

Respectfully submitted,

TONY WEST
Assistant Attorney General

CARMEN M. ORTIZ
United States Attorney

ARTHUR R. GOLDBERG
Assistant Director

/s/ W. Scott Simpson
_____

W. SCOTT SIMPSON
Senior Trial Counsel

Attorneys, Department of Justice
Civil Division, Room 7210
Post Office Box 883
Washington, D.C. 20044
Telephone:     (202) 514-3495
Facsimile:     (202) 616-8470
E-mail:        scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS


Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants, on January 29, 2010.


/s/ W. Scott Simpson
_____

W. SCOTT SIMPSON